IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005,<br><br>    *Plaintiff*,<br><br>v.<br><br>PETE HEGSETH, in his official capacity as<br>Secretary of Defense,<br>1600 Pentagon 3E788<br>Washington, DC 20301-1600,<br><br>TULSI GABBARD, in her official capacity as<br>Director of National Intelligence,<br>Washington, DC 20511,<br><br>JOHN L. RATCLIFFE, in his official capacity<br>as Director of the Central Intelligence Agency,<br>1000 Colonial Farm Dr.<br>McLean, VA 22101,<br><br>SCOTT BESSENT, in his official capacity as<br>Secretary of the Treasury<br>1500 Pennsylvania Avenue NW<br>Washington, DC 20220,<br><br>MARCO A. RUBIO, in his official capacities<br>as Secretary of State and Acting Archivist of<br>the United States,<br>2201 C St. NW<br>Washington, DC 20520,<br><br>and<br><br>NATIONAL ARCHIVES AND RECORDS<br>ADMINISTRATION,<br>700 Pennsylvania Ave. NW<br>Washington, DC 20408,<br><br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-883 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This action arises from Defendants' failure to meet their obligations under the Federal Records Act regarding messages from a group-chat discussion of planned and active military operations from March 11, 2025, through March 15, 2025, on the messaging application Signal, which can be set up to automatically delete messages.

2. Plaintiff American Oversight brings this action under the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., to prevent the unlawful destruction of federal records and to compel Defendants to fulfill their legal obligations to preserve and recover federal records created through unauthorized use of Signal for sensitive national security decision-making.

**JURISDICTION AND VENUE**

3. This Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the APA, 5 U.S.C. §§ 701, et seq., the FRA, 44 U.S.C. §§ 3301, et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this district under 28 U.S.C. § 1391(e).

**PARTIES**

5. Plaintiff American Oversight is a nonpartisan, non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. It is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and requests made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, American Oversight uses the information it gathers, and its analysis of that information, to

educate the public about the activities and operations of the federal government through reports, published analyses, press releases and other media.

6. In the regular course of its work and in furtherance of its core mission and function, American Oversight has submitted FOIA requests to Defendants' respective agencies and will continue to seek records from such agencies in the future.

7. In the regular course of its work and in furtherance of its core mission and function, American Oversight has released records to the public it received in response to FOIA requests to Defendants' respective agencies in the past. In the regular course of its work and in furtherance of its core mission and function, American Oversight will continue to release records to the public it receives in response to FOIA requests to Defendants' respective agencies.

8. Defendant Pete Hegseth is the Secretary of Defense, sued in his official capacity. In that capacity, he is the agency head of the U.S. Department of Defense ("DoD") and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106. DoD is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in Washington, DC.

9. Defendant Tulsi Gabbard is the Director of National Intelligence, sued in her official capacity. In that capacity, she is the agency head of the Office of the Director of National Defense ("ODNI") and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106. ODNI is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in Washington, D.C.

10. Defendant John Ratcliffe is the Director of the Central Intelligence Agency, sued in his official capacity. In that capacity, he is the agency head of the Central Intelligence Agency ("CIA") and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106. CIA is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in McLean, Virginia.

11. Defendant Scott Bessent is the Secretary of the Treasury, sued in his official capacity. In that capacity, he is the agency head of the U.S. Department of the Treasury ("Treasury") and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106. Treasury is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in Washington, D.C.

12. Defendant Marco Rubio is the U.S. Secretary of State and the Acting Archivist of the United States, sued in both of his official capacities.

13. As Secretary of State, Defendant Rubio is the agency head of the U.S. Department of State ("State") obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106. State is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in Washington, D.C.

14. As Acting Archivist of the United States, Defendant Rubio is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. § 3106.

15. Defendant National Archives and Records Administration ("NARA") is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), and APA, 5 U.S.C. §§ 551(1), 552(f)(1), and is headquartered in Washington, D.C.

## LEGAL FRAMEWORK

### Federal Records Act

16. The FRA governs the creation, management, and disposal of "records" by federal agencies. *See generally* 44 U.S.C. Chs., 21, 29, 31 and 33.

17. The FRA defines "records" to include:

> all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]

44 U.S.C. § 3301(a)(1)(A).

18. As applied to the operations of DoD, ODNI, CIA, Treasury, and State (collectively, the "Agencies"), the FRA imposes duties on both the head of each agency and the Archivist of the United States.

19. To comply with the statute, the agency head "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *Id.* § 3101.

20. Each agency head is further required to establish a records management program providing "effective controls over the creation and over the maintenance and use of records," *id.*

§ 3102(1), and to "establish safeguards against the removal or loss of records the head of [the] agency determines to be necessary and required by regulations of the Archivist," *id.* § 3105.

21. When records are handled in a manner that contravenes the FRA, or a parallel agency record-keeping policy, the FRA obligates the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency . . . ." 44 U.S.C. § 3106(a).

22. The FRA further dictates that the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the agency head "knows or has reason to believe have been unlawfully removed from [the] agency . . . ." *Id.*

23. If the agency head fails to initiate an action for recovery of unlawfully removed records "or other redress within a reasonable period of time after being notified of any such unlawful action, or is participating in, or believed to be participating in any such unlawful action," the FRA dictates that "the Archivist shall request the Attorney General to initiate such an action, and shall notify Congress when such a request has been made." *Id.* § 3106(b).

24. The obligations to initiate an enforcement action through the Attorney General to recover unlawfully removed records or for other redress are mandatory, not subject to agency discretion. *Armstrong v. Bush*, 924 F.2d 282, 295–96 (D.C. Cir. 1991).

25. Where both the agency head and the Archivist have "failed to initiate remedial action in a timely [manner], private litigants may sue under the APA to require them to do so." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 110 (D.D.C. 2007) (internal quotation omitted).

26. Thus, "the APA authorizes judicial review of a claim—properly pleaded, of course—that the [agency's] recordkeeping policies are arbitrary and capricious and do not comport with the requirements of the FRA." *Id.* at 111.

27. "The APA also authorizes the Court to entertain a claim that the head of the [agency] or the Archivist have breached their statutory obligations to take enforcement action to prevent an agency official from improperly destroying records or to recover records unlawfully removed from the agency." *Id.*

## FACTS

28. Upon information and belief, from March 11 through March 15, 2025, senior Trump administration officials, including all agency-head Defendants, used the Signal messaging application to discuss and coordinate imminent U.S. military strikes in Yemen ("the Signal chat").[1]

29. Signal is an open-source, encrypted messaging service that allows users to send text, audio, video, and picture messages to other users.

30. Signal includes a function that allows users to set time limits by which their sent messages will disappear and be deleted from both the sender's and recipient's devices.

31. Upon information and belief, Signal messages are stored only on an individual's device, with no copy or back-up of the messages retained on the Signal system or servers; this means that Signal messages can be preserved by the individual users through screenshots or other means, but, once deleted, messages cannot be restored or retrieved after deletion.[2]

---

[1] *See* Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic (Mar. 24, 2025, 12:06 PM ET), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/ (the "*Atlantic* Article").

[2] *See Backup and Restore Messages*, Signal (last visited Mar. 25, 2025), https://support.signal.org/hc/en-us/articles/360007059752-Backup-and-Restore-Messages.

32. Reporter Jeffrey Goldberg of *The Atlantic* was inadvertently included in the Signal chat from March 11 through March 15, 2025. He received Defendants' communications with each other in the Signal chat.

33. According to Goldberg, the Signal chat included highly sensitive—potentially classified—information and was used to coordinate operational decisions normally reserved for secure government systems.

34. Upon information and belief, the participants in the Signal chat included individuals using titles or acronyms such as "SecDef," "NSC," "VP," "DNI," "CIA," and "MAR."

35. Goldberg reports in the *Atlantic* Article that 18 individuals were listed as members of the Signal chat.

36. Upon information and belief, the following officials were included in the Signal chat: Defendant Secretary of Defense Pete Hegseth; Defendant Director of National Intelligence Tulsi Gabbard; Defendant CIA Director John Ratcliffe; Defendant Treasury Secretary Scott Bessent; Defendant Secretary of State and Acting Archivist of the United States Marco Rubio; National Security Advisor Michael Waltz; Vice President J.D. Vance; and Homeland Security Advisor and White House Deputy Chief of Staff Stephen Miller.

37. According to the *Atlantic* Article, at least one participant in the Signal chat enabled the function that makes messages disappear after set time limits.

38. Defendant Waltz set at least some messages to disappear after one week, and at least some messages to disappear after four weeks.

39. The enabled disappearing function on Waltz's messages was known or reasonably should have been known to all of the members of the Signal chat.

40. Upon information and belief, and as reported in the *Atlantic* Article, one or more messages in the Signal chat regarding the transaction of public business sent on or before March 17, 2025, have been deleted.

41. Signal is not an authorized system for preserving federal records and does not comply with recordkeeping requirements under the FRA or NARA guidance.

42. Messages in the Signal chat about official government actions, including, but not limited to, national security deliberations, are federal records and must be preserved in accordance with federal statutes, and agency directives, rules, and regulations.

43. Plaintiff American Oversight has submitted multiple Freedom of Information Act requests to Defendants' agencies, including several requests in 2025 that seek Signal messages.

44. On January 28, 2025, American Oversight submitted a FOIA request to DoD (bearing American Oversight internal tracking number DOD-25-0183) seeking all records reflecting communications, expressly including Signal messages, between DoD officials, including Pete Hegseth, and anyone in the White House Office, containing one or more specified key terms, from January 20, 2025, through January 27, 2025. On January 28, 2025, DoD acknowledged the request and assigned it tacking number 25-F-2084. Upon information and belief, American Oversight's request remains pending.

45. American Oversight has regularly requested DoD's communications through FOIA, including Signal messages, and it will continue to do so in the future. Upon information and belief, under current DoD recordkeeping rules and practices, officials do not forward Signal messages, including messages from the Signal chat, to their official email accounts, thereby barring American Oversight and other FOIA requesters from obtaining responsive records to which they

are otherwise entitled under FOIA, particularly if such Signal messages have enabled the disappearing function.

46. Some of American Oversight's requests to DoD only seek emails. On January 27, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0190) seeking all records reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and anyone in the White House Office, containing one or more of several key terms, such as "fire," from January 20, 2025, through January 27, 2025. On January 29, 2025, State updated the status of the request to "Received" and noted the tracking number #F-2025-09050. American Oversight's request remains pending.

47. On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0277) seeking all communications, expressly including Signal messages, between State officials, including Marco Rubio, containing one or more specified key terms, such as "eliminat*," from January 20, 2025, through the date that the search is conducted. On March 3, 2025, State updated the status of the request to "In Process" and noted the tracking number, #F-2025-09350. American Oversight's request remains pending.

48. On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0279) seeking all records reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and anyone in the White House Office from January 20, 2025, through the date that the search is conducted. On March 12, 2025, State updated the status of the request

to "On Hold – Need Info/Clarification" and noted the tracking number, #F-2025-09352. American Oversight's request remains pending.

49. On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0281) seeking all records reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and one or more specified members of Congress from January 20, 2025, through the date that the search is conducted. On March 3, 2025, State updated the status of the request to "In Process" and noted the tracking number, #F-2025-09346. American Oversight's request remains pending.

50. On March 18, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0691) seeking email communications, sent by State officials, including Marco Rubio, and containing one or more specified key terms from February 5, 2025, through the date that the search is conducted. American Oversight's request remains pending.

51. American Oversight has regularly requested State's communications through FOIA, including Signal messages, and it will continue to do so in the future.

52. Upon information and belief, under current State recordkeeping rules and practices, officials do not forward Signal messages, including messages from the Signal chat, to their official email accounts, thereby barring American Oversight and other FOIA requesters from obtaining responsive records to which they are otherwise entitled under FOIA, particularly if such Signal messages are set to auto-delete.

53. Some of American Oversight's requests to State only seek emails.

54. On January 30, 2025, American Oversight submitted a FOIA request to Treasury (bearing American Oversight internal tracking number TREAS-25-0225) seeking all records reflecting communications, expressly including Signal messages, between Treasury officials, including the Acting Secretary at the time, and anyone communicating on behalf of the Department of Government Efficiency ("DOGE") from January 20, 2025, through the date that the search is conducted. On February 13, 2025, Treasury acknowledged receipt of the request. American Oversight's request remains pending.

55. On February 28, 2025, American Oversight submitted a FOIA request to Treasury (bearing American Oversight internal tracking number TREAS-25-0537) seeking communications, expressly including Signal messages, sent by Treasury officials, including Scott Bessent, and containing one or more specified key terms from January 20, 2025, through the date that the search is conducted. On February 28, 2025, Treasury acknowledged receipt of the request. American Oversight's request remains pending.

56. American Oversight has regularly requested Treasury communications through FOIA, and it will continue to do so in the future.

57. Upon information and belief, under current Treasury recordkeeping rules and practices, officials do not forward Signal messages, including messages from the Signal chat, to their official email accounts, thereby barring American Oversight and other FOIA requesters from obtaining responsive records to which they are otherwise entitled under FOIA, particularly if such Signal messages are set to auto-delete.

58. Some of American Oversight's requests to Treasury only seek emails.

59. Some of the communications at issue in the Signal chat may be responsive to American Oversight's pending FOIA requests.

60. An agency may not "destroy[] a document after it has been requested under FOIA." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009).

61. Defendants' use of Signal, as demonstrated by this particular example, presents a substantial risk that they have used and continue to use Signal in other contexts, thereby creating records that are subject to the FRA and/or the FOIA, but are not being preserved as required by those statutes.

62. Defendants' use of Signal, as demonstrated by this particular example, strongly suggests that they have used Signal to communicate about matters that may otherwise have been discussed via email, thereby avoiding creating records responsive to American Oversight's FOIA requests for emails.

63. Upon information and belief, Defendants, in their capacities as heads of their respective agencies, have not taken steps to preserve messages sent or received in the Signal chat or to recover any that have been lost or deleted.

64. For example, on March 24, 2025, Secretary Hegseth told reporters that "[n]obody was texting war plans, and that's all I have to say about that."[3]

## CLAIMS FOR RELIEF

**Count I – as to Defendants Hegseth, Gabbard, Ratcliffe, Bessent, and Rubio  
(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,  
for declaratory and injunctive relief)**

65. American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

---

[3] Tara Suter, *Hegseth Says 'Nobody Was Texting War Plans' After Group Chat Breach*, The Hill (Mar. 24, 2025, 7:32 PM), https://thehill.com/policy/defense/5211867-hegseth-says-nobody-was-texting-war-plans-after-group-chat-breach/.

66. Messages in the Signal chat, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1) and § 3105. Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

67. Defendants, in their capacities as agency heads for their respective agencies, know or reasonably should know that the communications in the Signal chat constitute "records" under the FRA.

68. Defendants, as members of the Signal chat, know or reasonably should know that one or more messages in the Signal chat were or remain subject to automatic deletion in violation of the FRA and implementing rules and regulations of Defendants' respective agencies.

69. Defendants have failed and continue to fail to implement measures to prevent the automatic deletion of messages in the Signal chat, which violates their obligations under the FRA.

70. By permitting and engaging in the use of Signal to communicate regarding agency business, Defendants have failed to establish a records management program providing "effective control over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105.

71. The recordkeeping practices Defendants have in place at their respective agencies are inadequate, arbitrary, capricious, and otherwise not in accordance with the FRA.

72. Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

73. Upon information and belief, messages in the Signal chat have not and are not being maintained in accordance with the FRA.

74. An October 2023 DoD memorandum specifically instructs that Signal and similar "[u]nmanaged 'messaging apps,' . . . are NOT authorized to access, transmit, process non-public DoD information."[4]

75. Upon information and belief, messages in the Signal chat are being or will imminently be destroyed in contravention of the FRA.

76. Each Defendant is on notice of the unlawful removal or destruction of agency records through his or her inclusion in the Signal chat.

77. Each Defendant is also on notice of the unlawful removal or destruction of agency records through widespread public reporting of the Signal chat, following the *Atlantic* Article.

78. Where, as here, this violation is known to Defendants, each Defendant, in their capacity as an agency head, has a nondiscretionary duty under the FRA to report the violation to the Acting Archivist and to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

79. Defendants have failed to perform their nondiscretionary duties to preserve and recover the unlawfully removed records.

80. Defendants have failed to perform their nondiscretionary duties to notify the Archivist of the above-described known FRA violations.

---

[4] Dep't of Def., *Memorandum for Senior Pentagon Leadership, Commanders of the Combat Commands, Defense Agency and DOD Field Activity Directors* at 3 (Oct. 11, 2023), https://dodcio.defense.gov/Portals/0/Documents/Library/Memo-UseOfUnclassMobileApps.pdf.

81. Defendants have failed to perform their nondiscretionary duties to initiate an action through the Attorney General to preserve and recover the unlawfully removed records or for other redress.

82. Defendants' failures and violations have injured American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

83. Defendants' failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

### Count II – as to Defendants NARA and Acting Archivist Rubio
### (Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, for declaratory and injunctive relief)

84. American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

85. Defendants NARA and Rubio, in his capacity as Acting Archivist, have an independent nondiscretionary duty under the FRA to initiate a recovery action or action for other redress through the Attorney General when the agency head fails to do so.

86. Defendants NARA and Rubio have been made aware of the unlawfully alienated agency records because Rubio participated in the Signal chat.

87. Defendant Rubio, as Acting Archivist, knows or reasonably should know that each Defendant has failed to take appropriate action to preserve and recover records from the Signal chat.

88. However, Defendant Rubio has also failed to act consistent with his independent obligation as Acting Archivist to initiate an action for recovery or other redress. Accordingly, Defendants NARA and Rubio are in default of their nondiscretionary obligations under the FRA.

89. This failure to act is a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that messages and communications sent through the Signal application in the course of conducting agency business are agency records subject to the FRA;

2. Declare that the failure to ensure such messages and communications are preserved, as required by 44 U.S.C. § 2911, comprises an unlawful removal of federal records in violation of the FRA;

3. Declare that Defendants have maintained an inadequate recordkeeping system under the FRA;

4. Declare that Defendants have violated their respective duties under the FRA and APA;

5. Issue emergency injunctive relief and a permanent injunction ordering Defendants to comply with their respective duties under the FRA and APA, including by referring the matter to the Attorney General for enforcement of the FRA, preservation of records, recovery of unlawfully removed records, and the recovery or restoration of any deleted or destroyed materials to the extent possible;

  6. Issue emergency injunctive relief and a permanent injunction ordering Defendants to preserve all materials relating to Plaintiff's claims under the FRA;

  7. Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

  8. Grant Plaintiff any other relief this Court deems appropriate.

| | |
|---|---|
| Dated: March 25, 2025 | Respectfully submitted,<br><br>*/s/ Benjamin A. Sparks*<br>Benjamin A. Sparks<br>D.C. Bar No. 90020649<br>AMERICAN OVERSIGHT<br>1030 15th Street NW, B255<br>Washington, DC 20005<br>(202) 873-1741<br>ben.sparks@americanoversight.org<br><br>*Counsel for Plaintiff* |