# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-883 |
| | ) | |
| PETE HEGSETH, in his official capacity as Secretary of Defense, | ) | |
| | ) | |
| TULSI GABBARD, in her official capacity as Director of National Intelligence, | ) | |
| | ) | |
| JOHN L. RATCLIFFE, in his official capacity as Director of the Central Intelligence Agency, | ) | |
| | ) | |
| SCOTT BESSENT, in his official capacity as Secretary of the Treasury | ) | |
| | ) | |
| MARCO A. RUBIO, in his official capacities as Secretary of State and Acting Archivist of | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

**PRELIMINARY STATEMENT** ................................................................................................... 3

**STATEMENT OF FACTS** ........................................................................................................ 5

**ARGUMENT** .......................................................................................................................... 10

I. **American Oversight is likely to succeed on the merits because Defendants have not met their obligations under the FRA and because Defendants' use of Signal with auto-delete violates the FRA** ...................................................................................................................... 11

   A.   The Signal messages are government records under the FRA. ....................................... 11

   B.   The Signal messages have been and are in imminent danger of being auto-deleted in violation of the FRA. ........................................................................................................... 13

   C.   Defendants have failed to meet their FRA obligations to prevent destruction of the Signal messages, despite knowledge that they are subject to autodeletion........................................... 15

II. **American Oversight and the public it serves will suffer irreparable harm from deletion of critical federal records that may be responsive to current and future Freedom of Information Act requests**.............................................................................................................. 17

III. **The balance of equities favors a temporary restraining order because lost records are irretrievable but Defendants suffer no harm from complying with their legal obligations.** ...................................................................................................................................... 21

IV. **The public interest strongly supports relief** ...................................................................... 22

V. **No bond should be required** ............................................................................................... 23

   **CONCLUSION** ..................................................................................................................... 24

## PRELIMINARY STATEMENT

This case concerns a clear and urgent threat to the preservation of federal records, requiring judicial intervention and preservation of the status quo. Between March 11 and March 15, 2025, more than a dozen senior Trump administration officials used Signal—a private, non-governmental, encrypted messaging application that features automatic deletion of messages—to coordinate imminent U.S. military strikes on Houthi targets in Yemen. This included detailed operational planning, high-level policy discussion, interagency coordination, and intelligence-related assessments. The officials included the Secretary of Defense, National Security Advisor, Secretary of State, Vice President, Director of National Intelligence, and others. The public's discovery of the existence of these text messages was fortuitous:  apparently in error, one of the participants in the group added to the text message chain the editor-in-chief of a leading periodical, who then disclosed the core facts giving rise to this lawsuit in detailed articles that included quotations and images of the text messages.

American Oversight filed this lawsuit because at least some of the Signal messages were configured to disappear after one week, and others were configured to disappear after four weeks. While the text messages in the journalist's possession were all apparently published on March 26, 2025, American Oversight knows of no efforts made by the government to preserve or archive the original communications or other communications about these events, let alone other Signal communications by these senior officials. While communications on Signal using personal cellphones are *not* secured from real-time surveillance by foreign intelligence services, they are immune to collection efforts from a centralized server because they are only maintained on the personal cellphones of those who use Signal. Indeed, the reason why Signal has become a popular application in some circles is because it enables people to have communications that are only

3

accessible and retrievable from the user's cellphone and not by the authorities. The use of Signal in the context of planning a military invasion bespeaks only a desire to keep those communications from ever being the subject of review by Congress or the public, through a request made under the Freedom of Information Act ("FOIA") or otherwise.

Notwithstanding the Defendants' efforts to hide these and no doubt other Signal communications, these messages—some of which are now likely unrecoverable—were created as part of the administration's conduct of official government business. As such, they constitute federal records under the Federal Records Act (FRA), 44 U.S.C. §§ 3101 *et seq*. The use of a private, encrypted, auto-deleting platform for official communications without contemporaneous forwarding to a government system is a per se violation of FRA obligations. Setting aside the FRA violations, the known facts reflect Defendants' use of a group chat on a non-classified, commercial messaging app, *to which a journalist was apparently accidentally added*, to conduct sensitive communications about national security and military planning—normally conducted on classified systems and/or in a sensitive compartmented information facility ("SCIF").

Plaintiff American Oversight is a nonpartisan, public interest watchdog that is dedicated to transparency in government. For nearly a decade, American Oversight has filed lawsuits in order to advance this objective, through the use of FOIA and other federal statutes, thereby providing the public with a window into the actions of the federal government that otherwise would not have been available. *See, e.g., Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 25-cv-409 (BAH) (D.D.C. filed Feb. 11, 2025); *Am. Oversight v. Dep't of Just*., 25-cv-383 (TJK) (D.D.C. filed Feb. 10, 2025). This case is no different. The public is entitled to the preservation of authentic and official government records, whether they reside (as they should) in the government's computer

systems or originated (as is the case here) on the private phones of the senior government officials who are the subject of this lawsuit.

In short, there can be no question that the Signal messages in question constitute core federal records. Without court action, they—and many like them—will be automatically destroyed or lost forever. Defendants' wanton violation of the FRA here indicates widespread noncompliance beyond this single episode that was revealed to the public only by mistake. Defendants' use of a non-classified commercial application even for such life-and-death matters as planning a military operation leads to the inevitable inference that Defendants must have used Signal to conduct other official government business. Only court intervention can guarantee that these protected records are preserved in accordance with the FRA.

For these reasons, American Oversight respectfully requests that the Court issue a temporary restraining order preserving the status quo, preventing further destruction while this litigation proceeds on the merits.

## STATEMENT OF FACTS

On March 24, 2025, *The Atlantic* published a detailed investigative article revealing that senior officials in the Trump administration used the encrypted messaging application Signal to coordinate U.S. military strikes on Houthi targets in Yemen.[1] Compl. ¶ 28, ECF No. 1. The article, written by journalist Jeffrey Goldberg, describes in detail a Signal group chat titled "Houthi PC small group," which included key national security personnel—among them the Secretary of Defense (Pete Hegseth), National Security Advisor (Michael Waltz), Secretary of State (Marco Rubio), Vice President (J.D. Vance), Director of National Intelligence (Tulsi Gabbard), and other

---

[1] *See* Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic, Mar. 24, 2025, https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/.

senior administration officials. Goldberg explained in his article how he was added to the Signal group chat by mistake and thus received its messages inadvertently. Compl. ¶¶ 32–36, ECF No. 1; Decl. of Benjamin A. Sparks, Mar. 26, 2025, ¶ 7. On March 26, 2025, *The Atlantic* published another article, detailing the entirety of the Signal group chat (except the identity of certain personnel), in response to comments from government officials disputing that the contents of the communications were classified.[2] Sparks Decl. ¶ 8.

Central to this motion are the distinctive features of Signal, the communications application used by Defendants. Signal is an open-source, encrypted messaging service that allows users to send text, video, and picture messages to other users. Compl. ¶ 29, ECF No. 1. Signal is commercially available, meaning that anyone can use the service by downloading the application to their cellphone and opening an account. *See generally* Signal, https://signal.org (last visited Mar. 26, 2025). Unlike the means of communications that government personnel are supposed to use, Signal text messages are sent and received on private cellphones and can only be collected from those phones. *See* Compl. ¶ 31, ECF No. 1; *Backup and Restore Messages*, Signal, https://support.signal.org/hc/en-us/articles/360007059752-Backup-and-Restore-Messages (last visited Mar. 26, 2025).[3] Of particular relevance here, Signal includes a function that allows users to set time limits by which their sent messages will disappear and be deleted from both the sender's *and recipient's* devices. Compl. ¶ 30, ECF No. 1. As a result of these features meant to advance privacy, Signal has become a popular means of communications for those who do not want their

---

[2] *See* Jeffrey Goldberg & Shane Harris, *Here are the Attack Plans that Trump's Advisers Shared on Signal*, The Atlantic, Mar. 26, 2025, https://www.theatlantic.com/politics/archive/2025/03/signal-group-chat-attack-plans-hegseth-goldberg/682176/.

[3] *See also* Steve Witkoff (@SteveWitkoff), X (formerly Twitter), (Mar. 26, 2025, 9:20 AM), https://x.com/SteveWitkoff/status/1904886084879720683 (appearing to confirm that his participation in the Signal group chat was via his personal phone).

communications to be preserved or to be accessible, unless specific steps are taken to surveil the personal cellphones of those who are participating in the conversations.[4]

The Goldberg articles pulled back the curtain and revealed to the public the extent of how these senior administration officials used a commercially available text message application to discuss sensitive issues between March 11 and March 15, 2025. According to Goldberg, the Signal chat included highly sensitive—potentially classified—information and was used to coordinate operational decisions normally reserved for secure government systems. *See* Compl. ¶ 33, ECF No. 1. The chat logs described by Goldberg reveal active policy deliberations, interagency "taskings," and, ultimately, operational coordination regarding imminent U.S. military strikes. Participants exchanged information about weapons systems, attack sequences, diplomatic fallout, and foreign policy messaging.[5] The Secretary of Defense reportedly posted a "TEAM UPDATE" with specific operational details approximately two hours before the first bombs were dropped in Yemen on March 15, 2025. *Id.* Goldberg confirmed the accuracy of the text messages by reference to world events: the bombing commenced at the times and in the places promised by the senior government officials in the text messages.[6]

To state the obvious, Signal, on its own, is not an authorized system for preserving federal records and does not comply with recordkeeping requirements under the FRA or National Archives and Records Act (NARA) guidance. Compl. ¶ 41, ECF No. 1. According to Goldberg's article, at least some of the messages in the group were configured to disappear after a fixed period—some after one week, and others after four weeks. *Id.* ¶¶ 37–39. The use of Signal's disappearing

---

[4] *See, e.g.*, Maggie Miller & Dana Nickel, '*It's So Unbelievable': Cyber World Stunned Over War Planners Using Signal*, Politico (Mar. 25, 2025, 6:33 AM), https://www.politico.com/news/2025/03/25/signal-cybersecurity-trump-war-planning-00246881.
[5] *See* Goldberg & Harris, *supra* n.2.
[6] *See* Goldberg, *supra* n.1.

message feature—analogous to the use of disappearing ink on paper documents—raises immediate red flags under the FRA, which prohibits the unauthorized destruction of federal records. *See generally* 44 U.S.C. Chs., 21, 29, 31, and 33; Compl. ¶ 61, ECF No. 1. There is no indication that these messages were preserved or forwarded to official government systems, as required under NARA guidance and agency policies. Compl. ¶ 63, ECF No. 1. Indeed, there would be no reason for Defendants to use Signal in this context *except* for its well-known features that allow chat participants to avoid federal retention requirements for communications exchanged on government communications systems. Worse still, it has been reported that the Department of Defense has warned personnel that Signal is vulnerable to hacking by professional Russian hacking groups, which use Signal's vulnerability to spy on persons of interest.[7] *See* Compl. ¶ 74.

Following the publication of the Goldberg March 24th article, the National Security Council confirmed the authenticity of the message thread.[8] While *The Atlantic* published what purports to be the entire text chain on the morning of March 26, 2025, after the administration repeatedly insisted that these detailed planning communications were not classified,[9] no government agency has taken visible or known steps to recover these records, preserve remaining messages, collect and preserve messages that are being created even now, or initiate enforcement proceedings under 44 U.S.C. § 3106 to compel these necessary steps. Compl. ¶¶ 75–83, ECF No.

---

[7] Quil Lawrence & Tom Bowman, *Days After the Signal Leak, the Pentagon Warned the App was the Target of Hackers*, NPR, March 25, 2025, https://www.npr.org/2025/03/25/nx-s1-5339801/pentagon-email-signal-vulnerability; *see also* Dep't of Def., *Memorandum for Senior Pentagon Leadership, Commanders of the Combat Commands, Defense Agency and DOD Field Activity Directors* at 3 (Oct. 11, 2023), https://dodcio.defense.gov/Portals/0/Documents/Library/Memo-UseOfUnclassMobileApps.pdf.

[8] *See* Patricia Zengerle & Doina Chiacu, *Trump Team Scrambles to Handle Fallout from Signal Chat Assailed as 'Sloppy, Careless,'* Reuters (Mar. 25, 2025, 10:48 PM), https://www.reuters.com/business/media-telecom/us-democrats-grill-trump-team-over-yemen-war-security-breach-2025-03-25/.

[9] *See* Goldberg & Harris, *supra* n.2.

1. During testimony in front of the Select Senate Committee on Intelligence, Defendant Ratcliffe admitted that Signal is installed on his official CIA devices and that he regularly uses the application.  Mar. 26 2025 Hr'g of Senate Select Committee on Intelligence at 1:04:48–54, https://www.intelligence.senate.gov/hearings/open-hearing-worldwide-threats-5 (last visited Mar.26, 2025).  Numerous public reports have also disclosed the widespread use of Signal in the current administration.[10]  Indeed, in the text messages themselves, the national security advisor, Michael Waltz, makes a reference to the "first PC [principals committee]," and no one in the group chat expressed any surprise or concern about using Signal for these communications.[11]  That strongly suggests that this was not a one-off use of Signal even by these particular senior government officials, let alone by the current administration.

Messages in the Signal chat about official government actions, including, but not limited to, national security deliberations, are federal records and must be preserved in accordance with federal statutes, and agency directives, rules, and regulations.  The apparent failure to preserve or recover the Signal messages—some of which may already have been deleted—creates an urgent risk of irreparable harm to the public's right to access federal records documenting one of the most consequential military actions of the current administration.

---

[10] *See, e.g.*, Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times, Jan. 12, 2025, https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html ("People involved in the operation say that secrecy and avoiding leaks is paramount, and much of its communication is conducted on Signal, the encrypted messaging app."); Shira Ovide, Danielle Abril & Hannah Natanson, *Why government workers and military planners all love Signal now*, Wash. Post, Mar. 25, 2025, https://www.washingtonpost.com/technology/2025/03/25/signal-government-trump-administration-federal-workers/; Rebecca Boone and Claudia Lauer, *Encrypted messaging apps promise privacy. Government transparency is often the price*, Assoc. Press, Mar. 20, 2025, https://apnews.com/article/encryption-apps-government-transparency-sunshine-week-ad26ecdee91c8f99f15228bbe7989ede.
[11] *See* Goldberg & Harris, *supra* n.2.

These issues are of particular interest to Plaintiff American Oversight, which has been working for months to seek access to government records from many of the same officials who participated in the text message chain that is the subject of this lawsuit. American Oversight has submitted multiple Freedom of Information Act requests to Defendants' agencies, including several requests in 2025 that seek Signal messages or email communications. Compl. ¶¶ 43–58, ECF No. 1; Sparks Decl. ¶¶ 9–24. For example, on January 28, 2025, American Oversight submitted a FOIA request to DoD. *Id.* On January 27, February 4, and March 18, 2025, American Oversight submitted FOIA requests to the State Department seeking a host of different communication records. *Id.* On January 30 and February 28, 2025, American Oversight submitted FOIA requests to Treasury seeking a variety of communications. *Id.*

There is strong reason to believe that some of the communications at issue in the Signal chat may be responsive to American Oversight's pending FOIA requests. Therefore, the documents may not be destroyed. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009). But the use of Signal, which markets itself as allowing the auto-deletion of text messages from the cellphones of sender and receiver alike, suggests that Defendant are creating records that are subject to the FRA and/or the FOIA without preserving those documents as required by those statutes.

## ARGUMENT

The Court should grant American Oversight's request for a temporary restraining order directing the individual Defendants to comply with their obligations under 44 U.S.C. § 3106, and directing all Defendants to immediately cease destruction of records and take action to recover documents already destroyed or at risk of destruction, because all four factors weigh in Plaintiff's favor. Plaintiffs seeking a temporary restraining order under Federal Rule of Civil Procedure 65

must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent injunctive relief, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016); *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n. 2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions."). Here, all four factors demonstrate American Oversight's entitlement to a temporary restraining order.

## I. AMERICAN OVERSIGHT IS LIKELY TO SUCCEED ON THE MERITS BECAUSE DEFENDANTS HAVE NOT MET THEIR OBLIGATIONS UNDER THE FRA AND BECAUSE DEFENDANTS' USE OF SIGNAL WITH AUTO-DELETE VIOLATES THE FRA.

American Oversight is likely to succeed on the merits. A plaintiff seeking to temporarily restrain an agency from destroying federal records demonstrates a likelihood of success on the merits by showing "(1) identify records that fall under the FRA; (2) allege that those records are being removed or destroyed in violation of the FRA; and (3) allege that the relevant agency head . . . and/or Archivist knew about the FRA violations and yet failed to initiate corrective action." *Price v. United States Dep't of Justice*, No. 18-CV-1339 (CRC), 2019 WL 2526439, at *6 (D.D.C. June 19, 2019). Each of those elements is met here.

### A. The Signal messages are government records under the FRA.

The FRA imposes affirmative duties on agencies and agency heads to preserve records documenting "the organization, functions, policies, decisions, procedures, and essential transactions" of the agency. 44 U.S.C. § 3101. These records must be managed in accordance with guidelines issued by the Archivist and cannot be deleted or destroyed without authorization under 44 U.S.C. §§ 3301–3314. Furthermore, agency heads are required to "establish safeguards against the removal or loss of records," *id.* § 3105, and notify and work with the Archivist to "initiate

action through the Attorney General for the recovery of records" unlawfully removed, *id.* § 3106. Electronic communications—including text messages, chats, and emails—are subject to the FRA when they document official actions. *See* 44 U.S.C.A. § 3301 (defining record to include "all recorded information"); 36 C.F.R. § 1220.18 (noting that "electronic messages that satisfy the definition of a Federal record under the Federal Records Act are electronic records"); *see also Competitive Enter. Inst. v. U.S. Env't Prot. Agency*, 67 F. Supp. 3d 23, 35 (D.D.C. 2014) ("EPA has a clear duty to preserve its text messages under FRA, and there is no other adequate remedy for EPA's alleged violations."). The platform used is irrelevant; what matters is the content and purpose of the communication. *See, e.g.*, *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955 (D.C. Cir. 2016) (reversing dismissal of an Administrative Procedure Act ("APA") claim for violation of the FRA related to "emails on a private server" that were "made or received in [the individual's] capacity as Secretary of State or in connection with the transaction of public business").

The Signal messages in question plainly meet the definition of federal records. The messages involved the heads of multiple executive branch departments discussing foreign policy and documenting the decision to take military action. Compl. ¶¶ 28, 32–36, ECF No. 1. As such, they are documents "made or received by a Federal agency . . . in connection with the transaction of public business" and are "evidence of the organization, functions, policies, decisions, procedures, [or] operations" of those departments. 44 U.S.C.A. § 3301. Indeed, the fact that senior Cabinet-level officials—including the Secretary of Defense, Secretary of State, and National Security Advisor—used Signal to communicate real-time operational instructions and national security analysis, Compl. ¶¶ 28, 36, ECF No. 1, renders the messages federal records by virtue "of the informational value of the data in them." 44 U.S.C. § 3301(a)(1)(A).

B.    *The Signal messages have been and are in imminent danger of being auto-deleted in violation of the FRA.*

The Signal messages are being or will be imminently destroyed by government officials in violation of the FRA.  Under the FRA, "[n]o records may be 'alienated or destroyed' except pursuant to the disposal provisions of the" statute.  *Armstrong v. Bush*, 924 F.2d 282, 285 (D.C. Cir. 1991) (quoting 44 U.S.C. § 3314).  The disposal provisions specify that destruction only may occur with authorization from the Archivist and only if the records "do not have 'sufficient administrative, legal, research, or other value to warrant their continued preservation by the Government[.]'" *Id.*

Autodeletion of messages on an electronic platform without consideration of their content plainly does not meet these criteria. In fact, the FRA explicitly prohibits such conduct. If a government officer or employee uses an electronic messaging platform such as Signal to conduct official business, the records automatically must be preserved—as opposed to automatically deleted—and contemporaneously forwarded to an official government account. *See* 44 U.S.C § 2911 (requiring federal officers and employees to create of copy of any message sent "using a non-official messaging account . . . in the original creation or transmission of the record" and to "forward[] a complete copy of the record to an official electronic messaging account of the officer or employee").

According to *The Atlantic*'s March 24, 2025, reporting, at least one official involved in the messages over Signal configured those messages to auto-delete after a set period. Compl. ¶¶ 37–38, ECF No. 1. The official set some of the messages to auto-delete after one week and others after four. *Id.* The conversations over Signal occurred between March 11 and March 15, 2025. *Id.* ¶ 28. Given the lapse of time, the messages set to be deleted after one week have likely already been destroyed by government officials. And the messages set to be deleted in four weeks are in

imminent risk of destruction. Other messages were likely sent after Mr. Goldberg left the Signal conversation and will be subject to autodeletion if steps are not taken to preserve these and other Signal communications. While the specific messages apparently received by Mr. Goldberg were published in his magazine on March 26, 2025, shortly after he first disclosed the existence of the text messages, the text messages themselves make reference to a prior "principals committee" discussion about these issues, indicating that there have been other Signal communications in the recent past. In addition, the FRA requires that the *government* must preserve the *actual* records in a form that is authentic. 44 U.S.C. § 3101. The publication of certain messages by Mr. Goldberg does not moot these issues.

Further, this incident, which became public only by chance, leads to the inescapable inference that these same officials have used, continue to use, and will use Signal or similar non-compliant tools for communications that are required by law to be preserved. The Director of the CIA confirmed that "one of the first things that happened when I was confirmed as CIA Director was Signal was loaded onto my computer at the CIA, as it is for most CIA officers." Mar. 26, 2025 Hr'g of Senate Select Committee on Intelligence at 1:04:48-54, https://www.intelligence.senate.gov/hearings/open-hearing-worldwide-threats-5 (last visited Mar. 26, 2025). Other public reporting indicates that there is widespread use of Signal or other similar communication platforms by current members of the executive branch when conducting government business.[12] This is nothing less than a systematic effort to evade the rules for record

---

[12] *See, e.g.*, Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times, Jan. 12, 2025, https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html ("People involved in the operation say that secrecy and avoiding leaks is paramount, and much of its communication is conducted on Signal, the encrypted messaging app."); Shira Ovide, Danielle Abril & Hannah Natanson, *Why Government Workers and Military Planners All Love Signal Now*, Wash. Post, Mar. 25, 2025,

retention in the federal government.  There is no legitimate reason for this behavior, which deprives the public and Congress of an ability to see the actions of government.

C.    *Defendants have failed to meet their FRA obligations to prevent destruction of the Signal messages, despite knowledge that they are subject to autodeletion.*

The Defendants have failed take measures to prevent the destruction of the Signal messages as required by law.  When an agency head learns of the destruction or imminent destruction of records subject the FRA, she must inform "the Archivist of [that] unlawful removal or destruction of records and shall initiate, through the Attorney General, an action to recover the records." *Armstrong*, 924 F.2d at 285 (quoting 44 U.S.C. § 3106).  Further, if the agency head fails to take action, then the National "Archivist shall request the Attorney General to initiate such action, and shall notify the Congress when such a request has been made." *Id.*

Here, as direct participants in the Signal chat, the heads of multiple agencies and the Acting Archivist are clearly aware of the destruction and imminent destruction of federal records but are failing to prevent it. The Signal chat involved the Secretary of Defense, the Secretary of Treasury, the Secretary of State, the Director of National Intelligence, and the Director of the CIA—all agency heads. Compl. ¶¶ 8–14, 36, ECF No. 1. Further, the Secretary of State, Mr. Rubio, is also serving as the Acting National Archivist. *Id.*

Each of these individuals knew or should have known that the auto-delete setting was enabled for at least some of the Signal messages.  *Id.* ¶ 39. In fact, Mr. Goldberg, who was inadvertently included in the messages, reported that the Signal application alerted him that some

---

https://www.washingtonpost.com/technology/2025/03/25/signal-government-trump-administration-federal-workers/; Rebecca Boone and Claudia Lauer, *Encrypted messaging apps promise privacy. Government transparency is often the price*, Assoc. Press, Mar. 20, 2025, https://apnews.com/article/encryption-apps-government-transparency-sunshine-week-ad26ecdee91c8f99f15228bbe7989ede.

messages were set for autodeletion and the timeframe for deletion. *Id.* ¶ 37. According to Signal's website, "[e]ach and every disappearing message will have a timer countdown icon that is visible at the bottom of the message bubble." Signal, *Set and manage disappearing messages*, https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages (last visited Mar. 26, 2025). The "timer countdown icon" is plainly visible in the screenshots published in *The Atlantic*:



Sparks Decl. ¶ 8; Goldberg & Harris, *supra* n.2.

Despite extensive public reporting on the Signal thread, no such action to preserve the messages or recover the already deleted messages has been publicly stated.[13] Although the

---

[13] Defendant Hegseth has publicly denied that chat involved "war plans," calling into question whether he will properly categorize records as necessary and appropriate for preservation as

National Security Council acknowledged the authenticity of the messages, no evidence has emerged that any of the agency heads who themselves participated in the group chat, nor Mr. Rubio in his separate capacity as Acting Archivist, initiated any preservation, recovery, or notification steps as required by the FRA. In fact, the Secretary of Defense has apparently denied the existence or veracity of these messages,[14] rendering it extremely implausible that he has taken any steps to preserve what he claims does not exist. Certainly, none of the Signal chat participants cautioned or reminded the others of their obligations to preserve federal records, particularly with the auto-delete feature activated.[15] This inaction constitutes unlawful withholding of agency action under the APA, 5 U.S.C. § 706(1), and arbitrary and capricious failure to fulfill a statutory mandate under section 706(2)(A).

## II.    AMERICAN OVERSIGHT AND THE PUBLIC IT SERVES WILL SUFFER IRREPARABLE HARM FROM DELETION OF CRITICAL FEDERAL RECORDS THAT MAY BE RESPONSIVE TO CURRENT AND FUTURE FREEDOM OF INFORMATION ACT REQUESTS.

American Oversight's purpose is to use FOIA to help it, and the public, monitor the activities of government officials and agencies. Compl. ¶ 5, ECF No. 1; Sparks Decl. ¶¶ 2–3. American Oversight will be irreparably harmed if Defendants' Signal chats are deleted or destroyed, and only a temporary restraining order can address the urgent harm that would follow from Defendants' destruction of their communications.

---

required by the FRA. *See, e.g.*, Tara Suter, *Hegseth Says 'Nobody Was Texting War Plans' After Group Chat Brief*, Forbes (Mar. 24, 2025, 7:24 PM), https://thehill.com/policy/defense/5211867-hegseth-says-nobody-was-texting-war-plans-after-group-chat-breach/.

[14] *See, e.g.,* Victor Nava, *Pete Hegseth claims 'nobody was texting war plans' in first comments since Yemen strike group text scandal*, N.Y. Post, Mar. 24, 2025, *available at* https://nypost.com/2025/03/24/us-news/hegseth-claims-nobody-was-texting-war-plans-in-first-comments-since-yemen-strike-group-text-scandal/.

[15] *See* Goldberg & Harris, *supra* n.2.

The concern about destruction of Signal chats is more than hypothetical: at least one participant in the Signal chat enabled the function to automatically delete their Signal messages after set time limits. Compl. ¶ 37, ECF No. 1; *see also* Sparks Decl. ¶ 8. Defendant Waltz set at least some messages to disappear after one week, and other messages were set to disappear after four weeks. Compl. ¶ 38, ECF No. 1. In addition, it appears that at least some of the Signal chats have already been deleted. *Id.* ¶ 39. Mr. Goldberg left these discussions before they were completed. It is, therefore, likely that there are additional communications—not reported—that are subject to autodeletion.

Further, these government employees are likely using Signal to conduct other official business with the autodeletion function enabled. *See supra*, n.9. None of the participants expressed any surprise or concern at this particular conversation taking place over Signal.[16] Indeed, National Security Advisor Waltz made reference to a "first PC," indicating that there was a prior principals committee meeting text message chain.[17] Yet every day such communications are being destroyed. Simply put, Defendants' use of Signal, rather than approved communication channels, and failure to uphold their obligations to safeguard federal records and take action to recover them under 44 U.S.C. §§ 3105–06, thwarts the ability of American Oversight and concerned citizens to monitor the activities of their government.

Consistent with its mission, American Oversight has submitted multiple FOIA requests to Defendants' agencies, including several requests in 2025 that seek Signal messages. Compl. ¶¶ 43–59, ECF No. 1; Sparks Decl. ¶¶ 4–6. For example, American Oversight submitted FOIA requests to the State Department seeking all communications, expressly including Signal messages,

---

[16] *See* Goldberg & Harris, *supra* n.2.
[17] *See* Goldberg, *supra* n.1.

involving Defendant Marco Rubio, dating from January 20, 2025, through the dates that the searches are conducted. Compl. ¶¶ 47–49, ECF No. 1; Sparks Decl. ¶¶ 13–15. As of March 3, 2025, two FOIA requests to the Department of State were listed as "In Process," and as of March 12, 2025, a separate FOIA request to the Department of State was listed as "On Hold-Need Info/Clarification." *Id.* Depending on the dates that the searches are conducted, Defendants' "Houthi PC small group" communications from March 11 to March 15, 2025, could be responsive to the FOIA requests to the Department of State. American Oversight also issued additional FOIA requests in 2025 to the Department of Defense and Treasury Department that specifically requested Signal communications.[18] Compl. ¶¶ 44, 54–55, ECF No. 1; Sparks Decl. ¶¶ 10, 19–20.

It is axiomatic that American Oversight cannot provide the public with information about Defendants' Signal discussions that would otherwise be available under FOIA[19] if such communications are deleted or destroyed. *See* Compl. ¶¶ 82, ECF No. 1; Sparks Decl. ¶ 23; *see generally Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). Defendants' failure to safeguard these records from loss and take the mandatory

---

[18] As with American Oversight's FOIA requests to the Department of State, the FOIA requests to the Department of Treasury, issued on January 30 and February 28, 2025, respectively, request among other things, Signal messages sent by Treasury Officials, including Defendant Scott Bessent, and cover timeframes of January 20, 2025, through the date the search is conducted. Compl. ¶¶ 54–55; Sparks Decl. ¶¶ 19–20. Both FOIA requests to the Treasury Department are pending, suggesting that the Signal chat could be covered by the FOIA requests.

[19] While some or all of the contents of the Signal chat central to this case may have been properly withheld pursuant to FOIA exemptions, American Oversight would likely have been entitled to *some* information that could have been informative to the public, including volume of responsive records, dates, times, participants, and other non-exempt, segregable information, in the form of redacted copies or a *Vaughn* index, along with the basis for any exemptions invoked. *See* 5 U.S.C. §§ 552(a)(6)(A)(i); 552(a)(6)(F); 552(a)(8)(A)(ii)(II). Moreover, the FRA still requires preservation of federal records even if they are not released under FOIA.

notification and enforcement steps outlined in the FRA permits the destruction of these records, which is particularly damaging to American Oversight's mission and to public debate at a time when the United States' national security agencies and their activities are the subject of intense public interest and debate.

The fact that *The Atlantic* purported to publish copies of this particular Signal text chain does not absolve government officials of their obligation to preserve the *actual* records, nor diminish the irreparable harm if the actual records are destroyed. The availability of unauthenticated newsmagazine copies of government records are no substitute for the *actual* records.[20]

Further, once Signal text message records are destroyed, they cannot be recovered, permanently depriving the public of their content and obstructing government accountability. *See* Compl. ¶ 31, ECF No. 1. Courts recognize that irreparable harm occurs when government records are unlawfully destroyed. *See Armstrong v. Bush*, 924 F.2d 282, 288 (D.C. Cir. 1991) (noting that unlawfully deleted government records "will be lost forever to history"); *Am. First Legal Found. v. Becerra*, No. CV 24-1092 (RC), 2024 WL 3741402, at *14–16 (D.D.C. Aug. 9, 2024) (finding irreparable harm because "the loss or destruction of federal records is a significant harm to both Plaintiff and the public, and that it is a harm that cannot be cured once the records are lost or destroyed").

Nor is there an alternate means to ensure that the Signal Communications are preserved. As described by Signal's "Terms & Privacy Policy," "Signal messages and calls cannot be accessed by [Signal] or other third parties because they are always end-to-end encrypted, private,

---

[20] Perhaps for this reason, the FRA does not contain an exception allowing disposal of records that have been inadvertently leaked to the press.

and secure."[21] *See* Compl. ¶ 31, ECF No. 1. Without immediate intervention, Defendants' Signal communications will be permanently lost.

The content of these particular Signal messages—communications relating to the use of military force—makes their destruction a matter not just of historical concern but of public safety, democratic accountability, and constitutional oversight of war powers. But even greater is the irreparable harm from the loss of Signal messages that were *not* inadvertently sent to a prominent national reporter—without a court order, those will be lost in time, like tears in rain.

The second factor clearly weighs in favor of a temporary restraining order.

## III. THE BALANCE OF EQUITIES FAVORS A TEMPORARY RESTRAINING ORDER BECAUSE LOST RECORDS ARE IRRETRIEVABLE BUT DEFENDANTS SUFFER NO HARM FROM COMPLYING WITH THEIR LEGAL OBLIGATIONS.

The balance of equities tips sharply in American Oversight's favor. No legitimate interests would be harmed by granting American Oversight its requested relief. Defendants have no right to hide their communications from the public or to deprive the public of its right of access, and the notification requirements under the FRA are mandatory:

> **(a) Federal agency notification.**--The head of each Federal agency **shall** notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency.
>
> **(b) Archivist notification.**--In any case in which the head of a Federal agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action described in subsection (a), or is participating in, or believed to be participating in any such unlawful action,

---

[21] Signal, *Signal Terms & Privacy Policy*, available at
https://signal.org/legal/#:~:text=Signal%20Terms%20&%20Privacy%20Policy,Privacy%20Polic
y%20are%20available%20below (last visited Mar. 26, 2025).

the Archivist **shall** request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

44 U.S.C. § 3106 (emphasis added).

Defendants cannot assert any injury from being required to comply with their nondiscretionary statutory obligations under the FRA and APA. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Without immediate relief, records will continue to be lost; yet with relief, Defendants must simply cease the destruction of records, preserve existing material, and notify the proper the Attorney General for enforcement of the FRA. By contrast, American Oversight, and the public, face the permanent loss of documentary evidence relating to decisions of the highest constitutional magnitude: war, diplomacy, intelligence operations, and presidential authority.  The third factor supports granting this motion.

## IV.    THE PUBLIC INTEREST STRONGLY SUPPORTS RELIEF.

Defendants cannot deny that the public interest will be served by an order requiring Defendants to preserve government records and comply with the FRA and APA. *See Newby*, 838 F.3d at 12 ("There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.") (cleaned up). Congress enacted the FRA to ensure continuity of government functions, facilitate historical understanding, and provide transparency in governance. *See* 44 U.S.C. § 3101. Preventing the destruction of federal records poses no harm to Defendants, while allowing their destruction causes severe harm to the public's right to access government records. In fact, this Court has recognized that upholding the FRA serves the public interest. *See, e.g.*, *Am. First Legal Found. v. Becerra,* No. CV 24-1092 (RC), 024 WL 3741402, at *16 (D.D.C. Aug. 9, 2024); *Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5, 15 (D.D.C. 2019). The public has a vital interest in the enforcement of the FRA

and the issuance of a temporary restraining order directing Defendants to preserve its records immediately.

This interest is heightened where the records concern the use of military force and foreign policy decision-making. The records at issue document real-time coordination of military strikes involving dozens of civilian casualties and risks to American personnel. Congress and the public have an urgent need to understand how those decisions were made, whether proper channels were followed, and whether future use of encrypted communications should be reined in by statute or executive guidance. *See, e.g.*, *Aids Vaccine Advoc. Coal. v. United States Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025) ("[W]hile the public no doubt has an interest in the Executive carrying out his important role in foreign affairs, it also has an interest in ensuring those duties are carried out in accordance with law, including the APA . . . ."). The public also has the right to trust that sensitive and important records like these, documenting major government decisions and operations, are being properly preserved pursuant to Defendants' legal obligations, not just for the present moment, but for posterity. The Court can order preservation of the records at issue before they are lost. Delay in that preservation will result in permanent harm.

## V.     NO BOND SHOULD BE REQUIRED.

The Court should not impose a security requirement in this public interest litigation. *See e.g.*, *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239 (LLA), 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (declining to impose bond on a public interest plaintiff, highlighting that the trial court has discretion to require no bond at all, and noting that it would "defy logic" to require bond in a case where the defendants—a federal agency and its director— would face no monetary injury from preliminary injunctive relief); *see also e.g.*, *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985)

("The court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review."); *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) ("public-interest litigation [is] an area in which the courts have recognized an exception to the Rule 65 security requirement"); *Mich. Citizens for an Indep. Press v. Thornburgh*, No. CIV.A. 88-2322, 1988 WL 90388, at *8 n.12 (D.D.C. Aug. 17, 1988) (declining to order security in part because action was "brought in the public interest on behalf of individuals whose resort to further judicial review would be impaired if compelled to pay the bond that defendants seek").

Here, American Oversight is a public interest plaintiff, and the Court has broad discretion to dispense with the requirement of bond, particularly in a case where Defendants face no monetary injury if temporary injunctive relief is imposed. Therefore, the Court should allow this case to proceed without a bond.

## CONCLUSION

For the foregoing reasons, Plaintiff American Oversight respectfully requests that this Court issue a temporary restraining order directing Defendants to immediately cease any destruction of records, to take action to recover records already destroyed, and to comply with the notification requirements outlined in 44 U.S.C. § 3106, pending further proceedings.

Dated: March 26, 2025

Respectfully submitted,

*/s/ Benjamin A. Sparks*
Benjamin A. Sparks
D.C. Bar No. 90020649
Ronald A. Fein
D.C. Bar No. 90026641
Katherine M. Anthony
D.C. Bar No. 1630524

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 873-1741
ben.sparks@americanoversight.org
ron.fein@americanoversight.org
katherine.anthony@americanoversight.org
*Counsel for Plaintiff*