# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN OVERSIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 25-cv-883-JEB |
| ) | |
| PETE HEGSETH, in his official capacity as ) | |
| Secretary of Defense et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

**INTRODUCTION**

The Court should deny the motion for a temporary restraining order. Plaintiff's claim that Defendants have failed to take measures to prevent the destruction of Signal messages is not reviewable. Moreover, a TRO is unwarranted because the Defendant agencies are already taking steps to locate and preserve the Signal chat at issue, and at least one agency has already located, preserved, and copied into a federal record keeping system a partial version of the chat.

**BACKGROUND**

**I.     The Federal Records Act**

The FRA "governs the creation, management and disposal of federal records," in order to ensure "'[a]ccurate and complete documentation'" of Federal Government business and "'[j]udicious preservation and disposal of records.'" *Armstrong*, 924 F.2d at 284-85 (quoting 44 U.S.C. § 2902 (alterations in original)). The FRA requires agencies to create and preserve records that document the organization, functions, policies, decisions, procedures, and essential transactions of the agency, and establish safeguards against the removal or destruction of records. 44 U.S.C. §§ 3101, 3105. The Archivist of the United States has the ultimate authority to determine whether "recorded information" constitutes a "record" under the FRA and to authorize agencies to dispose of records. *Id.* § 3301(b); *see id.* §§ 2904, 3303.

Pursuant to the FRA, "records" are defined to include, with limited exceptions, "all recorded information, . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them." 44 U.S.C. § 3301(a)(1)(A).

The FRA is based upon a "system of administrative enforcement." *Armstrong*, 924 F.2d at 294. Under this system, "the agency head and Archivist may proceed first by invoking the agency's 'safeguards against the removal or loss of records,' and taking . . . intra-agency actions" to prevent the potential loss or removal of records. *Id.* at 296 n.12 (quoting 44 U.S.C. § 3105). If those efforts are unsuccessful, "the agency head, in the first instance, and then the Archivist [must] request that the Attorney General initiate an action to prevent the destruction of documents." *Id.* at 294; *see* 44 U.S.C. § 3106. While the statute requires an agency to notify the Archivist "of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency," it only requires the agency to seek the assistance of the Attorney General for "the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully *removed* from that agency." 44 U.S.C. § 3106(a) (emphasis added).

Because "Congress . . . decided to rely on administrative enforcement, rather than judicial review at the behest of private litigants, to prevent the destruction or removal of records," the FRA "precludes judicial review" of actions by private litigants seeking to prevent an agency official from improperly destroying or removing records. *Armstrong*, 924 F.2d at 294. Instead, under the APA, a private party may challenge (1) the sufficiency of an agency's record-keeping guidelines and directives; or (2) the agency head's or the Archivist's failure to seek initiation of an enforcement action by the Attorney General under 44 U.S.C. § 3106. *See Armstrong*, 924 F.2d at 292-95.

## II.     Factual Background

Plaintiff alleges in its complaint, filed on March 25, 2025, that the day before, The Atlantic published a story about senior administration officials' use of the Signal messaging application "to

3

discuss and coordinate imminent U.S. military strikes in Yemen ('the Signal chat')." Compl. ¶ 28 & n.1, ECF No. 1.  It further alleges that Signal messages are stored only on an individual's device with no copy or back-up messages retained on Signal servers, and that Signal has a function that allows users to set time limits by which sent messages will disappear and be deleted from the sender's and recipient's devices.  *Id*. ¶¶ 30-31.  Plaintiff claims that according to the Atlantic article, at least one participation in the Signal chat enabled that function.  *Id*. ¶ 37.  Thus, Plaintiff alleges, "upon information and belief," that one or more messages in the Signal chat have been deleted.  *Id*. ¶ 40.  Again "upon information and belief," Plaintiff alleges that Defendants, in their capacities as agency heads, "have not taken steps to preserve messages sent or received in the Signal chat or to recover any that have been lost or deleted."  *Id*. ¶ 63.

   Plaintiff, a frequent submitter of FOIA requests, brings claims against the Defendant agencies under the Administrative Procedure Act for violating their obligations under the Federal Records Act to preserve and safeguard the Signal chat.  *Id*. ¶¶ 66-89.  On March 26, 2025, Plaintiff filed a Motion for a Temporary Restraining Order (TRO).  Plaintiff seeks an order requiring Defendants to take steps to ensure the preservation of any federal records that were created between March 11 and March 15, 2025, "regarding and including any messages that are or were contained in 'the Signal chat.'"  Plaintiff further requests that the Court order Defendants to seek an action through the Attorney General for the recovery of any such records, and to take steps to confirm that the use of applications such as Signal complies with FRA rules and requirements. Pl.'s Proposed Order at 2.  Lastly, Plaintiff wants Defendants to file, within two days of an order, a status report with supporting declarations on the status of their compliance with the order.  *Id*. at 3.

## STANDARD OF REVIEW

A temporary restraining order, like a preliminary injunction, is extraordinary relief granted only to preserve the status quo. *See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 1:25-cv-239, 2025 WL 314433, at *2 (D.D.C. Jan. 28, 2025). It is "an extraordinary and drastic remedy" and "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). As such, it may "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain this relief, a plaintiff "must show (1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in his favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter*, 555 U.S. at 20); *see also Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 109 (D.D.C. 2022) ("The decision of whether to award a TRO is analyzed using the same factors applicable to preliminary injunctive relief[.]" (cleaned up)). When "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). When seeking a mandatory injunction, the Plaintiff "must meet a higher standard than in the ordinary case by showing clearly that [the movant] is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Electronic Privacy Information Center v. Department of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (quoting *Columbia Hospital for Women Foundation, Inc. v. Bank of Tokyo–Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997)).

**ARGUMENT**

**I.      Plaintiff has not demonstrated a significant likelihood of success on the merits**

Plaintiff claims in its TRO motion that Defendants have failed to comply with their obligations under the FRA to prevent the destruction of the Signal chat. Mot. at 15. Plaintiff cannot establish a likelihood of success on this claim because the FRA contention is meritless and factually unsound.

The FRA requires heads of federal agencies to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." 44 U.S.C. § 3101. But even where a Government officer "has violated" the FRA, the Supreme Court has explained that "Congress has not vested federal courts with jurisdiction to adjudicate that question upon suit by a private party. That responsibility is vested in the administrative authorities." *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 149–50 (1980). The Supreme Court held in *Kissinger* that the FRA does not create any private enforceable rights, given that the statute was intended "not to benefit private parties, but solely to benefit the agencies themselves and the Federal Government as a whole." *Id.* at 149.

Applying that teaching, in *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991), the Court of Appeals assessed three types of agency actions under the FRA: "(1) agency employees' 'destroying records in contravention of the . . . recordkeeping guidelines and directives'; (2) the agency's failure to employ adequate recordkeeping guidelines and directives; and (3) the agency head's or [Archivist of the United States]'s refusal to seek the initiation of an enforcement action by the Attorney General" under 44 U.S.C. § 3106. *See CREW v. Pruitt*, 319 F. Supp. 3d 252, 257 (D.D.C. 2018) (quoting *Armstrong*, 924 F.2d at 291, 294–95). Agency actions of the first type are "not reviewable," whereas those of the second and third types may proceed under the

6

Administrative Procedure Act. *See id.* Hence, "courts may not entertain private suits alleging that agencies have improperly destroyed or removed records, but they may consider ones challenging whether agency guidelines that permit destruction of certain records are adequate under the FRA and ones alleging that the agency head or Archivist improperly refused to seek initiation of an enforcement action by the Attorney General." *Id*. at 258. Courts thus recognize that while the FRA "does contain several specific requirements," it "understandably leaves the details of records management to the discretion of individual agency heads." *Armstrong*, 924 F.2d at 293; *see also CREW v. Dep't of Homeland Sec.*, 507 F. Supp. 3d 228, 245 (D.D.C. 2020).

Here, Plaintiff's claim that it bases its TRO motion on is clearly the first type of claim that is not reviewable. Plaintiff claims that "[t]he Defendants have failed [to] take measures to prevent the destruction of the Signal messages as required by law." Mot. at 15. Plaintiff therefore depicts "agency employees" as engaged in "destroying records in contravention of the . . . recordkeeping guidelines and directives" of the agency, which is the first of the three types of FRA claims analyzed in *Armstrong*—and, critically, the one type of claim that is "not reviewable" under that precedent. *See, e.g.*, *Pruitt*, 319 F. Supp. 3d at 257-58; *see generally Armstrong*, 924 F.2d at 291, 294–95.

Even if the claim were reviewable, it is belied by Defendants' declaration submitted herewith. That declaration establishes that Defendants are taking steps to locate and preserve the Signal chat, and that at least one of the agencies has located, preserved, and copied into a federal record keeping system a partial version of the Signal chat. Declaration of Christopher Pilkerton at 2. To the extent that Plaintiff's proposed TRO order seeks broader relief, such as ordering Defendants to initiate a recovery action through the Attorney General and take steps to confirm that any use of Signal complies with the FRA, that relief asks for the ultimate relief sought in this

lawsuit and prematurely short-circuits the administrative process that the FRA contemplates. *See, e.g.*, *Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3, 4 (D.C. Cir. 2018) (quoting *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016)).

## II. Plaintiff has not demonstrated irreparable harm

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). "A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). To constitute irreparable injury, the harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (citation and alteration omitted).

Plaintiff cannot establish irreparable harm because the agencies are currently taking steps to locate and preserve the Signal chat. As noted above, at least one agency has located, preserved, and copied into a federal records system a partial version of the Signal chat. Declaration of Christopher Pilkerton at 2. Moreover, as Plaintiff acknowledges in its motion, "*The Atlantic* published another article, detailing the entirety of the Signal group chat[.]" Mot. at 6. Thus, the Signal chat has, for all intents and purposes, been published, and Plaintiff does not argue this version is incomplete or inaccurate.

## III. The balance of equities and public interest weigh in favor of the government

Plaintiff's failure to show likelihood of success on the merits impacts their ability to satisfy the remaining two factors. *See, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897

F.3d 314, 335 (D.C. Cir. 2018) ("[T]he strength of [the plaintiff's] showing on public interest rises and falls with the strength of its showing on likelihood of success on the merits."). Because Plaintiff has not established likelihood of success on the merits or irreparable harm, these last two factors also do not support issuance of a TRO.

### IV.    Any relief should be narrowly tailored

For the forgoing reasons, the motion for TRO should be denied. But in the event the Court decides to issue relief, it is well settled that injunctive relief "must be narrowly tailored to remedy the specific harm shown," *Neb. Dep't of Health & Hum. Servs. v. U.S. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (citation omitted), and "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). *See also Gill v. Whitford*, 585 U.S. 48, 72-73 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."). Here, Plaintiff seeks overly broad injunctive relief concerning the general preservation of any electronic messaging. Any relief from the Court should limit any potential relief to the preservation of the Signal chat at issue.

Finally, the Court should order security with any preliminary injunction. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

9

## CONCLUSION

For the forgoing reasons, Defendants respectfully request that the Court deny the motion for a temporary restraining order.

Dated: March 27, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General, Civil Division

MARCIA BERMAN
Assistant Branch Director
Federal Programs Branch

 /s/ Amber Richer
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov
*Attorneys for Defendant*