# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00883-JEB |
| | ) | |
| PETE HEGSETH, in his official capacity as Secretary of Defense, | ) | |
| | ) | |
| TULSI GABBARD, in her official capacity as Director of National Intelligence, | ) | |
| | ) | |
| JOHN L. RATCLIFFE, in his official capacity as Director of the Central Intelligence Agency, | ) | |
| | ) | |
| SCOTT BESSENT, in his official capacity as Secretary of the Treasury | ) | |
| | ) | |
| MARCO A. RUBIO, in his official capacities as Secretary of State and Acting Archivist of the United States, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF AMERICAN OVERSIGHT'S RESPONSE TO
DEFENDANTS' STATUS REPORT (ECF NO. 10)**

Pursuant to the Minute Order entered on April 1, 2025, Plaintiff American Oversight respectfully submits this response to Defendants' Status Report, ECF No. 10. While American Oversight acknowledges the representations in Defendants' Status Report and the supporting

declarations,[1] glaring deficiencies in all but one of the supporting declarations, and recent media reports[2] about the prevalence of Signal usage within the Executive Branch, necessitate more robust and immediate preservation assurances.

Accordingly, American Oversight respectfully requests that the Court order Defendants to take additional steps to preserve (1) the "Signal chat"[3] messages, and (2) Defendants' other Signal communications about government business, in a manner that would cure the deficiencies identified herein. American Oversight requests Defendants memorialize such additional steps in new declarations. Alternatively, American Oversight respectfully requests that the Court grant American Oversight leave to conducted limited, expedited discovery to probe the vague, incomplete assertions in the supporting declarations so that American Oversight can fully evaluate whether further urgent (e.g., preliminary injunctive) relief is warranted.[4]

---

[1] *See* Decl. of Christopher Pilkerton, Mar. 27, 2025, ECF No. 8-1 ("Treasury Decl."); Decl. of Gerald J. Dziecichowicz, Mar. 27, 2025, ECF No. 8-2 ("DoD Decl. 1"); Decl. of David P. Bennett, Mar. 31, 2025, ECF No. 10-1 ("DoD Decl. 2"); Decl. of Gregory M. Koch, Mar. 31, 2025, ECF No. 10-2 ("ODNI Decl."); Decl. of Hurley V. Blankenship, Mar. 31, 2025, ECF No. 10-3 ("CIA Decl."); Decl. of Mallory D. Rogoff, Mar. 29, 2025, ECF No. 10-4 ("State Decl.") (collectively "the supporting declarations").

[2] Dasha Burns, *Waltz's Team Set Up At Least 20 Signal Group Chats for Crises Across the World*, Politico (April 2, 2025, 2:45 PM), https://www.politico.com/news/2025/04/02/waltzs-team-set-up-at-least-20-signal-group-chats-for-crises-across-the-world-00266845.

[3] *See* Compl. ¶ 28, ECF No. 1.

[4] On April 2, 2025, as a professional courtesy, counsel for American Oversight contacted counsel for Defendants by telephone and provided a short summary of some of American Oversight's views as to the deficiencies in the supporting declarations.

***The Court Should Order Defendants to Take Additional Preservation Steps and to Produce New Declarations Specifically Memorializing Their Efforts.***

Six days after the Court entered its Minute Order on March 27, 2025, ordering Defendants to "promptly make best efforts to preserve all Signal communications from March 11–15, 2025," *Politico* reported that staff for National Security Advisor Mike Waltz—the organizer of the Signal chat—"regularly set up chats on Signal to coordinate official work on issues including Ukraine, China, Gaza, Middle East policy, Africa and Europe . . . ."[5] Media reports have not yet identified Defendants as direct participants in these newly revealed Signal chats, but the reported subject matters of the group chats and Defendants' respective positions within government strongly suggest that one or more Defendants participated in such correspondence.

Although American Oversight did not object to Defendants' interpretation of the Court's March 27 Minute Order as applying only to the Signal chat,[6] the additional revelations since March 27 and the substantive shortfalls in the supporting declarations show that more robust preservation is necessary to protect the Signal chat and other Signal communications. The statements in all but one of the supporting declarations[7] raise serious questions about Defendants' purported efforts to preserve the Signal chat that originally gave rise to this action and, in light of the new reporting about Signal's apparent prevalence, show why Defendants' actions in response to the Court's March 27 Minute Order are now grossly inadequate moving forward to ensure that all federal records and evidence at issue in this case have been and will be preserved for the pendency of litigation.

---

[5] *See* Burns, *supra* n.2.

[6] *See* Notice, ECF No. 9.

[7] American Oversight finds that the Treasury Declaration is sufficient and, thus, American Oversight focuses only on the remaining declarations.

Specifically, American Oversight has identified the following information gaps in the supporting declarations:

(1)   The declarations of the State Department ("State"), the Central Intelligence Agency ("CIA"), the Office of the Director of National Intelligence ("ODNI), and the Department of Defense ("DoD") fail to specify whether the methods of preservation of the Signal chat messages are forensically sound and comply with the Federal Records Act, agency regulations, and the regulations of the National Archives and Records Administration, such as, for example, preserving metadata of electronic records;[8]

(2)   The above declarations also fail to specify the precise date(s) that preservation efforts took place, thereby obfuscating which messages from the Signal chat, if any, were actually preserved;

(3)   The CIA Declaration and DoD Declaration 2 do not provide an adequate foundation to establish the declarant's own personal knowledge of the assertions made. For example, the CIA Declaration repeatedly and vaguely states "I understand that . . .";

(4)   The CIA Declaration states that "residual administrative content" was transferred to an agency system, without defining "residual administrative content" or comparing it to agency or NARA regulations or guidance;

(5)   The State Declaration states that "images of the Signal chat *in the possession of the Office of the Secretary* have been captured," without specifying whether the Secretary and Acting Archivist himself may have in his possession—whether on an official device or a personal device—agency records that may *not* be in the possession of his office;

---

[8] *See, e.g.*, 36 C.F.R. § 1220.18 ("Electronic record . . . includes both record content and associated metadata that the agency determines is required to meet agency business needs."); *see also* 44 U.S.C. § 2911.

(6) The ODNI Declaration fails to provide any information about forward-looking preservation assurances, such as a litigation hold; and

(7) The CIA, ODNI and both DoD declarations fail to confirm that the referenced litigation holds apply not only to all existing messages from the Signal chat, but also to all existing and future Signal messages sent or received by Defendants in the course of government business.[9]

Defendants will suffer no prejudice from an order to take further preservation efforts and confirm those efforts to the Court, and the balance of hardships favors such an order. American Oversight's ultimate relief on the merits in part asks the Court to declare "that messages and communications sent through the Signal application in the course of conducting agency business are agency records subject to the [Federal Records Act ("FRA")]." Compl. at ¶¶ 16–27, and 17, ECF No. 1. Assuming *arguendo* that the Court ultimately were to decide that the Signal chat and Defendants' other Signal messages are somehow not federal records under the FRA, then Defendants would be no worse off from taking (and explaining to the Court) thorough and specific preservation efforts. However, if (as is more likely) the Court ultimately decides that the Signal

---

[9] While Defendants' interpretation of the March 27 Minute Order was limited to the Signal chat, a litigation hold, by definition, applies to "all sources of potentially relevant information," and "counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Doe v. D.C.*, 1:19-cv-01173 (CJN), 2023 WL 3558038, at *13 (D.D.C. Feb. 14, 2023) (internal quotes omitted). Thus, Defendants' litigation holds should extend beyond the Signal chat because Defendants' other Signal chats are directly relevant to the claims in this case, *see* Compl. at ¶¶ 65–89, ECF No. 1, and because media reports since March 27 indicate the likely existence of multiple other Signal communications involving Defendants, *see* Burns, *supra* n.2. In that regard, the Treasury Declaration stands as an acceptable example. *See* Treasury Decl. ¶ 3, ECF No. 8-1. Further, the litigation holds appear to have been issued after American Oversight filed its lawsuit and not on the date *The Atlantic* first reported the Signal chat—when Defendants should have "reasonably anticipate[d] litigation . . . ." *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 54 (D.D.C. 2023); Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic (Mar. 24, 2025, 12:06 PM ET), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/.

chat and Defendants' other Signal messages *are* federal records—some of which are legally subject to "permanent"[10] retention status—then the lack of strict preservation efforts and documentation of such efforts at this stage could result in the permanent loss of federal records and a hollow declaratory judgment.[11] Indeed, the lack of specific information as to when preservation efforts began and what specific messages were preserved supports the inference that, due to Defendants' apparent failures, some messages have already been automatically deleted,[12] and more may continue to be deleted without further protection.

For these reasons, American Oversight respectfully requests that the Court order Defendants to take additional steps to preserve the Signal chat messages and Defendants' other Signal communications about government business in a manner that would cure the deficiencies identified above, and to memorialize such efforts with specificity in new declarations.

***Alternatively, the Court Should Grant American Oversight Leave to Conduct Limited, Expedited Discovery.***

At minimum, or if Defendants are unable to provide adequate declarations, American Oversight should have the opportunity to conduct limited, expedited discovery to probe the representations—and lack of representations—made in the supporting declarations. That way, as

---

[10] *See, e.g.*, U.S. Dep't of State Records Schedule, *Secretary's Miscellaneous Correspondence File* - A-01-001-08, *available at* https://foia.state.gov/_docs/RecordsDisposition/A-01.pdf (designating "permanent" status for "[i]ncoming and outgoing correspondence and memorandums on substantive U.S. foreign policy issues").

[11] American Oversight's Complaint also seeks declaratory and injunctive relief surrounding Defendants' obligations under the FRA, such as maintaining an adequate recordkeeping system, notifying the Archivist of actual or threatened unlawful removal of federal records, and initiating an action through the Attorney General for enforcement of the statute. Compl. ¶¶ 16–27 and at 17, ECF No. 1. Each form of relief flows from the requested declaration that the Signal chats are federal records subject to preservation requirements and will ring equally hollow should the chats be lost for good.

[12] *See, e.g.*, Treasury Decl. ¶ 4 (explaining that the "existing messages from the Signal chat" begin on the afternoon of March 15).

the temporary restraining order's expiration date approaches, American Oversight can accurately evaluate whether it should seek additional urgent (e.g., further preliminary injunctive) relief. Besides the substantive gaps identified above, the declarations also contain evidentiary insufficiencies. For example, the ODNI declarant states that he "has been informed" that "all ODNI officials that were party to," the Signal chat "have been advised of the need to comply with agency policies regarding the management and safeguarding of agency records," and that these officials have "taken steps to preserve all messages currently in existence," indicating both the declarant's lack of personal knowledge as to whether ODNI even had access to the Signal chat for preservation purposes, and that at least some of the messages may no longer be in existence. *See* ODNI Decl. ¶ 4; Fed. R. Evid. 602 (requiring declarant's "personal knowledge"). Similarly, the CIA Declaration states that the declarant "*understand[s]* that residual administrative content from 'the Signal chat' was retrievable," raising questions both about the declarant's degree of personal knowledge and seemingly curated meaning of "residual administrative content." *See* CIA Decl. ¶ 3 (emphasis added). *See* Fed. R. Evid. 602. DoD Declaration 2 contains no statement that any of the declarant's assertions are based on personal knowledge. *See* Fed. R. Evid. 602. Thus, if the Court denies American Oversight's request for a new order, American Oversight alternatively requests that the Court grant it leave to seek limited discovery on an expedited basis to probe the evidentiary shortfalls and substantive holes in the supporting declarations.

## CONCLUSION

For the foregoing reasons, American Oversight respectfully requests that the Court order Defendants to take additional steps to (1) preserve the Signal chat messages and (2) Defendants' other Signal communications about government business in a manner that would cure the deficiencies identified above, and to memorialize such efforts with specificity in new declarations.

Alternatively, if the Court denies American Oversight's request for a new order, American Oversight requests that the Court grant it leave to seek limited discovery on an expedited basis to probe the evidentiary shortfalls and substantive holes in the supporting declarations.

Dated: April 4, 2025                              Respectfully submitted,

                                                  /s/ Benjamin A. Sparks
                                                  Benjamin A. Sparks
                                                  D.C. Bar No. 90020649
                                                  Ronald A. Fein
                                                  D.C. Bar No. 90026641
                                                  Katherine M. Anthony
                                                  D.C. Bar No. 1630524

                                                  AMERICAN OVERSIGHT
                                                  1030 15th Street NW, B255
                                                  Washington, DC 20005
                                                  (202) 873-1741
                                                  ben.sparks@americanoversight.org
                                                  ron.fein@americanoversight.org
                                                  katherine.anthony@americanoversight.org
                                                  *Counsel for Plaintiff*