## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00883-JEB |
| | ) | |
| PETE HEGSETH, in his official capacity as<br>Secretary of Defense,<br>1600 Pentagon 3E788<br>Washington, DC 20301-1600, | ) | |
| | ) | |
| TULSI GABBARD, in her official capacity as<br>Director of National Intelligence,<br>Washington, DC 20511, | ) | |
| | ) | |
| JOHN L. RATCLIFFE, in his official capacity<br>as Director of the Central Intelligence Agency,<br>1000 Colonial Farm Dr.<br>McLean, VA 22101, | ) | |
| | ) | |
| SCOTT BESSENT, in his official capacity as<br>Secretary of the Treasury<br>1500 Pennsylvania Avenue NW<br>Washington, DC 20220, | ) | |
| | ) | |
| MARCO A. RUBIO, in his official capacities<br>as Secretary of State and Acting Archivist of<br>the United States,<br>2201 C St. NW<br>Washington, DC 20520, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONAL ARCHIVES AND RECORDS<br>ADMINISTRATION,<br>700 Pennsylvania Ave. NW<br>Washington, DC 20408, | ) | |
| | ) | |
| *Defendants.* | ) | |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

1.     This case concerns a clear and urgent threat to the preservation and recovery of unlawfully destroyed federal records posed by the heads of the Executive Branch's largest agencies and their regular use of a commercially available electronic messaging application to conduct government work without adequate recordkeeping programs that safeguard the creation, retention, and destruction of such records.

2.     Between March 11 and March 15, 2025, more than a dozen senior Trump administration officials used Signal—a private, non-governmental, encrypted messaging application that features automatic deletion of messages—to coordinate imminent U.S. military strikes in Yemen in a group chat titled, "Houth PC small group" ("Houthi PC Small Group Chat").

3.     The "PC" in the Houthi PC Small Group Chat title likely stands for "principals committee," which consists of national security agency heads and other senior officials.

4.     The officials included the Defendants Secretary of Defense, Director of National Intelligence, Director of the Central Intelligence Agency, Secretary of the Treasury, and Secretary of State, as well as the National Security Advisor, Vice President, and others.

5.     The public's discovery of the existence of the Houthi PC Small Group Chat was fortuitous:  apparently in error, one of the participants in the group added to the text message chain the editor-in-chief of a leading periodical, who then disclosed the core facts giving rise to this lawsuit in detailed articles that included quotations and images of the text messages.

6.     In response to the publication of the Houthi PC Small Group Chat records, American Oversight filed this lawsuit, seeking immediate intervention and preservation of said

records and demanding Defendants' compliance with their mandatory duties under the Federal Records Act.

7.    On March 27, 2025, the Court issued a temporary restraining order, directing Defendants to preserve the Signal messages from March 11 through March 15, 2025.

8.    In response, no Defendant claimed that they had preserved the Houthi PC Small Group Chat in its entirety, with some Defendants even claiming to "preserve" portions of their messages by taking screenshot images of their phones.

9.    Taking mere screenshots of the Houthi PC Small Group Chat are not methods of preservation that meet the legal requirements for recordkeeping under the FRA.

10.    A representative of the Central Intelligence Agency has even admitted in a sworn statement that the agency's screenshots failed to include any substantive messages from the Houthi PC Small Group Chat.

11.    Upon information and belief, none of Defendants have preserved the entirety of the Houthi PC Small Group Chat.

12.    Shortly after the Court's March 27, 2025 order, the press reported on the existence of over twenty additional Signal chats used to conduct official government business.

13.    Then, on April 20, 2025, *The New York Times* reported that Defendant Secretary of Defense Pete Hegseth previously created his own Signal group chat titled "Defense | Team Huddle" that included his wife, brother, personal lawyer, aides, and advisors ("DTH Chat").[1]

---

[1] Greg Jaffe, Eric Schmitt & Maggie Haberman, *Hegseth Said to Have Shared Attack Details in Second Signal Chat*, N.Y. Times (Apr. 20, 2025, 5:28PM ET), https://www.nytimes.com/2025/04/20/us/politics/hegseth-yemen-attack-second-signal-chat.html?partner=slack&smid=sl-share.

14.     Defendant Hegseth reportedly shared a range of information about government business in the DTH Chat, including on March 15, 2025, when he shared details about forthcoming military strikes in Yemen.

15.     Defendant Hegseth reportedly created the DTH Chat in January before he was confirmed as Secretary of Defense and he used his private mobile device to access the DTH Chat.

16.     It is now clear that the use of Signal to conduct official government business by administration officials is widespread: senior administration officials used, and likely continue to use, a commercially available text message application with an auto-delete function and no apparent mechanism to fully preserve federal records on government recordkeeping systems, as shown by Defendants' failure to preserve the full Houthi PC Small Group Chat from March 11 to 15, 2025.

17.     Despite Defendants' failures to fully preserve the Houthi PC Small Group Chat from March 11 to 15, 2025, and despite a statutory mandate that agency heads notify the Archivist and initiate action through the Attorney General to recover unlawfully destroyed records, Defendants have failed to comply with their statutory obligations.

18.     Defendants' clear violations of the Federal Records Act and public reporting indicates widespread noncompliance beyond a single episode that was revealed to the public only by mistake.

19.     Plaintiff American Oversight brings this action under the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., to prevent further unlawful destruction of federal records and to compel Defendants to fulfill their legal obligations to preserve and recover all federal records created through their use of Signal.

## JURISDICTION AND VENUE

20.     This Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the APA, 5 U.S.C. §§ 701, et seq., the FRA, 44 U.S.C. §§ 3301, et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

21.     Venue is proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

22.     Plaintiff American Oversight is a nonpartisan, non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. It is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and requests made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, American Oversight uses the information it gathers, and its analysis of that information, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases and other media.

23.     In the regular course of its work and in furtherance of its core mission and function, American Oversight has submitted FOIA requests to Defendants' respective agencies and will continue to seek records from such agencies in the future.

24.      In the regular course of its work and in furtherance of its core mission and function, American Oversight has released records to the public it received in response to FOIA requests to Defendants' respective agencies in the past. In the regular course of its work and in furtherance of its core mission and function, American Oversight will continue to release records to the public it receives in response to FOIA requests to Defendants' respective agencies.

25.     Defendant Pete Hegseth is the Secretary of Defense, sued in his official capacity. In that capacity, he is the agency head of the U.S. Department of Defense ("DoD") and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, 3106(a), and 3303. DoD is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in Washington, DC.

26.     Defendant Tulsi Gabbard is the Director of National Intelligence, sued in her official capacity. In that capacity, she is the agency head of the Office of the Director of National Intelligence ("ODNI") and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, 3106(a), and 3303. ODNI is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in Washington, D.C.

27.     Defendant John Ratcliffe is the Director of the Central Intelligence Agency, sued in his official capacity. In that capacity, he is the agency head of the Central Intelligence Agency ("CIA") and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, 3106(a), and 3303. CIA is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in McLean, Virginia.

28.     Defendant Scott Bessent is the Secretary of the Treasury, sued in his official capacity. In that capacity, he is the agency head of the U.S. Department of the Treasury ("Treasury") and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, 3106(a), and 3303. Treasury is a federal agency within the meaning

of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in Washington, D.C.

29.     Defendant Marco Rubio is the U.S. Secretary of State and the Acting Archivist of the United States, sued in both of his official capacities.

30.     As Secretary of State, Defendant Rubio is the agency head of the U.S. Department of State ("State") obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, 3106(a), and 3303. State is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1), and headquartered in Washington, D.C.

31.     As Acting Archivist of the United States, Defendant Rubio is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. § 3106(b).

32.     Defendant National Archives and Records Administration ("NARA") is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), and APA, 5 U.S.C. §§ 551(1), 552(f)(1), and is headquartered in Washington, D.C.

## LEGAL FRAMEWORK

33.     The FRA governs the creation, management, and disposal of "records" by federal agencies. *See generally* 44 U.S.C. § 3301, et seq; *see also* 44 U.S.C. Chs., 21, 29, and 31.

34.     The FRA defines "records" to include:

all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]

44 U.S.C. § 3301(a)(1)(A).

35.    As applied to the operations of DoD, ODNI, CIA, Treasury, and State (collectively, the "Agencies"), the FRA imposes duties on both the head of each agency and the Archivist of the United States. *See id.* § 3101.

36.    To comply with the statute, the agency head "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *Id.*

37.    Each agency head is further required to establish a records management program providing "effective controls over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records the head of [the] agency determines to be necessary and required by regulations of the Archivist," *id.* § 3105.

38.    "[A] Court can review an APA claim challenging an agency's informal policy or practice of violating certain directives of the FRA, including the Act's records-creation and -destruction mandates . . . ." *Citizens for Resp. & Ethics in Wash. v. Pompeo*, Civil Action No. 19-3324 (JEB), 2020 WL 1667638, at *4 (Apr. 3, 2020).

39.    Under the FRA, "[a]n officer or employee of an executive agency may not create or send a record using a non-official electronic messaging account unless such officer or employee [] (1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the record; or (2) forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a).

40.     When records are handled in a manner that contravenes the FRA, or a parallel agency record-keeping policy, the FRA obligates the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency . . . ." *Id.* § 3106(a).

41.     The FRA further dictates that the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the agency head "knows or has reason to believe have been unlawfully removed from [the] agency . . . ." *Id.*

42.     If the agency head fails to initiate an action for recovery of unlawfully removed records "or other redress within a reasonable period of time after being notified of any such unlawful action, or is participating in, or believed to be participating in any such unlawful action," the FRA dictates that "the Archivist shall request the Attorney General to initiate such an action, and shall notify Congress when such a request has been made." *Id.* § 3106(b).

43.     The obligations to initiate an enforcement action through the Attorney General to recover unlawfully removed records or for other redress are mandatory, not subject to agency discretion. *Armstrong v. Bush*, 924 F.2d 282, 295–96 (D.C. Cir. 1991) ("In contrast to a statute that merely *authorizes* an agency to take enforcement action as it deems necessary, the FRA *requires* the agency head and Archivist to take enforcement action.").

44.     Where both the agency head and the Archivist have "failed to initiate remedial action in a timely [manner], private litigants may sue under the APA to require them to do so." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 110 (D.D.C. 2007) (internal quotation omitted).

45.    Thus, "the APA authorizes judicial review of a claim—properly pleaded, of course—that the [agency's] recordkeeping policies are arbitrary and capricious and do not comport with the requirements of the FRA." *Id.* at 111.

46.    "The APA also authorizes the Court to entertain a claim that the head of the [agency] or the Archivist have breached their statutory obligations to take enforcement action to prevent an agency official from improperly destroying records or to recover records unlawfully removed from the agency." *Id.*

**FACTS**

**A.    Defendant Agency Heads Used Signal with Messages Set to Automatically Delete to Convey Sensitive Government Information About a Military Strike in Yemen.**

47.    From March 11 through March 15, 2025, senior Trump administration officials, including all agency-head Defendants, used the Signal messaging application to discuss and coordinate imminent U.S. military strikes in Yemen ("the Houthi PC Small Group Chat").[2]

48.    Signal is an open-source, encrypted messaging service that allows users to send text, audio, video, and picture messages to other users.

49.    Signal includes a function that allows users to set time limits by which their sent messages will disappear and be automatically deleted from both the sender's and recipient's devices ("the disappearing function").

50.    Upon information and belief, Signal messages are stored only on an individual's device, with no copy or back-up of the messages retained on the Signal system or servers; this

---

[2] *See* Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic (Mar. 24, 2025, 12:06 PM ET), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/ (the "*Atlantic* Article").

means that Signal messages can be manually preserved by the individual users, such as through screenshots or other means, but once deleted, messages cannot be restored or retrieved.[3]

51.     Yet Signal is not a foolproof method for secure communications: while Signal has end-to-end encryption, all Signal messages located on a device are susceptible to general spying or sophisticated hacking software.

52.     For example, any person who gains access to a user's device, even by physically acquiring it, may simply read any of sensitive, or possibly classified, Signal discussions.[4]

53.     National Security Advisor Mike Waltz or members of his staff included reporter Jeffrey Goldberg of *The Atlantic* in the Houthi PC Small Group Chat from March 11 through March 15, 2025.

54.     Upon information and belief, Goldberg was added to the chat inadvertently.

55.     Goldberg received Defendants' communications with each other in the Houthi PC Small Group Chat.

56.     According to Goldberg, the Houthi PC Small Group Chat included highly sensitive—potentially classified—information and was used to coordinate operational decisions normally reserved for secure government systems.

57.     Upon information and belief, the participants in the Houthi PC Small Group Chat included individuals using titles or acronyms such as "SecDef," "NSC," "VP," "DNI," "CIA," and "MAR."

---

[3] *See Backup and Restore Messages*, Signal (last visited Apr. 16, 2025), https://support.signal.org/hc/en-us/articles/360007059752-Backup-and-Restore-Messages.

[4] *See* Kevin Collier, *Signal Isn't Infallible, Despite Being One of the Most Secure Encrypted Chat Apps*, NBC News (updated Mar. 27, 2025, 5:17PM), https://www.nbcnews.com/tech/security/signal-app-used-hegseth-can-leave-door-open-hackers-rcna197956.

58.    Goldberg reports in the *Atlantic* Article that 18 individuals were listed as members of the Houthi PC Small Group Chat.

59.    Upon information and belief, the following officials were included in the Houthi PC Small Group Chat: Defendant Secretary of Defense Pete Hegseth; Defendant Director of National Intelligence Tulsi Gabbard; Defendant CIA Director John Ratcliffe; Defendant Treasury Secretary Scott Bessent; Defendant Secretary of State and Acting Archivist of the United States Marco Rubio; National Security Advisor Michael Waltz; Vice President J.D. Vance; and Homeland Security Advisor and White House Deputy Chief of Staff Stephen Miller.

60.    At least one participant in the Houthi PC Small Group Chat enabled the function that makes messages disappear and automatically delete after set time limits.

61.    Waltz set at least some messages to disappear after one week, and at least some messages to disappear and automatically delete after four weeks.

62.    Screenshots in the *Atlantic* Article show that the Houthi PC Small Group Chat had been set to a four-week expiration window on or about March 15, 2025, meaning that absent someone taking affirmative steps to delete them from his or her device, messages from that point forward should have still been extant as of April 12, 2025.

63.    The enabled disappearing function on Waltz's messages was known or reasonably should have been known to all of the members of the Houthi PC Small Group Chat, including Defendants.

64.    On March 26, 2025, *The Atlantic* published another article, detailing the entirety of the Houthi PC Small Group Chat (except the identity of certain personnel), in response to these

comments from government officials disputing that the contents of the communications were classified.[5]

65.     On March 27, 2025, this Court ordered Defendants to "preserve all Signal communications from March 11-15, 2025" and file a Status Report with supporting declarations describing the steps taken to implement such preservation.[6]

66.     The Order was set to expire on April 10, 2025, "in the event that Defendants' measures [were] satisfactory to the Court."[7]

67.     In their Opposition to American Oversight's Motion for TRO, Defendants confirmed that they are "taking steps to locate and preserve the Signal chat, and that at least one of the agencies has located, preserved, and copied into a federal record keeping system a partial version of the Signal chat."[8]

68.     As Defendants conceded, only a partial version and images of the Houthi PC Small Group Chat were preserved.[9]

69.     In sworn statements filed in this case on March 27 and 31, and April 14, 2025, none of the representatives of Defendants' respective agencies said that all messages from the Houthi PC Small Group Chat had been or could be preserved.

---

[5] *See* Jeffrey Goldberg & Shane Harris, *Here Are the Attack Plans That Trump's Advisers Shared on Signal*, The Atlantic (Mar. 26, 2025), https://www.theatlantic.com/politics/archive/2025/03/signal-group-chat-attack-plans-hegseth-goldberg/682176/?gift=oTrP9KBycQ_LJ6YdZ8j_k3R5LEmUIoaXrkSZBRGaFFU&utm_source=copy-link&utm_medium=social&utm_campaign=share.
[6] *See* Min. Order (Mar. 27, 2025).
[7] *See id.*
[8] Defs.' Mem. Opp. Plf.'s Mot. TRO, ECF No. 8 at 7 (citing Decl. of Christopher Pilkerton, ECF No. 8-1).
[9] Decl. of Christopher Pilkerton, ECF No. 8-1, at 2.

70.    Upon information and belief, one or more messages from the Houthi PC Small Group Chat that were in each individual Defendant's custody or control have been deleted.

71.    Upon information and belief, one or more messages from the Houthi PC Small Group Chat that were in each individual Defendant's custody or control have not been preserved.

72.    On April 10, the Court ordered Defendants to produce supplemental declarations identifying additional steps to preserve the Houthi PC Small Group Chat.[10]

73.    A CIA representative has confirmed in a sworn statement that Defendant Ratcliffe did not preserve any substantive messages from the Houthi PC Small Group Chat. *See* ECF No. 15-3.

74.    A CIA representative has confirmed in a sworn statement that a member of the Houthi PC Small Group Chat changed "administrative settings . . . such as profile names and message settings" on March 26, 2025, and on March 28, 2025. *See* ECF No. 15-3.

75.    By virtue of their participation in the Houthi PC Small Group Chat, Defendants knew or should have known that someone changed administrative settings such as profile names and message settings in the Houthi PC Small Group Chat on March 26, 2025, and on March 28, 2025.

**B.    Further Disclosures Reveal That Senior Officials Routinely Use Signal for Government Business.**

76.    Defendants' use of Signal extends beyond that of the Houthi PC Small Group Chat.

77.    In the Houthi PC Small Group Chat itself, at 8:42 AM on March 15, Waltz referred to a previous discussion as "the first PC."[11]

---

[10] Min. Order (Apr. 10, 2025).
[11] Goldberg & Hariss, *supra* n.5.

78.    In testimony to the House and Senate Intelligence panels, both Defendants Gabbard and Ratcliffe shared that Signal is widely used in government.[12]

79.    Upon information and belief, Waltz, in his official capacity, regularly utilized Signal to coordinate official work, including discussions of sensitive details of national security and foreign policy work.[13]

80.    According to *Politico's* reporting, there are "at least 20 Signal group chats" to coordinate official work on issues including Ukraine, China, Gaza, Middle East policy, Africa, and Europe.[14]

81.    Upon information and belief, one or more Defendants participated in at least some of these 20 or more foreign-policy-related Signal chats.

82.    On March 26, 2025, Defendant Gabbard testified to House Intelligence Committee members that Signal comes "pre-installed" on government devices.[15]

83.    Upon information and belief, one or more Defendants participated in other Signal chats pertaining to government business.

84.    Upon information and belief, each agency-head Defendant has used and continues to use Signal to communicate about government business.

---

[12] *See* Maggie Miller*, 'Sloppy, Reckless': Waltz Use of Signal, Gmail Revives Concerns About White House Communications,* Politico (Apr. 2, 2025, 10:30PM ET), https://www.politico.com/news/2025/04/02/sloppy-reckless-waltz-use-of-signal-gmail-revives-concerns-about-white-house-communications-00268016; *see also supra* n.5.

[13] *See id.*

[14] *See* Dasha Burns, *Waltz's Team Set Up at Least 20 Signal Group Chats for Crises Across the World*, Politico (Apr. 2, 2025, 3:50PM ET), https://www.politico.com/news/2025/04/02/waltzs-team-set-up-at-least-20-signal-group-chats-for-crises-across-the-world-00266845.

[15] *See* Maggie Miller, *Gabbard Says Signal Comes 'Pre-Installed' on Government Devices* (Mar. 26, 2025, 12:32 PM), https://www.politico.com/news/2025/03/26/gabbard-signal-government-devices-cybersecurity-00250731.

85.    Upon information and belief, each agency-head Defendant has the Signal messaging application on their government-issued devices.

86.    Defendant Ratcliffe maintains or has maintained a personal Signal account and/or a Signal account on his personal mobile device that he has used and continues to use to send and receive messages about government business.

87.    Upon information and belief, like Defendant Ratcliffe, Defendant Rubio maintains or has maintained a personal Signal account and/or a Signal account on his personal mobile device that he has used and continues to use to send and receive messages about government business.

88.    Defendant Hegseth maintains or has maintained a personal Signal account and/or a Signal account on his personal mobile device that he has used and continues to use to send and receive messages about government business.

89.    Upon information and belief, like Defendant Ratcliffe, Defendant Gabbard maintains or has maintained a personal Signal account and/or a Signal account on her personal mobile device that she has used and continues to use to send and receive messages about government business.

90.    Upon information and belief, like Defendant Ratcliffe, Defendant Bessent maintains or has maintained a personal Signal account and/or a Signal account on his personal mobile device that he has used and continues to use to send and receive messages about government business.

91.    Upon information and belief, Defendants Ratcliffe, Rubio, Hegseth, and Gabbard have established an informal practice of using Signal for government business through personal accounts and/or devices such that Signal messages, which constitute federal records, are regularly created and deleted in violation of the FRA.

92.    Upon information and belief, the auto-delete function has been enabled in Defendants' other Signal chats, raising the threat of automated deletion of sensitive government communications and federal records.

93.    Despite the inclusion of Signal on government-issued devices, Signal, as shown by the Houthi PC Small Group Chat and the DTH Chat, in practice is not an authorized system for preserving federal records and does not comply with recordkeeping requirements under the FRA or NARA guidance.

94.    An October 2023 DoD memorandum specifically instructs that Signal and similar "[u]nmanaged 'messaging apps,' . . . are NOT authorized to access, transmit, process non-public DoD information."[16]

95.    Upon information and belief, before taking office as the Secretary of Defense, Defendant Hegseth created his own Signal chat group, the DTH chat, that included select family members, top aides, and senior advisors to discuss government business.

96.    Upon information and belief, subject matters of the DTH Chat have ranged from "routine administrative or scheduling information" to "sensitive operational details" about forthcoming military strikes in Yemen.[17]

97.    Messages in the DTH Chat pertaining to government business are federal records.

98.    Upon information and belief, the disappearing function may have been enabled at one or more times during the DTH Chat.

---

[16] Dep't of Def., *Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency and DOD Field Activity Directors* at 3 (Oct. 6, 2023), https://dodcio.defense.gov/Portals/0/Documents/Library/Memo-UseOfUnclassMobileApps.pdf.

[17] *See* Jaffe et al., *supra* n.1.

99.     Upon information and belief, Defendant Hegseth created the DTH Chat in January, before he was confirmed as the Secretary of Defense, and he continued to use the DTH Chat for government business after he took office.

100.     Signal messages about official government actions, including, but not limited to, national security deliberations and messages in the Houthi PC Small Group Chat and DTH Chat, are federal records and must be preserved in accordance with federal statutes, and agency directives, rules, and regulations.

101.     Defendants' violation of the FRA and NARA guidance is not confined to the use of Signal to conduct official business.

102.     Upon information and belief, members of the National Security Council, including Waltz, have conducted government business over personal Gmail accounts.[18]

103.     According to the *Washington Post*, Waltz's team utilized personal Gmail accounts for highly technical conversations across government agencies, involving sensitive military positions and weapons systems. Waltz, reportedly, also had information sent to his Gmail, such as his schedule and other work documents.

104.     This suggests that the use of personal Gmail accounts may be as widely utilized as Signal amongst high-ranking government officials.

105.     There is no indication that Defendants or their agencies have taken steps to save, copy, or forward these unofficial system communications, let alone address the danger of utilizing an insecure means of communication for foreign policy discussions.

---

[18] *See* John Hudson, *Waltz and Staff Used Gmail for Government Communications, Officials Say*, Wash. Post (Apr. 1, 2025), https://www.washingtonpost.com/national-security/2025/04/01/waltz-national-security-council-signal-gmail/.

106.    Upon information and belief, Signal lacks the technical capability to copy an official electronic messaging account of an officer or employee in the original creation or transmission of a record.

107.    Upon information and belief, Signal lacks the technical capability to forward a complete copy of a record to an official electronic messaging account of an officer or employee.

108.    Upon information and belief, none of the agency-head Defendants have established records management programs providing for effective control over the creation and maintenance of Signal communications within their respective agencies.

109.    Upon information and belief, none of the agency-head Defendants have established safeguards against the removal or loss of Signal communications pertaining to government business.

110.    Defendants' respective failures to establish records management programs and safeguards regarding the creation, maintenance, and destruction of Signal communications amount to a pattern and practice that causes the unlawful destruction of federal records in violation of the FRA.

**C.    American Oversight Has Submitted FOIA Requests that Seek Signal Messages.**

111.    Plaintiff American Oversight has submitted multiple Freedom of Information Act requests to Defendants and Defendants' agencies, including several requests in 2025 that seek Signal messages.

112.    On January 28, 2025, American Oversight submitted a FOIA request to DoD (bearing American Oversight internal tracking number DOD-25-0183) seeking all records reflecting communications, expressly including Signal messages, between DoD officials, including Pete Hegseth, and anyone in the White House Office, containing one or more specified

key terms, from January 20, 2025, through January 27, 2025. On January 28, 2025, DoD acknowledged the request and assigned it tracking number 25-F-2084. American Oversight's request remains pending.

113.   On March 25, 2025, American Oversight submitted a FOIA request to DoD (bearing American Oversight internal tracking number DOD-25-0757) seeking all Signal messages sent by Defendant Hegseth since January 20, 2025 and requested expedited processing. On March 25, 2025, DoD acknowledged receipt of American Oversight's request, and assigned it tracking number 25-F-2611. The FOIA request remains pending.

114.   American Oversight has regularly requested DoD's communications through FOIA, including Signal messages and email communications, and it will continue to do so in the future.

115.   Defendant Hegseth's messages from the Houthi PC Small Group Chat, the DTH Chat, and other Signal chats may be responsive to American Oversight's pending FOIA requests.

116.   One or more messages from the DTH Chat are likely responsive to American Oversight's March 25, 2025 FOIA request assigned DoD tracking number 25-F-2611.

117.   Upon information and belief, under current DoD recordkeeping rules and practices, officials do not forward Signal messages, including messages from the Houthi PC Small Group Chat and the DTH Chat, to their official email accounts or other government recordkeeping systems.

118.   DoD's deficient recordkeeping rules and practices bar American Oversight and other FOIA requesters from obtaining responsive records to which they are otherwise entitled under FOIA, particularly if such Signal messages are set to auto-delete.

119.    On January 27, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0190) seeking all records reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and anyone in the White House Office, containing one or more of several key terms, such as "fire," from January 20, 2025, through January 27, 2025. On January 29, 2025, State updated the status of the request to "Received" and noted the tracking number #F-2025-09050. American Oversight's request remains pending.

120.    On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0277) seeking all communications, expressly including Signal messages, between State officials, including Marco Rubio, containing one or more specified key terms, such as "eliminat*," from January 20, 2025, through the date that the search is conducted. On March 3, 2025, State updated the status of the request to "In Process" and noted the tracking number, #F-2025-09350. As of April 2, 2025, the request has been closed.

121.    On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0279) seeking all records reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and anyone in the White House Office from January 20, 2025, through the date that the search is conducted. On March 12, 2025, State updated the status of the request to "On Hold – Need Info/Clarification" and noted the tracking number, #F-2025-09352. American Oversight's request remains pending.

122.    On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0281) seeking all records

reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and one or more specified members of Congress from January 20, 2025, through the date that the search is conducted. On March 3, 2025, State updated the status of the request to "In Process" and noted the tracking number, #F-2025-09346. As of April 2, 2025, the request has been closed.

123.    On March 18, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0691) seeking email communications, sent by State officials, including Marco Rubio, and containing one or more specified key terms from February 5, 2025, through the date that the search is conducted. On April 7, State acknowledged receipt of the request, and assigned it tracking number F-2025-12177. American Oversight's request remains pending.

124.    On March 25, 2025, American Oversight submitted an expedited FOIA request to State (bearing American Oversight internal tracking number STATE-25-0756) seeking all Signal messages sent by Defendant Rubio since January 20, 2025. On March 25, 2025, State acknowledged receipt of the request and assigned it tracking number F-2025-13294. On April 1, 2025, State denied American Oversight's request for expedited processing. The FOIA request remains pending.

125.    American Oversight has regularly requested State's communications through FOIA, including Signal messages and email communications, and it will continue to do so in the future.

126.    Defendant Rubio's messages from the Houthi PC Small Group Chat and other Signal chats may be responsive to American Oversight's pending FOIA requests.

127.    Upon information and belief, under current State recordkeeping rules and practices, officials do not forward Signal messages, including messages from the Houthi PC Small Group Chat, to their official email accounts or other government recordkeeping systems.

128.    State's deficient recordkeeping rules and practices bar American Oversight and other FOIA requesters from obtaining responsive records to which they are otherwise entitled under FOIA, particularly if such Signal messages are set to auto-delete.

129.    On January 30, 2025, American Oversight submitted a FOIA request to Treasury (bearing American Oversight internal tracking number TREAS-25-0225) seeking all records reflecting communications, expressly including Signal messages, between Treasury officials, including the Acting Secretary at the time, and anyone communicating on behalf of the Department of Government Efficiency ("DOGE") from January 20, 2025, through the date that the search is conducted. On February 13, 2025, Treasury acknowledged receipt of the request and assigned it tracking number 2025-FOIA-01357. American Oversight's request remains pending.

130.    On February 28, 2025, American Oversight submitted a FOIA request to Treasury (bearing American Oversight internal tracking number TREAS-25-0537) seeking communications, expressly including Signal messages, sent by Treasury officials, including Scott Bessent, and containing one or more specified key terms from January 20, 2025, through the date that the search is conducted. On February 28, 2025, Treasury acknowledged receipt of the request. American Oversight's request remains pending.

131.    On March 25, 2025, American Oversight submitted an expedited FOIA request to Treasury (bearing American Oversight internal tracking number TREAS-25-0754) seeking all Signal messages sent by Defendant Bessent since January 20, 2025. On March 25, 2025, Treasury acknowledged receipt of American Oversight's request. The FOIA request remains pending.

132.     American Oversight has regularly requested Treasury communications through FOIA, including Signal messages and email communications, and it will continue to do so in the future.

133.     Defendant Bessent's messages from the Houthi PC Small Group Chat and other Signal chats may be responsive to American Oversight's pending FOIA requests.

134.     Upon information and belief, under current Treasury recordkeeping rules and practices, officials do not forward Signal messages, including messages from the Houthi PC Small Group Chat, to their official email accounts or other government recordkeeping systems.

135.     Treasury's deficient recordkeeping rules and practices bar American Oversight and other FOIA requesters from obtaining responsive records to which they are otherwise entitled under FOIA, particularly if such Signal messages are set to auto-delete.

136.     On March 25, 2025, American Oversight submitted an expedited FOIA request to ODNI (bearing American Oversight internal tracking number ODNI-25-0755) seeking all Signal messages sent by Defendant Gabbard since January 20, 2025. On March 26, 2025, ODNI acknowledged receipt of American Oversight's request. On April 4, 2025, ODNI noted the tracking number, #DF-2025-00328. The FOIA request remains pending.

137.     American Oversight has regularly requested ODNI communications through FOIA, including electronic messages and email communications, and it will continue to do so in the future.

138.     Defendant Gabbard's messages from the Houthi PC Small Group Chat and other Signal chats may be responsive to American Oversight's pending FOIA requests.

139.    Upon information and belief, under current ODNI recordkeeping rules and practices, officials do not forward Signal messages, including messages from the Houthi PC Small Group Chat, to their official email accounts or other government recordkeeping systems.

140.    ODNI's deficient recordkeeping rules and practices bar American Oversight and other FOIA requesters from obtaining responsive records to which they are otherwise entitled under FOIA, particularly if such Signal messages are set to auto-delete.

141.    On March 25, 2025, American Oversight submitted an expedited FOIA request to CIA (bearing American Oversight internal tracking number CIA-25-0758) seeking all Signal messages sent by Defendant Ratcliffe since January 20, 2025. The FOIA request remains pending.

142.    American Oversight has regularly requested CIA communications through FOIA, including electronic messages and email communications, and it will continue to do so in the future.

143.    Defendant Ratcliffe's messages from the Houthi PC Small Group Chat and other Signal chats may be responsive to American Oversight's pending FOIA requests.

144.    Upon information and belief, under current CIA recordkeeping rules and practices, officials do not forward Signal messages, including messages from the Houthi PC Small Group Chat, to their official email accounts or other government recordkeeping systems.

145.    CIA's deficient recordkeeping rules and practices bar American Oversight and other FOIA requesters from obtaining responsive records to which they are otherwise entitled under FOIA, particularly if such Signal messages are set to auto-delete.

146.    An agency may not "destroy[] a document after it has been requested under FOIA." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009).

147.    Defendants' widespread use of Signal presents a substantial risk that they are creating records that are subject to the FRA and/or the FOIA but are not being preserved or recovered when lost as required by those statutes.

148.    Defendants' use of Signal strongly suggests that they have used Signal to communicate about matters that may otherwise have been discussed via email, thereby avoiding creating records responsive to American Oversight's FOIA requests for emails.

149.    Even more, Waltz has copied and pasted information sent via his personal Gmail account into Signal chats, including information about his schedule and tasks.[19]

150.    The glaring avoidance of official, secure systems of communication amongst some of the highest-ranking government officials is abundantly clear.

151.    Upon information and belief, Defendants, in their capacities as heads of their respective agencies, have not taken steps to recover any messages from the Houthi PC Small Group Chat that have been lost or deleted.

152.    Upon information and belief, Defendants, in their capacities as heads of their respective agencies, have not taken steps to recover any messages from any of their other Signal chats, including the DTH Chat, that have been lost or deleted.

153.    Upon information and belief, Defendants, in their capacities as heads of their respective agencies, have not provided public notice prior to the destruction, by automatic deletion or otherwise, of any federal records created through their use of the Signal messaging application.

154.    Upon information and belief, Defendants, in their capacities as heads of their respective agencies, did not make any efforts to preserve the substance of the Houthi PC Small Group Chat until after American Oversight filed the above-captioned action.

---

[19] *See* Hudson, *supra* n.18.

## CLAIMS FOR RELIEF

**Count I – as to Defendants Hegseth, Gabbard, Ratcliffe, Bessent, and Rubio
for Failure to Initiate Enforcement and Recovery Actions as to Destroyed Federal Records
from the Houthi PC Small Group Chat
(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
for declaratory and injunctive relief)**

155.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

156.    Messages in Signal chats, including the Houthi PC Small Group Chat, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1) and § 3105.

157.    Federal records, including messages in the Houthi PC Small Group Chat, may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

158.    Defendants, as members of the Houthi PC Small Group Chat know or reasonably should know that one or more messages in the Houthi PC Small Group Chat were or remain subject to automatic deletion in violation of the FRA and implementing rules and regulations of Defendants' respective agencies.

159.    Defendants, as members of the Houthi PC Small Group Chat know or reasonably should know that one or more messages in the Houthi PC Small Group Chat have been unlawfully lost, removed, or destroyed.

160.    Where, as here, these violations are known to Defendants, each Defendant, in their capacity as an agency head, has a nondiscretionary duty under the FRA to report the violations to

the Acting Archivist and to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

161.    Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

162.    Defendants have failed to perform their nondiscretionary duties to preserve and recover the unlawfully removed records.

163.    Defendants have failed to perform their nondiscretionary duties to notify the Archivist of the above-described known FRA violations.

164.    Defendants have failed to perform their nondiscretionary duties to initiate an action through the Attorney General to preserve and recover the unlawfully removed records or for other redress as to the Houthi PC Small Group Chat.

165.    Defendants' failures and violations have injured the public and American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

166.    Defendants' failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count II – as to Defendants Hegseth, Gabbard, Ratcliffe, Bessent, and Rubio
for Failure to Initiate Enforcement and Recovery Actions as to Destroyed Federal Records
from Other Signal Chats
(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
for declaratory and injunctive relief)**

167.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

168.    Messages in Signal chats, such as the DTH Chat, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1) and § 3105.

169.    Federal records, including messages in Signal chats, such as the DTH Chat, may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

170.    Defendants, as members of other Signal chats including the DTH Chat, know or reasonably should know that one or more messages in other Signal chats, were or remain subject to automatic deletion in violation of the FRA and implementing rules and regulations of Defendants' respective agencies.

171.    Upon information and belief, Defendants, as members of other Signal chats including the DTH Chat, know or reasonably should know that one or more messages in other Signal chats have been unlawfully lost, removed, or destroyed.

172.    Where, as here, these violations are known to Defendants, each Defendant, in their capacity as an agency head, has a nondiscretionary duty under the FRA to report the violations to the Acting Archivist and to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

173.    Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

174.    Defendants have failed to perform their nondiscretionary duties to preserve and recover the unlawfully removed records.

175.    Defendants have failed to perform their nondiscretionary duties to notify the Archivist of the above-described known FRA violations.

176.    Defendants have failed to perform their nondiscretionary duties to initiate an action through the Attorney General to preserve and recover the unlawfully removed records or for other redress as to other Signal chats.

177.    Defendants' failures and violations have injured the public and American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

178.    Defendants' failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count III –**
**as to Defendants Hegseth, Gabbard, Ratcliffe, Bessent, and Rubio**
**for Failure to Implement Recordkeeping Program and Failure to Safeguard**
**Federal Records Created within the Signal Messaging Application**
**(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief)**

179.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

180.    Defendants, in their capacities as agency heads for their respective agencies, know or reasonably should know that the communications through Signal, and some of those through personal emails, constitute "records" under the FRA.

181.    Upon information and belief, messages in multiple Signal chats involving Defendants have not and are not being maintained in accordance with the FRA.

182.    Upon information and belief, Defendants' messages over Signal are being or will imminently be destroyed in contravention of the FRA.

183.    Defendants, as members of the Houthi PC Small Group Chat, the DTH Chat, and other Signal chats, and through widespread public reporting, know or reasonably should know that Signal is inadequate as a federal recordkeeping system to preserve and maintain their communications in accordance with the FRA.

184.    Despite such knowledge, and as shown by Defendants' failure to preserve their respective records from the Houthi PC Small Group Chat, Defendants have failed and continue to fail to develop and implement recordkeeping programs designed to preserve their Signal messages pertaining to government business.

185.    To the extent Defendants' respective agencies have in place recordkeeping programs that should have maintained and preserved Defendants' respective records from the Houthi PC Small Group Chat, Defendants' uniform failures to preserve their respective records from the Houthi PC Small Group Chat and other Signal chats, such as the DTH Chat, amount to modifications of the recordkeeping programs by each agency-head Defendant that are inadequate to safeguard Signal messages pertaining to government business.

186.    Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

187.    Each Defendant is on notice of the unlawful removal or destruction of agency records through his or her inclusion in the Houthi PC Small Group Chat and other Signal chats, such as the DTH Chat.

188.    Each Defendant is also on notice of the unlawful removal or destruction of agency records through widespread public reporting of the Houthi PC Small Group Chat and other Signal chats, such as the DTH Chat.

189.    By permitting and engaging in the use of Signal to discuss agency business, Defendants have failed to establish a records management program providing "effective control[] over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105.

190.    Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

191.    The recordkeeping practices Defendants have in place at their respective agencies are inadequate, arbitrary, capricious, and otherwise not in accordance with the FRA.

192.    Defendants' failures and violations have injured the public and American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

193.    Defendants' failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count IV – as to Defendants Hegseth, Gabbard, Ratcliffe, Bessent, and Rubio
for Maintaining an Informal Policy or Practice of Failing to Safeguard Federal Records on
the Signal Messaging Application in Their Respective Agencies
(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
for declaratory and injunctive relief)**

194.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

195.    The agency-head Defendants, as members of the Houthi PC Small Group Chat, the DTH Chat, and other Signal chats, and by failing to maintain and preserve their own Signal communications in accordance with the FRA, have established informal policies or practices within their respective agency's recordkeeping programs that unlawfully permits the creation and automatic deletion of Signal messages pertaining to government business.

196.    The recordkeeping practices Defendants have in place at their respective agencies are inadequate, arbitrary, capricious, and otherwise not in accordance with the FRA.

197.    As such, Defendants' failures amount to an informal policy or practice of violating their mandatory statutory responsibilities under the FRA.

198.    Defendants' informal policies and practices have injured the public and American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

199.    This pattern and practice of failing to act amounts to final agency actions for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count V – as to Defendants NARA and Acting Archivist Rubio**
**for Refusal to Take Enforcement Action as to**
**Destroyed Federal Records from the Houthi PC Small Group Chat**
**(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief)**

200.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

201.    Defendants NARA and Rubio, in his capacity as Acting Archivist, have an independent nondiscretionary duty under the FRA to initiate a recovery action or action for other redress through the Attorney General when the agency head fails to do so to prevent the actual, threatened, or impending removal or destruction of records in the agency's custody.

202.    Defendants NARA and Rubio have been made aware of the unlawfully alienated agency records because Rubio participated in the Houthi PC Small Group Chat.

203.    Defendants NARA and Rubio are also on notice of the unlawful removal or destruction of agency records through widespread public reporting of the Houthi PC Small Group Chat.

204.    Defendant Rubio, as Acting Archivist, knows or reasonably should know that each Defendant has failed to take appropriate action to preserve and recover records from the Houthi PC Small Group Chat.

205.    However, Defendant Rubio has also failed to act consistent with his independent obligation as Acting Archivist to initiate an action for recovery or other redress. Accordingly, Defendants NARA and Rubio are in default of their nondiscretionary obligations under the FRA.

206.    This failure to act is a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably

delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

207.    American Oversight and the public are harmed by Defendant Rubio's failure to seek the initiation of an enforcement action through the Attorney General, as this failure threatens to keep from public access important historical documents with administrative, legal, research, or other value.

**Count VI – as to Defendants NARA and Acting Archivist Rubio**
**for Refusal to Take Enforcement Action as to Destroyed Federal Records**
**from the Other Signal Chats**
**(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief)**

208.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

209.    Defendants NARA and Rubio, in his capacity as Acting Archivist, have an independent nondiscretionary duty under the FRA to initiate a recovery action or action for other redress through the Attorney General when the agency head fails to do so to prevent the actual, threatened, or impending removal or destruction of records in the agency's custody.

210.    Defendants NARA and Rubio have been made aware of the unlawfully alienated agency records because Rubio participated in the Houthi PC Small Group Chat, and, upon information and belief, other Signal chats.

211.    Defendants NARA and Rubio are also on notice of the unlawful removal or destruction of agency records through widespread public reporting of other Signal chats.

212.    Defendant Rubio, as Acting Archivist, knows or reasonably should know that each Defendant has failed to take appropriate action to preserve and recover records from Signal.

213.    Defendant Rubio knows or reasonably should know that the agency-head Defendants' respective agencies do not maintain recordkeeping programs or safeguards to preserve federal records created through Defendants' use of the application Signal.

214.    Defendant Rubio, as Acting Archivist, is on notice that federal records created through the agency-head Defendants' uses of Signal may be subject to the application's disappearing function thereby placing such records under impending or threatened deletion

215.    However, Defendant Rubio has failed to act consistent with his independent obligation as Acting Archivist to initiate an action for recovery or other redress. Accordingly, Defendants NARA and Rubio are in default of their nondiscretionary obligations under the FRA.

216.    This failure to act is a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

217.    American Oversight and the public are harmed by Defendant Rubio's failure to seek the initiation of an enforcement action through the Attorney General, as this failure threatens to keep from public access important historical documents with administrative, legal, research, or other value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Declare that messages and communications the agency-head Defendants send and receive through the Signal messaging application in the transaction of public business are federal records subject to the FRA;

2.      Declare that the agency-head Defendants' failures to ensure such messages and communications on both Signal and personal email accounts are preserved, as required by 44 U.S.C. § 2911, comprises an unlawful removal of federal records in violation of the FRA;

3.      Declare that the agency-head Defendants' practice of permitting the automatic destruction of Signal messages is arbitrary, capricious, and contrary to law;

4.      Declare that the agency-head Defendants have maintained inadequate recordkeeping systems with respect to Signal communications under the FRA and such failure is arbitrary, capricious, and contrary to law;

5.      Order the agency-head Defendants to implement adequate recordkeeping programs applicable to Signal messages to ensure compliance with the FRA;

6.      Declare that the agency-head Defendants have violated their respective duties under the FRA and APA;

7.      Order the agency-head Defendants to comply with their respective duties under the FRA and APA, including by referring the matter to the Acting Archivist and Attorney General for enforcement of the FRA, preservation of records, recovery of unlawfully removed records, and the recovery or restoration of any deleted or destroyed materials from Signal to the extent possible;

8.      Declare that Acting Archivist Rubio has breached his statutory duty to take enforcement action to prevent the agency-head Defendants from destroying records in contravention of the FRA and to recover records that the agency-head Defendants allowed to automatically delete in Signal, including messages from the Houthi PC Small Group Chat;

9.      Order Acting Archivist Rubio to fulfill his mandatory statutory duty to ask the Attorney General to initiate legal action to ensure that the agency-head Defendants comply fully with their obligations under the FRA with corresponding notice to Congress;

10.  Issue preliminary injunctive relief ordering Defendants to preserve all materials relating to Plaintiff's claims under the FRA, including all Signal messages sent or received by Defendants in the course of conducting government business since the date each agency-head Defendant took their respective offices;

11.  Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

12.  Grant Plaintiff any other relief this Court deems appropriate.

Dated: April 21, 2025                    Respectfully submitted

/s/ Benjamin A. Sparks
Benjamin A. Sparks
D.C. Bar No. 90020649
Katherine M. Anthony
D.C. Bar No. 1630524
Ronald A. Fein
D.C. Bar No. 90026641

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 873-1741
ben.sparks@americanoversight.org
katherine.anthony@americanoversight.org
ron.fein@americanoversight.org
Counsel for Plaintiff