## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-883 |
| | ) | |
| PETE HEGSETH, in his official capacity as Secretary of Defense, | ) | |
| | ) | |
| TULSI GABBARD, in her official capacity as Director of National Intelligence, | ) | |
| | ) | |
| JOHN L. RATCLIFFE, in his official capacity as Director of the Central Intelligence Agency, | ) | |
| | ) | |
| SCOTT BESSENT, in his official capacity as Secretary of the Treasury | ) | |
| | ) | |
| MARCO A. RUBIO, in his official capacities as Secretary of State and Acting Archivist of | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS ......................................................................................................6

I.  American Oversight Learns about Defendants' Signal Chats and Their Failure to Adequately Preserve Those Chats in Recent Weeks ..............................................7

II.  Signal's Autodelete Function Is Inconsistent with Defendants' Preservation Obligations 11

III.  Defendants' Signal Chats Are Responsive to American Oversight's Pending FOIA Requests ...............................................................................................14

ARGUMENT ....................................................................................................................15

I.  American Oversight Is Likely to Succeed on the Merits Because Defendants Have Violated the FRA ............................................................................................16

   A.  Signal Messages Are Government Records under the FRA ...........................16

   B.  Defendants Have Already Lost Signal Messages in Violation of the FRA .................18

   C.  Defendants Failed to Prevent Signal Messages from Being Destroyed, Despite Their Knowledge that the Autodelete Setting Was Enabled...................................20

II.  American Oversight and the Public Have Suffered and Will Continue To Suffer Irreparable Harm from the Deletion of Federal Records that Are Responsive To Pending FOIA Requests ........................................................................................24

III.  The Balance of Harms Weighs in Favor of Preliminary Relief .........................28

IV.  The Public Interest Strongly Supports the Relief American Oversight Seeks..................30

V.  The Court Should Not Require American Oversight to Post a Bond ..............................31

CONCLUSION..................................................................................................................32

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aids Vaccine Advoc. Coal. v. United States Dep't of State*,
    No. CV 25-00400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025) ................................... 30

*Am. First Legal Found. v. Becerra*,
    No. CV 24-1092 (RC), 2024 WL 3741402 (D.D.C. Aug. 9, 2024) ................................... 27, 30

*Am. Oversight v. Dep't of Just.*,
    No. 25-cv-383 (TJK) (D.D.C. filed Feb. 10, 2025) ...................................................5

*Am. Oversight v. U.S. Dep't of Gov't Efficiency*,
    No. 25-cv-409 (BAH) (D.D.C. filed Feb. 11, 2025) ................................................5

*Armstrong v. Bush*,
    924 F.2d 282 (D.C. Cir. 1991) .............................................................. 18, 21, 27

*Chambers v. U.S. Dep't of Interior*,
    568 F.3d 998 (D.C. Cir. 2009) ........................................................................ 20

*Citizens for Resp. and Ethics in Wash. v. Pompeo*,
    19-cv-3324 (JEB), 2020 WL 1667638 (D.D.C. Apr. 3, 2020) ................................... 16, 23

*Competitive Enter. Inst. v. U.S. Env't Prot. Agency*,
    67 F. Supp. 3d 23 (D.D.C. 2014) .................................................................. 17

*Ctr. for Pub. Integrity v. United States Dep't of Def.*,
    411 F. Supp. 3d 5 (D.D.C. 2019) .................................................................. 30

*Jud. Watch, Inc. v. Kerry*,
    844 F.3d 952 (D.C. Cir. 2016) ...................................................................... 17

*League of Women Voters of United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ..................................................................... 16, 28, 30

*Mich. Citizens for an Indep. Press v. Thornburgh*,
    No. CIV.A. 88-2322, 1988 WL 90388, n.12 (D.D.C. Aug. 17, 1988) ..................................... 31

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
    No. CV 25-239 (LLA), 2025 WL 597959 (D.D.C. Feb. 25, 2025) ..................................... 31

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) .................................................................................. 26

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Price v. United States Dep't of Justice,*
  No. 18-CV-1339 (CRC), 2019 WL 2526439 (D.D.C. June 19, 2019)....................................16

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ...........................................................................................................16

**Statutes**

5 U.S.C. § 706(1) ...........................................................................................................24
5 U.S.C. § 552 .................................................................................................................26
44 U.S.C. § 2911 ..............................................................................................12, 21, 27
44 U.S.C. § 3102 ..............................................................................................................21
44 U.S.C. § 3105 ..................................................................................................16, 21, 25
44 U.S.C. § 3106 ..........................................................................................................*passim*
44 U.S.C. § 3301 ..............................................................................................16, 17, 18, 27
44 U.S.C. § 3314 ..............................................................................................................18
44 U.S.C. § 3101 ....................................................................................................1, 16, 26, 30
44 U.S.C. § 2911 ....................................................................................................18, 21

**Rules**

Federal Rule of Civil Procedure 65 ...........................................................................15

**Regulations**

36 C.F.R. § 1220.18 .........................................................................................................17
36 C.F.R. § 1222.26(b) .............................................................................................12, 27

## PRELIMINARY STATEMENT

This case concerns the unlawful destruction of government records and the continued threat to the preservation of yet more records that contain sensitive government information. Defendants' failure to initiate recovery actions for lost or destroyed communications conveying official government business violates the Federal Records Act ("FRA"; 44 U.S.C. §§ 3101 *et seq.*), thwarts government transparency, and threatens national security. Judicial intervention is required to redress Defendants' destruction of government records by preserving remaining records and preventing further destruction of government records pursuant to the FRA. In the last six weeks, more than a dozen senior Trump administration officials have admitted to using Signal—a private, non-governmental, messaging application that features automatic deletion of messages—to conduct official government business on various topics, including imminent U.S. military strikes in Yemen (the "Houthi PC Small Group Chat"), national security, and other foreign policy issues.

The public only discovered Defendants' Houthi PC Small Group Chat because the National Security Advisor accidentally included a journalist, the Editor-in-Chief of *The Atlantic*, on the chain, and *The Atlantic* subsequently published articles describing the Houthi PC Small Group Chat. The participants in the Houthi PC Small Group Chat included the Secretary of Defense, National Security Advisor, Secretary of State, Vice President, Director of National Intelligence, and other high-ranking government officials. More recently, the public has learned that Defendants' use of Signal extends far beyond the Houthi PC Small Group Chat; using Signal to conduct official business is in fact commonplace among appointed government officials in this administration.

The destruction of the Houthi PC Small Group Chat deprives the public and Congress of the ability to hold the administration accountable for its actions—and that would be bad enough. However, the harm is much more expansive than the deletion of the Houthi PC Small Group Chat.

1

We now know that, since January 20, 2025, regular government business has been repeatedly conducted over Signal, including foreign policy decision-making, which has profound impacts on the American people, their safety, and democracy. For instance, recent reporting by *The New York Times* revealed that, before he was confirmed as the U.S. Secretary of Defense in January 2025, Defendant Hegseth created a Signal group chat titled "Defense | Team Huddle" that, after his confirmation, he used to communicate with family members, aides, and advisors about a range of government work, including the forthcoming military strikes discussed in the Houthi PC Small Group Chat ("DTH Chat").[1] Using a system that automatically deletes messages without regard to their contents is no mere "technical" violation of the FRA—it represents an effort by the administration to eliminate the oversight and checks on executive power envisioned by both our constitutional order and the Freedom of Information Act ("FOIA").

While communications on Signal using personal accounts and devices are susceptible to real-time surveillance by foreign intelligence services, they also cannot be collected from centralized servers because they are only maintained on the specific devices of the participants in each individual chat. Indeed, the reason why Signal has become a popular application in some circles is because it enables people to evade oversight as Signal communications are only accessible and retrievable from each user's device. The use of Signal (as opposed to governmental secure communications systems) in the context of planning a military invasion and other foreign policy concerns bespeaks only a desire to keep those communications from ever becoming the subject of review by Congress or the public.

---

[1] Greg Jaffe, Eric Schmitt & Maggie Haberman, *Hegseth Said to Have Shared Attack Details in Second Signal Chat*, N.Y. Times (updated Apr. 21, 2025, 9:30 AM), https://www.nytimes.com/2025/04/20/us/politics/hegseth-yemen-attack-second-signal-chat.html?partner=slack&smid=sl-share.

In response to the publication of the Houthi PC Small Group Chat records, American Oversight filed this lawsuit, seeking immediate preservation of those records and demanding Defendants' compliance with their duties under the FRA. On March 27, 2025, the Court issued a temporary restraining order, directing Defendants to preserve the Houthi PC Small Group Chat Signal messages from March 11 through March 15, 2025, and to file a status report with supporting declarations describing the steps taken to implement such preservation. However, in response to the order, each Defendant conceded that they had failed to preserve the Houthi PC Small Group Chat in its entirety. Some Defendants even claimed to "preserve" portions of their messages by taking screenshots of their phones, which does not meet regulatory requirements for recordkeeping, underscoring their failure to appreciate their FRA obligations. One Defendant, the CIA, failed to preserve even one substantive message in any form at all.

The CIA's representative has conceded that Defendant Ratcliffe failed to recover *any* substantive messages in the Houthi PC Small Group Chat from the relevant period off his device— retaining only "residual administrative content."[2] Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3. Even after the Court ordered supplemental declarations from Defendants following their deficient explanations about preservation efforts, Defendants' supplemental declarations continued to raise serious questions—other than the Treasury Secretary and CIA Director, no Defendant has told the public what messages, if any, they have preserved from the Houthi PC Small Group Chat. Pilkerton Decl. ¶ 4, ECF No. 8-1; Dziecichowicz Decl. ¶ 2, ECF No. 8-2; Bennett Decl. ¶ 2, ECF No. 10-1; Suppl. Bennett Decl. ¶ 2, ECF No. 15-1; Koch Decl. ¶ 4, ECF No. 10-2; Newton Decl. ¶ 4, ECF No. 15-2; Blankenship Decl. ¶ 3, ECF No. 10-3; Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3;

---

[2]*See* Julian E. Barnes, *C.I.A. Director's Messages in Leaked Chat Were Deleted, Agency Says* (Apr. 15, 2025), https://www.nytimes.com/2025/04/15/us/politics/cia-director-leaked-chat.html?smid=nytcore-ios-share&referringSource=articleShare.

Rogoff Decl. ¶¶ 5–6, ECF No. 10-4; Kootz Decl. ¶¶ 3–4, ECF No. 15-4. Defendants' preservation efforts were haphazard and occurred long after Defendants sent (and, in some cases, potentially deleted) the messages.

Shortly after the Court's March 27, 2025 order, the press reported on the existence of at least twenty additional Signal chats used to conduct official government business, including on national security and foreign policy issues related to Ukraine, China, and Gaza.[3] Defendants Gabbard and Ratcliffe testified to the Senate Select Committee on Intelligence that Signal is widely used in government—in fact, Gabbard testified that Signal comes "pre-installed" on government devices.[4] Defendants' use of Signal to conduct official business is concerning to say the least: senior administration officials used, and likely continue to use, a commercially available text messaging application with an auto-delete function, without a mechanism to adequately preserve federal records on government recordkeeping systems. The risks inherent in this practice are shown by Defendants' failure to preserve the entirety of a singular chat—the full Houthi PC Small Group Chat—despite this Court ordering Defendants to make best efforts to do so. *See* Pilkerton Decl. ¶ 4, ECF No. 8-1; Dziecichowicz Decl. ¶ 2, ECF No. 8-2; Bennett Decl. ¶ 2, ECF No. 10-1; Suppl. Bennett Decl. ¶ 2, ECF No. 15-1; Koch Decl. ¶ 4, ECF No. 10-2; Newton Decl. ¶ 4, ECF No. 15-2; Blankenship Decl. ¶ 3, ECF No. 10-3; Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3; Rogoff Decl. ¶¶ 5–6, ECF No. 10-4; Kootz Decl. ¶¶ 3–4, ECF No. 15-4.

---

[3] *See* Dasha Burns, *Waltz's Team Set Up at Least 20 Signal Group Chats for Crises Across the World*, Politico (April 2, 2025, 3:50 PM), https://www.politico.com/news/2025/04/02/waltzs-team-set-up-at-least-20-signal-group-chats-for-crises-across-the-world-00266845.

[4] *See* Maggie Miller, *Gabbard Says Signal Comes 'Pre-Installed' on Government Devices* (Mar. 26, 2025, 12:32 PM), https://www.politico.com/news/2025/03/26/gabbard-signal-government-devices-cybersecurity-00250731.

Defendants' Signal messages—some of which are now seemingly unrecoverable according to Defendants' supplemental declarations—conveyed information related to official government business. Thus, they constitute federal records under the FRA. The use of a private, encrypted platform with default autodelete settings for official communications without contemporaneous forwarding to a government system is a per se violation of Defendants' FRA obligations to initiate actions to recover lost records and to implement FRA-compliant recordkeeping within their respective agencies. And Defendants used an unsecured, commercial messaging app—rather than classified systems or a sensitive compartmented information facility ("SCIF")—to transmit sensitive or potentially classified communications about national security and military planning.

Plaintiff American Oversight is a nonpartisan, public interest watchdog that is dedicated to transparency in government. For eight years, American Oversight has filed lawsuits under the Freedom of Information Act ("FOIA") and other federal statutes to provide the public with a window into the otherwise shrouded actions of the federal government. *See, e.g.*, *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 25-cv-409 (BAH) (D.D.C. filed Feb. 11, 2025); *Am. Oversight v. Dep't of Just.*, 25-cv-383 (TJK) (D.D.C. filed Feb. 10, 2025). This case is no different. American Oversight has been working for months, even before the Houthi PC Small Group Chat and DTH Chat, to secure the preservation and release of government records from many of the same officials who participated in the Houthi PC Small Group Chat, the DTH Chat, and other Signal chats that are the subject of this lawsuit. The public is entitled to the preservation of official government records, whether they reside (as they should) in the government's computer systems or (as is the case here) on the mobile phones of the senior government officials.

Defendants' Signal messages are federal records subject to the preservation obligations set forth in the FRA. Although Defendants' existing recordkeeping programs should already operate

to preserve all government communications in accordance with the FRA, their failure to preserve the Houthi PC Small Group Chat—even in the days after it was reported in national media—shows that, without judicial action, additional Signal chats not included in the Court's March 27, 2025 temporary restraining order, like the DTH Chat, will be automatically destroyed and lost forever. Defendants' violations of the FRA, continually emerging new revelations, and public testimony about the extent to which Defendants rely on Signal to do their jobs indicate a practice of widespread noncompliance beyond the single episode of the Houthi PC Small Group Chat. Only court intervention can guarantee that these protected records are preserved in accordance with the FRA for the pendency of litigation.

For these reasons, American Oversight respectfully requests that the Court grant their motion for a preliminary injunction and (1) declare that messages and communications sent and received by Defendants over Signal in the transaction of public business are federal records subject to the FRA, (2) order the agency-head Defendants to implement adequate recordkeeping programs applicable to Signal messages to ensure compliance with the FRA for the pendency of litigation, (3) order Defendants to immediately preserve all materials relating to Plaintiff's claims in the Amended Complaint, ECF No. 17, including all Signal messages sent or received by Defendants in the course of conducting government business since the date each agency-head Defendant took their respective offices, and (4) order Defendants, including Acting Archivist Rubio, to comply with the initiation and notification requirements outlined in 44 U.S.C. § 3106, pending further proceedings.

## STATEMENT OF FACTS

Central to this motion are the distinctive features of Signal. The application is an open-source, encrypted messaging service that allows users to send text, video, and picture messages to other users. Am. Compl. ¶ 48, ECF No. 17. Signal is commercially available, meaning that anyone

can use the service by downloading the application to their cellphone and opening an account. *See generally* Signal, https://signal.org (last visited Apr. 17, 2025); Am. Compl. ¶¶ 1, 16, 13, ECF No. 17. Unlike the means of communications that government personnel are supposed to use to conduct official business, Signal text messages are sent and received on mobile phones and can only be collected from those phones. *See* Am. Compl. ¶¶ 49–50, ECF No. 17; *Backup and Restore Messages*, Signal, https://support.signal.org/hc/en-us/articles/360007059752-Backup-and-Restore-Messages (last visited Apr. 21, 2025).[5] Of particular relevance here, Signal includes a function that allows users to set time limits after which their messages will be automatically deleted from both the sender's *and recipient's* devices. Am. Compl. ¶ 49, ECF No. 17. As a result of these privacy features, Signal has become a popular means of communications for those who do not want their communications to be preserved or to be accessible, unless specific steps are taken to surveil the individual cellphones of those who are participating in the conversations.[6]

## I.    AMERICAN OVERSIGHT LEARNS ABOUT DEFENDANTS' SIGNAL CHATS AND THEIR FAILURE TO ADEQUATELY PRESERVE THOSE CHATS IN RECENT WEEKS.

On March 24, 2025, *The Atlantic* published a detailed investigative article by Jeffrey Goldberg, who revealed that senior officials in the Trump administration used Signal to coordinate U.S. military strikes in Yemen[7]—among the participants were Secretary of Defense Pete Hegseth, National Security Advisor Michael Waltz, Secretary of State Marco Rubio, Vice President JD

---

[5] *See also* Steve Witkoff (@SteveWitkoff), X (formerly Twitter), (Mar. 26, 2025, 9:20 AM), https://x.com/SteveWitkoff/status/1904886084879720683 (appearing to confirm that his participation in the Houthi PC Small Group Chat was via his personal phone).
[6] *See, e.g.*, Maggie Miller & Dana Nickel, '*It's So Unbelievable': Cyber World Stunned Over War Planners Using Signal*, Politico (Mar. 25, 2025, 6:33 AM), https://www.politico.com/news/2025/03/25/signal-cybersecurity-trump-war-planning-00246881.
[7] *See* Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic (Mar. 24, 2025), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/.

Vance, Director of National Intelligence Tulsi Gabbard, and other senior administration officials. Am. Compl. ¶¶ 2–5, 47, 53–59, ECF No. 17; 2d Decl. of Benjamin A. Sparks, Apr. 22, 2025, ¶ 22. On March 26, 2025, *The Atlantic* published another article, detailing the entirety of the Houthi PC Small Group Chat (except the identity of certain personnel), in response to comments from government officials disputing that the contents of the communications were classified.[8] Am. Compl. ¶ 64, ECF No. 17; 2d Sparks Decl. ¶ 23. At least one participant in the Houthi PC Small Group Chat enabled the function that makes messages disappear and automatically delete after set time limits. Am. Compl. ¶ 60, ECF No. 17.

On March 25, 2025, American Oversight filed its original Complaint in this case and, the next day, sought a temporary restraining order. Compl., ECF No. 1; Pl.'s Mot. TRO, ECF No. 6. On March 27, 2025, this Court ordered Defendants to "preserve all Signal communications from March 11-15, 2025" and file a Status Report with supporting declarations describing the steps taken to implement such preservation. Min. Order (Mar. 27, 2025). The Order was set to expire on April 10, 2025, "in the event that Defendants' measures [were] satisfactory to the Court." *See id.* In their Opposition to American Oversight's Motion for TRO, Defendants confirmed that they were "taking steps to locate and preserve the [Houthi PC Small Group C]hat, and that at least one of the agencies has located, preserved, and copied into a federal record keeping system a partial version" of the chat. Defs.' Mem. Opp. Pl.'s Mot. TRO at 7, ECF No. 8. However, as Defendants conceded in their declarations, only partial versions of the Houthi PC Small Group Chat, and images of the Houthi PC Small Group Chat were preserved. Am. Compl. ¶¶ 68–69, ECF No. 17.

---

[8] *See* Jeffrey Goldberg & Shane Harris, *Here are the Attack Plans that Trump's Advisers Shared on Signal*, The Atlantic, Mar. 26, 2025, https://www.theatlantic.com/politics/archive/2025/03/signal-group-chat-attack-plans-hegseth-goldberg/682176/.

In sworn statements filed in this case on March 27 and 31, and April 14, 2025, none of the representatives of Defendants' respective agencies confirmed that *all* messages from the Houthi PC Small Group Chat had been or could be preserved. Am. Compl. ¶ 69, ECF No. 17; Pilkerton Decl. ¶ 4, ECF No. 8-1; Dziecichowicz Decl. ¶ 2, ECF No. 8-2; Bennett Decl. ¶ 2, ECF No. 10-1; Suppl. Bennett Decl. ¶ 2, ECF No. 15-1; Koch Decl. ¶ 4, ECF No. 10-2; Newton Decl. ¶ 4, ECF No. 15-2; Blankenship Decl. ¶ 3, ECF No. 10-3; Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3; Rogoff Decl. ¶¶ 5–6, ECF No. 10-4; Kootz Decl. ¶¶ 3–4, ECF No. 15-4.

The Houthi PC Small Group Chat is not an isolated incident. Since American Oversight filed its original Complaint in this action, *Politico* reported that there are "at least 20 Signal group chats," which Waltz set up to coordinate official government work on issues including Ukraine, China, Gaza, Middle East policy, Africa, and Europe.[9] While the *Politico* report does not specify the exact participants of each of these 20 (or more) additional Signal group chats, it is virtually certain that at least some (if not all) of Defendants here—who include the nation's principal foreign policy and national security officials—participated in at least some (if not all) of Waltz's other group chats. And on March 26, 2025, Defendants Gabbard and Ratcliffe testified to the House Intelligence Committee that Signal comes "pre-installed" on all government devices, and that the use of the application was common across the administration.[10] Then, on April 20, 2025, *The New York Times* reported that, before he was confirmed as the U.S. Secretary of Defense in January 2025, Defendant Hegseth created the DTH Chat that he used to communicate government business with family members, aides, and advisors, and that he continued to use once assuming office.[11]

---

[9] *See* Burns, *supra* n.2
[10] *See* Miller, *supra* n.3.
[11] *See* Jaffe et al., *supra* n.1.

Defendant Hegseth even reportedly used the DTH Chat to communicate details of the forthcoming military strikes in Yemen that were the subject of the Houthi PC Small Group Chat.[12]

After American Oversight identified deficiencies in Defendants' Court-ordered declarations, on April 10, 2025, the Court ordered Defendants, other than Defendant Bessent, to produce supplemental declarations to answer questions about the specific steps they had taken to preserve the Houthi PC Small Group Chat. Min. Order (Apr. 10, 2025). However, most of Defendants' supplemental declarations, which were filed on April 14, 2025, continued to avoid telling this Court and the public what substantive messages from the Houthi PC Small Group Chat, if any, were preserved. *See* Suppl. Bennett Decl. ¶ 2, ECF No. 15-1; Newton Decl. ¶ 4, ECF No. 15-2; Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3; Kootz Decl. ¶¶ 3–4, ECF No. 15-4.

Aside from providing information about the dates of their preservation efforts, Defendants' supplemental declarations simply repeated what they had already said: the agencies took screen shot images of "certain" or "existing" messages in the Houthi PC Small Group Chat, or images that were still "in the possession" of Defendants' office. Suppl. Bennett Decl. ¶ 2, ECF No. 15-1; Newton Decl. ¶ 4, ECF No. 15-2; Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3; Kootz Decl. ¶¶ 3–4, ECF No. 15-4. Clearly, the agencies have not retained *all* communications from Defendants in the Houthi PC Small Group Chat. This reality creates increased urgency for the retention and preservation of the other Signal chats currently in use by these agency heads, including the DTH Chat.

The *Atlantic* articles, subsequent *Politico* article, and recent *Times* article revealed to the public the extent of how these senior administration officials use a commercially available text message application to discuss the most sensitive issues—such as threats to national security and

---

[12] *Id.*

military operations impacting the lives of American servicemembers—topics normally reserved for secure government systems. *See* Am. Compl. ¶ 77–78, 80, 83, ECF No. 17. The chat logs described by *The Atlantic* reveal active policy deliberations, interagency "taskings," and, ultimately, operational coordination regarding imminent U.S. military strikes. Participants exchanged information about weapons systems, attack sequences, diplomatic fallout, and foreign policy messaging.[13] The Secretary of Defense reportedly posted a "TEAM UPDATE" with specific operational details approximately two hours before the first bombs were dropped in Yemen on March 15, 2025.[14] Goldberg confirmed the accuracy of the text messages by reference to world events: the bombing commenced at the times and in the places promised by the senior government officials in the Signal messages.[15] In the "at least 20" other Signal chats attributed to Waltz, Gabbard, and Ratcliffe, the officials discussed a variety of foreign policy topics, such as Ukraine, Africa, and the Middle East.[16] Similarly, Defendant Hegseth's recently revealed DTH Chat reportedly contains messages ranging from "routine administrative or scheduling information" to "sensitive operational details" about military strikes.[17] Am. Compl. ¶¶ 100–05, ECF No. 17. And, to state the obvious, these are just these officials' Signal chats that have been publicly reported—likely a fraction of the total.

## II.    SIGNAL'S AUTODELETE FUNCTION IS INCONSISTENT WITH DEFENDANTS' PRESERVATION OBLIGATIONS.

Signal is not an authorized system for preserving federal records and does not comply with recordkeeping requirements under the FRA or National Archives and Records Act ("NARA") guidance. Am. Compl. ¶¶ 93–94, ECF No. 17. According to Goldberg's March 26, 2025 article,

---

[13] *See* Goldberg & Harris, *supra* n.8.
[14] *Id.*
[15] *See* Goldberg, *supra* n.7.
[16] *See* Burns, *supra* n. 2.
[17] *See* Jaffe et al., *supra* n.1.

at least some of the messages in the Houthi PC Small Group Chat group were configured to disappear after a fixed period—some after one week, and others after four weeks. *Id.* ¶¶ 60–62. Defendants concede that their Signal accounts no longer contain all of the messages they sent and received in the Houthi PC Small Group Chat. The CIA likewise conceded that Defendant Ratcliffe failed to recover *any* substantive messages of the Houthi PC Small Group Chat from the relevant period from his device—retaining only "residual administrative content." *See* Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3. Worse, it is not clear whether the autodelete function has been disabled in any of the tens of other known Signal chats, including the DTH Chat, leaving the continued potential for the automated deletion of sensitive government communications outside of the Houthi PC Small Group Chat.

There is no indication that the messages in chats outside of the Houthi PC Small Group Chat are preserved or forwarded to official government storage systems, as required under the FRA, NARA regulations, and agency policies. Am. Compl. ¶¶ 105–06, 155–86, ECF No. 17; *see, e.g.*, 44 U.S.C. § 2911 (prohibiting officers of executive agencies from using non-official electronic messaging unless they either contemporaneously copy an official electronic messaging account or promptly forward a complete copy to an official account); 36 C.F.R. §§ 1222.26(b). Indeed, there would be no reason for Defendants to use Signal in the context of sensitive government business, *except* for its well-known features that allow chat participants to avoid federal retention requirements for communications exchanged on government communications systems. Worse still, it was reported that the Department of Defense ("DoD") warned personnel that Signal is vulnerable to hacking by professional Russian hacking groups, which spy on persons

12

of interest.[18] *See* Am. Compl. ¶ 94, ECF No. 17. Notwithstanding that warning, Defendant Hegseth reportedly used the DTH Chat, which included members of his family, his personal lawyer, aides, and advisors, to discuss everything from "routine administrative or scheduling information" to "sensitive operational details" about military strikes.[19] *See id.* ¶¶ 13–15, 95–99.

No government agency has taken steps to recover any lost Signal records—from the Houthi PC Small Group Chat or beyond—or initiate enforcement proceedings under 44 U.S.C. § 3106 to compel these necessary steps. Am. Compl. ¶¶ 147–66, ECF No. 17. During testimony in front of the Senate Select Committee on Intelligence, Defendant Ratcliffe admitted that Signal is installed on his official CIA device and that he regularly uses the application.[20] Numerous public reports also disclosed the widespread use of Signal in the current administration.[21] Indeed, in the Houthi PC Small Group Chat messages themselves, Waltz refers to the "first PC [(principals

---

[18] Quil Lawrence & Tom Bowman, *Days After the Signal Leak, the Pentagon Warned the App was the Target of Hackers*, NPR (Mar. 25, 2025, 12:49 PM), https://www.npr.org/2025/03/25/nx-s1-5339801/pentagon-email-signal-vulnerability; *see also* Dep't of Def., *Memorandum for Senior Pentagon Leadership, Commanders of the Combat Commands, Defense Agency and DOD Field Activity Directors* at 3 (Oct. 6, 2023), https://dodcio.defense.gov/Portals/0/Documents/Library/Memo-UseOfUnclassMobileApps.pdf.

[19] *See* Jaffe et al., *supra* n.1.

[20] Mar. 26, 2025 Hr'g of Senate Select Committee on Intelligence at 1:04:48–54, https://www.intelligence.senate.gov/hearings/open-hearing-worldwide-threats-5 (last visited Apr. 21, 2025).

[21] *See, e.g.*, Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times (updated Jan. 23, 2025), https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html ("People involved in the operation say that secrecy and avoiding leaks is paramount, and much of its communication is conducted on Signal, the encrypted messaging app."); Shira Ovide, Danielle Abril & Hannah Natanson, *Why Government Workers and Military Planners All Love Signal Now*, Wash. Post (Mar. 25, 2025), https://www.washingtonpost.com/technology/2025/03/25/signal-government-trump-administration-federal-workers/; Rebecca Boone & Claudia Lauer, *Encrypted messaging apps promise privacy. Government transparency is often the price*, Assoc. Press (updated Mar. 20, 2025 12:11 AM), https://apnews.com/article/encryption-apps-government-transparency-sunshine-week-ad26ecdee91c8f99f15228bbe7989ede.

committee)]," and no one in the group chat expressed any surprise or concern about using Signal for these communications.[22] Am. Compl. ¶ 77, ECF No. 17. At times using his personal mobile device to access the DTH Chat, Defendant Hegseth shared a range of information about government business, including on March 15, 2025, when he shared details about forthcoming military strikes in Yemen.[23] *Id.* ¶¶ 14–15. These revelations show that Signal is a widely used method of communication among Defendants, who are among the most senior officials in the current administration.

## III.    DEFENDANTS' SIGNAL CHATS ARE RESPONSIVE TO AMERICAN OVERSIGHT'S PENDING FOIA REQUESTS.

The Signal chats, which reflect national security deliberations in some cases, are federal records and must be preserved in accordance with the FRA. The failure to preserve or recover Signal messages—some of which have been deleted already—causes irreparable harm (and raises the risk of further injury) to the public's right to access federal records documenting some of the most important national security and foreign policy issues in this administration.

These issues are of particular interest to American Oversight, which has been working for months, even before the disclosure of the Houthi PC Small Group Chat, to secure the release of government records from Defendants. American Oversight submitted multiple FOIA requests to Defendants' agencies, including multiple requests in the first quarter of 2025 that seek Signal messages and other records concerning Defendants' work. *See* Am. Compl. ¶¶ 111–41, ECF No. 17; 2d Sparks Decl. ¶¶ 7–21. For example, on January 28, 2025, American Oversight submitted a FOIA request to DoD. Am. Compl. ¶ 112, ECF No. 17. On January 27, February 4, and March 18, 2025, American Oversight submitted FOIA requests to the Department of State seeking a host of

---

[22] *See* Goldberg & Harris, *supra* n.8.
[23] *See* Jaffe et al., *supra* n.1.

different communication records. *Id.* ¶¶ 119–23. On January 30 and February 28, 2025, American

Oversight submitted FOIA requests to Treasury seeking a variety of communications. *Id.* ¶¶ 129–

30. Further, on March 25, 2025, American Oversight sent FOIA requests to DoD, State, Treasury,

ODNI, and CIA seeking all Signal messages sent by those agencies' respective heads from January

20, 2025, forward. *Id.* ¶¶ 112, 119, 131, 136, 141; 2d Sparks Decl. ¶¶ 10, 16, 19–21.

Many of the Signal communications at issue in this case are likely responsive to American

Oversight's pending FOIA requests, some of which touch all aspects of an individual Defendant's

work since President Trump's January 20, 2025 inauguration. For instance, Defendant Hegseth's

communications about government business in the DTH Chat are very likely responsive to

American Oversight's pending March 25, 2025 FOIA request, *see* Am. Compl. ¶ 113, ECF No.

17, in part because the DTH Chat has reportedly existed at least as long as Defendant Hegseth has

been Defense Secretary.[24] But Signal's decentralized storage and autodelete features, and

Defendants' uniform failures to preserve the entirety of the Houthi PC Small Group Chat, indicate

that Defendants are not preserving records as the FRA and FOIA require.

## ARGUMENT

The Court should grant American Oversight's request for a preliminary injunction,

directing Defendants to comply with their obligations under 44 U.S.C. § 3106, immediately cease

destruction of records, and take action to recover documents already destroyed or at risk of

destruction, because all four factors necessary to obtain a preliminary injunction weigh in

American Oversight's favor. Plaintiffs seeking a preliminary injunction under Federal Rule of

Civil Procedure 65 must demonstrate that (1) they are likely to succeed on the merits; (2) they are

likely to suffer irreparable harm absent injunctive relief; (3) the balance of hardships tips in their

---

[24] *See* Jaffe et al., *supra* n. 18.

favor; and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016). Here, all four factors demonstrate that American Oversight is entitled to preliminary relief.

## I.    AMERICAN OVERSIGHT IS LIKELY TO SUCCEED ON THE MERITS BECAUSE DEFENDANTS HAVE VIOLATED THE FRA.

American Oversight is likely to succeed on the merits. A plaintiff seeking preliminary relief to restrain an agency from destroying federal records demonstrates a likelihood of success on the merits by "(1) identify[ing] records that fall under the FRA; (2) alleg[ing] that those records are being removed or destroyed in violation of the FRA; and (3) alleg[ing] that the relevant agency head . . . and/or Archivist knew about the FRA violations and yet failed to initiate corrective action." *Price v. United States Dep't of Justice*, No. 18-CV-1339 (CRC), 2019 WL 2526439, at *6 (D.D.C. June 19, 2019). American Oversight satisfies each of those elements. Similarly, American Oversight has shown that the agency-head Defendants have failed to implement recordkeeping programs governing the destruction and retention of Signal messages such that they have each established informal policies or practices of violating the FRA's mandate that they implement recordkeeping programs and safeguards within their agencies. *See Citizens for Resp. and Ethics in Wash. v. Pompeo*, 19-cv-3324 (JEB), 2020 WL 1667638, at *4 (D.D.C. Apr. 3, 2020).

### A.    Signal Messages Are Government Records under the FRA.

The FRA imposes affirmative duties on agencies and agency heads to preserve records documenting "the organization, functions, policies, decisions, procedures, and essential transactions" of the agency. 44 U.S.C. § 3101. These records must be managed in accordance with guidelines issued by the Archivist and cannot be deleted or destroyed without authorization. *Id.* §§ 3301–3314. Furthermore, agency heads are required to "establish safeguards against the removal or loss of records," *id.* § 3105, and notify and work with the Archivist to "initiate action

through the Attorney General for the recovery of records" unlawfully removed, *id.* § 3106(a). Electronic communications—including text messages, chats, and emails—are subject to the FRA when they document official actions, *see id.* § 3301 (defining record to include "all recorded information"); 36 C.F.R. § 1220.18 (noting that "electronic messages that satisfy the definition of a Federal record under the Federal Records Act are electronic records"); *see also Competitive Enter. Inst. v. U.S. Env't Prot. Agency*, 67 F. Supp. 3d 23, 35 (D.D.C. 2014) ("EPA has a clear duty to preserve its text messages under FRA, and there is no other adequate remedy for EPA's alleged violations."). The platform used is irrelevant; what matters is the content and purpose of the communication. *See, e.g.*, *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 955 (D.C. Cir. 2016) (reversing dismissal of an Administrative Procedure Act ("APA") claim for violation of the FRA related to "emails on a private server" that were "made or received in [the individual's] capacity as Secretary of State or in connection with the transaction of public business").

Defendants' Signal communications about government business, such as those in the Houthi PC Small Group Chat and the DTH Chat, plainly meet the definition of federal records. The messages involve the heads of multiple executive branch departments discussing foreign policy, national security, official government business and schedules, and a decision to take military action. Am. Compl. ¶¶ 16–18, 100–04, 150, 154, ECF No. 17. Accordingly, these Signal messages are documents "made or received by a Federal agency . . . in connection with the transaction of public business" and are "evidence of the organization, functions, policies, decisions, procedures, [or] operations" of those departments. 44 U.S.C. § 3301(a)(1)(A). Indeed, the fact that senior Cabinet-level officials—including the Secretary of Defense, Secretary of State, and Treasury Secretary—used Signal to communicate real-time operational instructions and national security analysis, along with regular official business, Am. Compl. ¶¶ 2, 16, 75, ECF No.

17

17, renders the messages federal records by virtue "of the informational value of the data in them." 44 U.S.C. § 3301(a)(1)(A).

**B.      Defendants Have Already Lost Signal Messages in Violation of the FRA.**

Some of Defendants' Signal messages have already been lost or destroyed, *see, e.g.*, Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3, and others will be imminently destroyed in violation of the FRA without further judicial intervention. Under the FRA, "[n]o records may be 'alienated or destroyed'" without authorization of the Archivist and unless the records "do not have 'sufficient administrative, legal, research, or other value to warrant their continued preservation by the Government[.]'" *Armstrong v. Bush*, 924 F.2d 282, 285 (D.C. Cir. 1991) (quoting 44 U.S.C. § 3314). Autodelete settings are plainly inconsistent with this standard.

At minimum, if a government officer or employee uses an electronic messaging platform, such as Signal, to conduct official business, the records must be preserved and forwarded to an official government account. *See* 44 U.S.C § 2911(a) (prohibiting federal officers and employees from creating or sending records using non-official electronic messaging accounts unless they contemporaneously a copy the message to an official account "in the original creation or transmission of the record" or "forward[] a complete copy of the record to an official electronic messaging account of the officer or employee" within 20 days). But, as evidenced by Defendants' uniform and abject failure to fully preserve the Houthi PC Small Group Chat, none of the current recordkeeping practices of any of Defendants' agencies involve the copying or forwarding of Signal messages to Defendants' official email accounts at the time of transmission or similar processes for preservation purposes. *See* Am. Compl. ¶¶ 67, 105, 117, 127, 134, 139; 144, ECF No. 17; Pilkerton Decl. ¶ 4, ECF No. 8-1; Dziechichowicz Decl. ¶ 2, ECF No. 8-2; Bennett Decl. ¶ 2, ECF No. 10-1; Suppl. Bennett Decl. ¶ 2, ECF No. 15-1; Koch Decl. ¶ 4, ECF No. 10-2; Newton Decl. ¶ 4, ECF No. 15-2; Blankenship Decl. ¶ 3, ECF No. 10-3; Suppl. Blankenship Decl.

¶ 4, ECF No. 15-3; Rogoff Decl. ¶¶ 5–6, ECF No. 10-4; Kootz Decl. ¶¶ 3–4, ECF No. 15-4. The fact that not one of the multiple agency-head Defendants, including the Acting Archivist himself, preserved the Houthi PC Small Group Chat in its entirety speaks volumes about the lack of any FRA-compliant infrastructure within their respective agencies to preserve such communications.

This is particularly concerning because Director Ratcliffe confirmed that "one of the first things that happened when I was confirmed as CIA Director was Signal was loaded onto my computer at the CIA, as it is for most CIA officers."[25] And other public reporting indicates that discussing official government business on Signal is "commonplace" among Defendants and other Cabinet members.[26] Notably, DoD employees, like Secretary Hegseth, "are NOT authorized to access, transmit, process non-public DoD information" on Signal and similar "[u]nmanaged 'messaging apps.'"[27] Am. Compl. ¶ 94, ECF No. 17. Yet Defendant Hegseth has used—and likely continues to use—Signal for precisely that purpose. Defendants' use of Signal represents a systematic effort to evade their obligations to preserve records under the FRA, the system of checks and balances, and public scrutiny.

---

[25] *See* March 26, 2025 H'rg, *supra* n.20.

[26] *See, e.g.*, Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times, Jan. 12, 2025, https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html ("People involved in the operation say that secrecy and avoiding leaks is paramount, and much of its communication is conducted on Signal, the encrypted messaging app."); Shira Ovide, Danielle Abril & Hannah Natanson, *Why Government Workers and Military Planners All Love Signal Now*, Wash. Post, Mar. 25, 2025, https://www.washingtonpost.com/technology/2025/03/25/signal-government-trump-administration-federal-workers/; Rebecca Boone & Claudia Lauer, *Encrypted Messaging Apps Promise Privacy. Government Transparency is Often the Price*, Assoc. Press, Mar. 20, 2025, https://apnews.com/article/encryption-apps-government-transparency-sunshine-week-ad26ecdee91c8f99f15228bbe7989ede.

[27] *See* Dep't of Def. Memorandum, *supra* n.18.

To make matters worse, at least one official involved in the Houthi PC Small Group Chat, Waltz, deliberately configured Signal to automatically delete his messages after a set period—some after one week, others after four weeks. Am. Compl. ¶¶ 60–62, ECF No. 17. Since January 27, 2025, American Oversight has submitted multiple FOIA requests to Defendants' respective agencies, seeking records created or received by Defendants, including Signal messages dated as early as January 20, 2025. Am. Compl. ¶¶ 111–141, ECF No. 17. More recently, American Oversight has learned that, in addition to the Houthi PC Small Group Chat, Waltz or his staff created at least twenty other Signal chats, likely including Defendants and other high-ranking government officials, to discuss sensitive information on wide-ranging foreign policy topics like Ukraine, China, Gaza, the Middle East, Africa, and Europe. *Id.* ¶¶ 12, 76–81. Accordingly, innumerable records responsive to those FOIA requests have undoubtedly vanished, considering that (i) Waltz enabled an autodelete function on his Signal application and (ii) Signal's autodelete function destroys subject messages from the devices of *both* senders and recipients. The D.C. Circuit has held that "an agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009). Defendants' agencies received American Oversight's FOIA requests for Defendants' Signal messages long before this lawsuit arose; thus, Defendants were aware of the risks of intentionally destroying those messages, at least some of which were likely subject to an autodelete policy.

## C.    Defendants Failed to Prevent Signal Messages from Being Destroyed, Despite Their Knowledge that the Autodelete Setting Was Enabled.

Defendants have failed take measures to prevent the destruction of the Signal messages and to establish policies for the preservation of Signal messages as required by law. The FRA requires "that the head of each agency 'shall establish and maintain' a records management

program, 44 U.S.C. § 3102, and 'shall establish safeguards against the removal or loss of records,' 44 U.S.C. § 3105." *Armstrong*, 924 F.2d at 293. Recently, Congress has supplemented those provisions with an express requirement that federal officers and employees create a complete copy of any message sent "using a non-official electronic messaging account . . . in the original creation or transmission of the record" or "forward[] a complete copy of the record to an official electronic messaging account of the officer or employee" within 20 days. 44 U.S.C. § 2911. Further, when an agency head learns of the destruction or imminent destruction of records subject the FRA, they must inform "the Archivist of [that] unlawful removal or destruction of records and shall initiate, through the Attorney General, an action to recover the records." *Armstrong*, 924 F.2d at 285 (quoting 44 U.S.C. § 3106). If the agency head fails to take action, then the National "Archivist 'shall request the Attorney General to initiate such action, and shall notify the Congress when such a request has been made.'" *Id.*

Here, as direct participants in the Houthi PC Small Group Chat, the heads of multiple agencies and the Acting Archivist were clearly aware of the destruction and imminent destruction of federal records but are failing to prevent it. The Houthi PC Small Group Chat involved the Secretary of Defense, the Secretary of Treasury, the Secretary of State, the Director of National Intelligence, and the Director of the CIA—all agency heads. Am. Compl. ¶¶ 2–4, 57–59, ECF No. 17. Further, Secretary of State Rubio also serves as the Acting Archivist. *Id.* ¶¶ 29, 59. Each of these individuals knew or should have known that the autodelete setting was enabled for at least some of their Signal messages. *Id.* ¶ 63. In fact, Signal alerts group chat participants that messages are subject to automatic deletion and the timeframe for such deletion, as shown in the below image.

> **What does a disappearing message look like?**
>
> ↺ Each and every disappearing message will have a timer countdown icon that is visible at the bottom of the message bubble.

Signal, *Set and manage disappearing messages*, https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages (last visited Apr. 21, 2025); 2d Sparks Decl. ¶ 23 n.3.

The "timer countdown icon" is plainly visible in the screenshots published in *The Atlantic*:



2d Sparks Decl. ¶ 23.[28]

As stated above, existing agency recordkeeping protocols (if any exist at all) relating to Signal or messaging apps more broadly do not appear to involve a system for copying or forwarding such messages to official email servers or otherwise storing those messages in

---

[28] *See* Goldberg & Harris, *supra* n.8.

government-controlled repositories. *See supra* § II.B; Am. Compl. ¶¶ 105, 108, 117–18, 127–28, 134–35, 139–40; 144–45, ECF No. 17. The consistent failure of the agency-head Defendants to preserve the Houthi PC Small Group Chat messages evidences a wider, informal policy or practice established by each agency-head Defendant that permits the use of Signal to conduct official business outside the confines of the FRA. *See* Am. Compl. ¶¶ 179–185, ECF No. 17. The fact that *not one* agency-head Defendant preserved the entirety of the Houthi PC Small Group Chat is not mere coincidence. Rather, every single agency-head Defendant's failure to preserve all federal records from the Houthi PC Small Group Chat show such a widespread pattern of deficient—or non-existent—recordkeeping programs at the highest levels across multiple agencies so as to constitute informal agency policies permitting the regular creation and destruction of federal records without regard to the FRA. *See id.* Accordingly, American Oversight is likely to succeed on the merits of its claim that Defendants' informal policies and practices permitting the regular creation and unlawful destruction of Signal messages by agency heads violates the "records-creation and -destruction mandates" set forth in the FRA. *See CREW v. Pompeo*, 2020 WL 1667638, at *4; *see also* Am. Compl. ¶¶ 179–99, ECF No. 17.

Despite extensive public reporting on at least twenty other similar Signal chats, no such action to preserve any subsequent Signal messaging or recover any deleted messages has been publicly started or declared by Defendants on the record. Although the National Security Council acknowledged the authenticity of the Houthi PC Small Group Chat messages, no evidence has emerged that any of the agency heads who themselves participated in the Signal chats, nor Rubio in his separate capacity as Acting Archivist, initiated any steps to preserve or recover their Signal chats, as required by the FRA. Certainly, none of the Signal chat participants reminded the others

of their obligations to preserve federal records, particularly with the autodelete feature activated.[29]

This inaction constitutes unlawful withholding of agency action under the APA, 5 U.S.C. § 706(1),

and arbitrary and capricious failure to fulfill a statutory mandate under Section 706(2)(A).

## II.    AMERICAN OVERSIGHT AND THE PUBLIC HAVE SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM FROM THE DELETION OF FEDERAL RECORDS THAT ARE RESPONSIVE TO PENDING FOIA REQUESTS.

American Oversight seeks to use FOIA to help it and the public monitor the activities of

government officials and agencies. Am. Compl. ¶ 22, ECF No. 17; 2d Sparks Decl. ¶¶ 2–5.

American Oversight has already been irreparably harmed as a result of the Signal chats that have

been destroyed and will be further irreparably harmed if more government Signal chats are

destroyed in violation of the FRA. Only a preliminary injunction can address the harm that would

follow from Defendants' destruction of their expansive communications.

The concern about destruction of Signal chats is more than hypothetical: Waltz enabled the

autodelete function to delete messages for *all* participants of Signal chats of which he is a member

after set time limits. Am. Compl. ¶¶ 60–62, ECF No. 17; *see also* 2d Sparks Decl. ¶¶ 23–24. Waltz

set at least some messages to disappear after one week, and other messages were set to disappear

after four weeks. Am. Compl. ¶¶ 60–62, ECF No. 17. It can therefore be inferred that at least some

of the approximately twenty Signal chats Waltz's team has initiated also have been set to disappear

after a certain duration. In addition, it appears that at least some of the Signal chats have already

been deleted. *See id.* ¶¶ 68–70. It is, therefore, likely that the additional communications that are

subject to autodeletion.

---

[29] *See* Goldberg & Harris, *supra* n.8.

Further, these government employees are using Signal to conduct other official business, likely with autodeletion enabled.[30] *See id.* ¶¶ 76–81. None of the participants expressed any surprise or concern at this particular conversation taking place over Signal.[31] Indeed, National Security Advisor Waltz made reference to a "first PC," indicating that there was a prior principals committee meeting Signal chat.[32] *Politico*'s reporting further demonstrated that just one official, Waltz, communicated in at least twenty separate Signal chats. In light of the undisputed use of Signal to discuss official government business at all levels of the administration, the sheer number of communications that is still unknown is at least tenfold. Yet every day, such communications are being destroyed. Simply put, Defendants' use of Signal, rather than approved communication channels, and their failures to safeguard federal records and take action to recover them under 44 U.S.C. §§ 3105–06, thwarts the ability of American Oversight and concerned citizens to monitor the activities of their government.[33]

Consistent with its mission, American Oversight has submitted multiple FOIA requests to Defendants' agencies, including multiple requests in 2025 that seek Signal messages. Am. Compl. ¶¶ 111–13, 119–24, 129–31, 136, 141, ECF No. 17; 2d Sparks Decl. ¶¶ 6–21. For example, American Oversight submitted FOIA requests to the Department of State seeking all communications, expressly including Signal messages, involving Defendant Rubio from the period beginning January 20, 2025 through the dates that the searches are conducted. Am. Compl. ¶¶ 119–22, 124, ECF No. 17; 2d Sparks Decl. ¶¶ 11–16. American Oversight also sent requests for Defendants' Signal messages spanning the same timeframe to the following agencies: DoD,

---

[30] *See* Burns, *supra* n.2.
[31] *See* Goldberg & Harris, *supra* n.8.
[32] *See id*.
[33] It also thwarts the ability of Congress to monitor the executive branch's activities.

Department of the Treasury, the Office of the Director of National Intelligence; and the CIA. Am. Compl. ¶¶ 112–13, 129–31, 136, 141, ECF No. 17; 2d Sparks Decl. ¶¶ 10, 19–21. Depending on the dates when the respective agencies conduct the required searches, Defendants' Houthi PC Small Group Chat, the DTH Chat, and other Signal chats covering myriad topics would be responsive to American Oversight's FOIA requests to Defendants' various agencies.

American Oversight cannot provide the public with information about Defendants' Signal discussions that would otherwise be available under FOIA if such communications are deleted or destroyed. *See* Am. Compl. ¶¶ 118, 128, 135, 140, 145, ECF No. 17; 2d Sparks Decl. ¶¶ 5–6, 25; *cf. Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). Even if any contents of the Signal chats central to this case had been properly withheld pursuant to FOIA exemptions, American Oversight would still be entitled to *some* information, including the metadata of the relevant records (e.g., dates, times, and participants of the chats) and non-exempt, segregable, substantive messages in redacted form, or a *Vaughn* index. *See* 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(6)(F), 552(a)(8)(A)(ii)(II). Moreover, the FRA requires preservation of federal records whether or not they are not released under FOIA. *See* 44 U.S.C. § 3101 ("The head of each Federal agency shall make and preserve records. . . ."). And records exempt under FOIA may still be accessible to Congress as it exercises its oversight authority over the executive branch on behalf of the public. Defendants' failure to preserve these records and take the mandatory notification and enforcement steps outlined in the FRA is particularly damaging to American Oversight's mission, as well as the public's ability to hold the government accountable for its actions through their own efforts or those of their Congressional Representatives and Senators.

The fact that Defendants captured screenshots of the Houthi PC Small Group Chat does not satisfy Defendants' duty to preserve "*all* recorded information, *regardless of form or characteristics*, made or received by a Federal agency . . . in connection with the transaction of public business," including the messages themselves, corresponding metadata, and any additional Signal communications. 44 U.S.C. § 3301(a)(1)(A); 36 C.F.R. §§ 1222.26(b); *see also* 44 U.S.C. § 2911 (prohibiting electronic messaging communications from non-official accounts unless specified steps are taken to preserve them in government systems). Nor do those screenshots serve as a substitute for all other records subject to the FRA's preservation requirements or diminish the irreparable harm to American Oversight and the public if any of these records have been destroyed. Indeed, the FRA does not contain an exception allowing the arbitrary disposal of records that government officials have inadvertently leaked to the press.

Further, according to Signal's website, once Signal text message records are destroyed, they cannot be recovered, permanently depriving the public of their content and obstructing government accountability. *See* Am. Compl. ¶ 50 n.3, ECF No. 17. Courts recognize that irreparable harm occurs when government records are unlawfully destroyed. *See Armstrong*, 924 F.2d at 288 (noting that unlawfully deleted government records "will be lost forever to history"); *Am. First Legal Found. v. Becerra*, No. CV 24-1092 (RC), 2024 WL 3741402, at *14–16 (D.D.C. Aug. 9, 2024) ("[T]he loss or destruction of federal records is a significant harm to both Plaintiff and the public, and that it is a harm that cannot be cured once the records are lost or destroyed.").

Nor is there an alternate means to ensure that the Signal communications are preserved. As described by Signal's Terms & Privacy Policy, "Signal messages and calls cannot be accessed by

[Signal] or other third parties because they are always end-to-end encrypted, private, and secure."[34]
*See* Am. Compl. ¶¶ 48, 50, ECF No. 17. Without immediate intervention, any of Defendants' many
Signal communications will be permanently lost.

The content of Defendants' Signal messages—communications relating to national
security, foreign policy, and official government business—makes their destruction a matter not
just of historical concern but of public safety, democratic accountability, and constitutional
oversight of war powers. But even greater is the irreparable harm from the loss of Signal messages
that were *not* inadvertently sent to a prominent national reporter—without a court order, those will
be lost to time.

The second factor clearly weighs in favor of a preliminary injunction.

## III.    THE BALANCE OF HARMS WEIGHS IN FAVOR OF PRELIMINARY RELIEF.

The balance of equities tips sharply in American Oversight's favor because the already
destroyed records are seemingly irretrievable, and no legitimate government interests would be
harmed by enjoining Defendants to comply with their legal obligations and preserve all Signal
communications, pursuant to American Oversight's requested relief.

Defendants cannot assert any injury from being required to comply with their
nondiscretionary obligations under the FRA and APA, namely, their duty to preserve the records
at issue. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)
("There is generally no public interest in the perpetuation of unlawful agency action. To the
contrary, there is a substantial public interest in having governmental agencies abide by the federal
laws that govern their existence and operations.") (cleaned up). Defendants have no right to hide

---

[34] Signal, *Signal Terms & Privacy Policy*, *available at*
https://signal.org/legal/#:~:text=Signal%20Terms%20&%20Privacy%20Policy,Privacy%20Polic
y%20are%20available%20below (last visited Apr. 21, 2025).

their communications from the public or to deprive the public of its right of access by failing to preserve federal records.

At the same time, American Oversight will suffer grave harm if it is unable to secure preliminary relief. As discussed above, because Signal lacks a central repository for messages that could serve as a backup for any messages that Defendants deleted from their individual devices, American Oversight has *no other way* of (i) obtaining messages that Defendants have already lost, *see, e.g.*, Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3, or (ii) ensuring that Defendants are complying with their statutory and Court-ordered obligations to preserve extant federal records contained in Defendants' ongoing Signal chats. Without a preliminary injunction, Defendants' past and continuing violations of those obligations will continue to harm American Oversight's interest in the preservation of federal records without consequence. Those records are likely responsive to American Oversight's pending FOIA requests and are essential to American Oversight's ability to hold Defendants' accountable for their failure to comply with their obligations.

The balance of harms tips in favor of granting relief: without relief, records will continue to be irretrievably lost; yet with relief, Defendants must simply cease the destruction of records, preserve existing records, and notify the Attorney General of the need to take enforcement action under the FRA in response to "actual, impending, or threatened . . . destruction of records." 44 U.S.C. § 3106. By contrast, American Oversight and the public face the permanent loss of documentary evidence relating to decisions of the highest constitutional magnitude: war, diplomacy, intelligence operations, and presidential authority. The third factor supports granting this motion.

IV.    **THE PUBLIC INTEREST STRONGLY SUPPORTS THE RELIEF AMERICAN OVERSIGHT SEEKS.**

Defendants cannot deny that the public interest will be served by an order requiring Defendants to preserve government records and comply with the FRA and APA. *See Newby*, 838 F.3d at 12. Congress enacted the FRA to ensure continuity of government functions, facilitate historical understanding, and provide transparency in governance. *See* 44 U.S.C. § 3101. Preventing the destruction of federal records poses no harm to Defendants, while allowing their destruction would cause severe harm to the public's right to access government records. In fact, this Court has recognized that upholding the FRA serves the public interest. *See, e.g.*, *Am. First Legal Found.*, 2024 WL 3741402, at *16; *Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5, 15 (D.D.C. 2019). The public has a vital interest in the enforcement of the FRA and the issuance of a preliminary injunction directing Defendants to preserve its records.

This interest is heightened where, in the instance of the Houthi PC Small Group Chat and the DTH Chat, the records concern the use of military force and foreign policy decision-making. Those records document real-time coordination of military strikes in war-torn regions where American servicemembers operate at great risk to their lives and other official business conducted by the most senior government officials responsible for ensuring the national security. Congress and the public have an urgent need to understand how foreign policy decisions are made, why Defendants failed to use proper communication procedures, and whether future use of encrypted communications should be reined in by statute or administrative action. *See, e.g.*, *Aids Vaccine Advoc. Coal. v. United States Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025) ("[W]hile the public no doubt has an interest in the Executive carrying out his important role in foreign affairs, it also has an interest in ensuring those duties are carried out in accordance with law, including the APA . . . ."). The same is true for Defendants' other Signal

30

communications. Defendants hold some of the most powerful positions within the executive branch of American government, and American Oversight, the public, and Congress all have statutory rights to request access to public records in order to hold the powerful accountable for their conduct while in office.

The public interest weighs heavily in favor of ensuring that Defendants uphold their legal obligations by preserving sensitive records like these. This is especially true in light of Defendants' unlawful destruction of evidence and stonewalling in response to the Court's requests for information about Defendants' preservation practices, which reflect Defendants' intent to shield their actions from public scrutiny. The Court can order preservation of the records at issue before they are lost. Delay in that preservation will result in permanent harm.

## V.    THE COURT SHOULD NOT REQUIRE AMERICAN OVERSIGHT TO POST A BOND.

The Court should not impose a security requirement in this public interest litigation. *See e.g.*, *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239 (LLA), 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (declining to impose bond on a public interest plaintiff, highlighting that the trial court has discretion to require no bond at all, and noting that it would "defy logic" to require bond in a case where the defendants—a federal agency and its director— would face no monetary injury from preliminary injunctive relief); *see also Mich. Citizens for an Indep. Press v. Thornburgh*, No. CIV.A. 88-2322, 1988 WL 90388, at *8 n.12 (D.D.C. Aug. 17, 1988) (declining to order security in part because action was "brought in the public interest on behalf of individuals whose resort to further judicial review would be impaired if compelled to pay the bond that defendants seek").

Here, American Oversight is a public interest plaintiff, and the Court has broad discretion to dispense with the requirement of bond, particularly in a case where Defendants face no monetary

injury if preliminary injunction relief is imposed. Therefore, the Court should allow this case to proceed without a bond.

## CONCLUSION

Plaintiff American Oversight has satisfied the requirements for a preliminary injunction. Accordingly, it respectfully requests that this Court grant its motion for a preliminary injunction and (1) declare that messages and communications sent and received by Defendants over Signal in the transaction of public business are federal records subject to the FRA, (2) order the agency-head Defendants to implement adequate recordkeeping programs applicable to Signal messages to ensure compliance with the FRA for the pendency of litigation, (3) order Defendants to immediately preserve all materials relating to Plaintiff's claims in the Amended Complaint, ECF No. 17, including all Signal messages sent or received by Defendants in the course of conducting government business since the date each agency-head Defendant took their respective offices, and (4) order Defendants, including Acting Archivist Rubio, to comply with the initiation and notification requirements outlined in 44 U.S.C. § 3106, pending further proceedings.

Dated: April 22, 2025

Respectfully submitted,

*/s/ Benjamin A. Sparks*
Benjamin A. Sparks
D.C. Bar No. 90020649
Ronald A. Fein
D.C. Bar No. 90026641
Katherine M. Anthony
D.C. Bar No. 1630524

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 873-1741
ben.sparks@americanoversight.org
ron.fein@americanoversight.org
katherine.anthony@americanoversight.org
*Counsel for Plaintiff*

32