IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, | ) |
|                    *Plaintiff*, | ) |
| v. | ) Case No. 1:25-cv-00883-JEB |
| PETE HEGSETH, in his official capacity as Secretary of Defense, | ) |
| TULSI GABBARD, in her official capacity as Director of National Intelligence, | ) |
| JOHN L. RATCLIFFE, in his official capacity as Director of the Central Intelligence Agency, | ) |
| SCOTT BESSENT, in his official capacity as Secretary of the Treasury | ) |
| MARCO A. RUBIO, in his official capacities as Secretary of State and Acting Archivist of the United States, | ) |
| and | ) |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) |
|                    *Defendants.* | ) |

**SECOND DECLARATION OF BENJAMIN A. SPARKS**

I, BENJAMIN A. SPARKS, hereby declare as follows:

1.  I am Senior Counsel at American Oversight and counsel of record for American Oversight in the above-captioned action. I make this declaration based on my personal knowledge, through consultation with my colleagues at American Oversight, and through a review of American Oversight's business records created in the ordinary course of its regular operations.

2. American Oversight is a non-partisan, nonprofit organization primarily engaged in disseminating information to the public and committed to ensuring transparency in government and promoting accountability for government officials.

3. Through research and requests made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, American Oversight uses the information it gathers, and corresponding analyses, to educate the public about the activities and operations of the federal government through analytical reports, press releases and other media.

4. American Oversight analyzes the records it receives and creates explanatory and editorial content to convey its findings directly to the public and through media outlets to disseminate those findings as widely as possible. American Oversight also typically posts records it receives from public records requests on its website for free, public viewing. American Oversight disseminates the information it receives in order to facilitate the informed participation of the American public in self-government, including by ensuring the public has the information it needs to effectively petition its representatives in Congress.

5. American Oversight's ability to request public records is crucial to its mission of ensuring transparency into government actions, promoting accountability for government officials, and disseminating information about government activities to the public. In kind, the federal government's preservation of records and enforcement of preservation rules in compliance with the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101 et seq., are foundational to American Oversight's ability to fulfill its mission in obtaining and disseminating government records.

6. In the regular course of its work and in furtherance of its core mission and function, American Oversight has submitted FOIA requests to Defendants' respective agencies and will continue to seek records from such agencies in the future.

7. Plaintiff American Oversight has submitted numerous FOIA requests to Defendants' agencies, including several requests in 2025 that seek Signal messages involving Defendants.

8. American Oversight has requested communications from the Department of Defense ("DoD"), Department of State ("State"), the Department of the Treasury ("Treasury"), the Office of the Director of National Intelligence ("ODNI"), and the Central Intelligence Agency ("CIA") through FOIA, including Signal messages, and it will continue to do so in the future.

9. On January 28, 2025, American Oversight submitted a FOIA request to DoD (bearing American Oversight internal tracking number DOD-25-0183) seeking all records reflecting communications, expressly including Signal messages, between DoD officials, including Pete Hegseth, and anyone in the White House Office, containing one or more specified key terms, from January 20, 2025, through January 27, 2025. On January 28, 2025, DoD acknowledged the request and assigned it tracking number 25-F-2084. American Oversight's request remains pending.

10. On March 25, 2025, American Oversight submitted a FOIA request to DoD (bearing American Oversight internal tracking number DOD-25-0757) seeking all Signal messages sent by Defendant Hegseth since January 20, 2025 and requested expedited processing. On March 25, 2025, DoD acknowledged receipt of American Oversight's request, and assigned it tracking number 25-F-2611. The FOIA request remains pending.

11. On January 27, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0190) seeking all records reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and anyone in the White House Office, containing one or more of several

3

key terms, such as "fire," from January 20, 2025, through January 27, 2025. On January 29, 2025, State updated the status of the request to "Received" and noted the tracking number #F-2025-09050. American Oversight's request remains pending.

12. On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0277) seeking all communications, expressly including Signal messages, between State officials, including Marco Rubio, containing one or more specified key terms, such as "eliminat*," from January 20, 2025, through the date that the search is conducted. On March 3, 2025, State updated the status of the request to "In Process" and noted the tracking number, #F-2025-09350. State denied American Oversight's request for a fee waiver, and American Oversight advised that it plans to appeal the adverse determination. As of April 2, 2025, the request has been closed.

13. On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0279) seeking all records reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and anyone in the White House Office from January 20, 2025, through the date that the search is conducted. On March 12, 2025, State updated the status of the request to "On Hold – Need Info/Clarification" and noted the tracking number, #F-2025-09352. American Oversight's request remains pending.

14. On February 4, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0281) seeking all records reflecting communications, expressly including Signal messages, between State officials, including Marco Rubio, and one or more specified members of Congress from January 20, 2025, through the date that the search is conducted. On March 3, 2025, State updated the status of the

request to "In Process" and noted the tracking number, #F-2025-09346. State denied American Oversight's request for a fee waiver, and American Oversight advised that it plans to appeal the adverse determination. As of April 2, 2025, the request has been closed.

15.     On March 18, 2025, American Oversight submitted a FOIA request to State (bearing American Oversight internal tracking number STATE-25-0691) seeking email communications, sent by State officials, including Marco Rubio, and containing one or more specified key terms from February 5, 2025, through the date that the search is conducted. On April 7, State acknowledged receipt of the request, and assigned it tracking number F-2025-12177. State denied American Oversight's request for a fee waiver, and American Oversight advised that it plans to appeal the adverse determination but will agree to pay the fee in the event the appeal is unsuccessful. American Oversight's request remains pending.

16.     On March 25, 2025, American Oversight submitted an expedited FOIA request to State (bearing American Oversight internal tracking number STATE-25-0756) seeking all Signal messages sent by Defendant Rubio since January 20, 2025. On March 25, 2025, State acknowledged receipt of the request and assigned it tracking number F-2025-13294. On April 1, 2025, State denied American Oversight's request for expedited processing. The FOIA request remains pending.

17.     On January 30, 2025, American Oversight submitted a FOIA request to Treasury (bearing American Oversight internal tracking number TREAS-25-0225) seeking all records reflecting communications, expressly including Signal messages, between Treasury officials, including the Acting Secretary at the time, and anyone communicating on behalf of the Department of Government Efficiency ("DOGE") from January 20, 2025, through the date that the search is

conducted. On February 13, 2025, Treasury acknowledged receipt of the request and assigned it tracking number 2025-FOIA-01357. American Oversight's request remains pending.

18. On February 28, 2025, American Oversight submitted a FOIA request to Treasury (bearing American Oversight internal tracking number TREAS-25-0537) seeking communications, expressly including Signal messages, sent by Treasury officials, including Scott Bessent, and containing one or more specified key terms from January 20, 2025, through the date that the search is conducted. On February 28, 2025, Treasury acknowledged receipt of the request. American Oversight's request remains pending.

19. On March 25, 2025, American Oversight submitted an expedited FOIA request to Treasury (bearing American Oversight internal tracking number TREAS-25-0754) seeking all Signal messages sent by Defendant Bessent since January 20, 2025. On March 25, 2025, Treasury acknowledged receipt of American Oversight's request. The FOIA request remains pending.

20. On March 25, 2025, American Oversight submitted an expedited FOIA request to ODNI (bearing American Oversight internal tracking number ODNI-25-0755) seeking all Signal messages sent by Defendant Gabbard since January 20, 2025. On March 26, 2025, ODNI acknowledged receipt of American Oversight's request. On April 4, 2025, ODNI noted the tracking number, #DF-2025-00328. The FOIA request remains pending.

21. On March 25, 2025, American Oversight submitted an expedited FOIA request to CIA (bearing American Oversight internal tracking number CIA-25-0758) seeking all Signal messages sent by Defendant Ratcliffe since January 20, 2025. The FOIA request remains pending.

22. On March 24, 2025, *The Atlantic* reported that multiple heads of executive agencies, purportedly including individual Defendants in the above-captioned action, used the

Signal messaging application from March 11, 2025, through March 15, 2025, to discuss and coordinate imminent U.S. military strikes in Yemen ("Houthi PC Small Group Chat").[1]

23.  On March 26, 2025, *The Atlantic* published screenshots[2] of the Houthi PC Small Group Chat, including images showing that some messages were set to disappear within one week of when they were sent,[3] and including images indicating that some messages were set to disappear after four weeks. For example, screen shots from the Houthi PC Small Group Chat published by *The Atlantic* show the following:

> Disappearing message time was set to 1 week.
>
> . . . .
>
> **Houthi PC small group**
> Add group description...
>
> video    mute    search
>
> Disappearing Messages    1w >
>
> . . . .

---

[1] *See* Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic (Mar. 24, 2025, 12:06 PM ET), https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/ (the "*Atlantic* Article").

[2] *See* Jeffrey Goldberg & Shane Harris, *Here Are the Attack Plans That Trump's Advisers Shared on Signal*, The Atlantic (Mar. 26, 8:19 AM), https://www.theatlantic.com/politics/archive/2025/03/signal-group-chat-attack-plans-hegseth-goldberg/682176/?gift=kPTlqn0J1iP9IBZcsdI5IWzhvFf3q4jecuzTA5cASGg&utm_source=copy-link&utm_medium=social&utm_campaign=share (screenshots excerpted and reproduced from the article).

[3] Signal, *Set and manage disappearing messages*, https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages (last visited Mar. 26, 2025) ("[e]ach and every disappearing message will have a timer countdown icon that is visible at the bottom of the message bubble.").



24.     According to screenshots published by *The Atlantic*, at some point during the Houthi PC Small Group Chat, Michael Waltz set the disappearing message time to four weeks,[4] as shown by the screenshots reproduced below:

---

[4] *See* Goldberg & Harris, *supra* n.2.



25.     American Oversight's ability to fulfill its mission of disseminating government records to the public is irreparably harmed if such records are solely contained on ephemeral messaging platforms set to auto-delete before being preserved in accordance with the FRA and agency regulations.

26. On March 26, 2025, American Oversight sought a temporary restraining order "directing Defendants . . . in their official capacities as heads of their respective agencies, to immediately desist from unlawfully destroying federal records in violation of the [FRA]. . . ."[5]

27. On March 27, 2025, this Court ordered Defendants to "preserve all Signal communications from March 11-15, 2025" and file a Status Report with supporting declarations describing the steps taken to implement such preservation.[6]

28. In sworn statements filed in this case on March 27, March 31, and April 14, 2025, none of the representatives of Defendants' respective agencies confirmed that all messages from the Houthi PC Small Group Chat had been or could be preserved.[7]

29. On April 2, 2025, *Politico* reported that National Security Advisor Mike Waltz's team set up "at least 20 Signal group chats," in addition to the Houthi PC Small Group Chat, to discuss government business related to issues spanning Ukraine, China, Gaza, the Middle East, Africa, and Europe.[8]

30. On April 20, 2025, *The New York Times* reported that, before he was confirmed as the U.S. Secretary of Defense, Defendant Pete Hegseth created a Signal chat titled "Defense | Team Huddle," that he used to communicate with family members, his personal lawyer, and other aides

---

[5] Pl.'s Mot. TRO at 1–2, ECF No. 6.
[6] Min. Order (Mar. 27, 2025).
[7] *See* Am. Compl. ¶ 66, ECF No. 17; Pilkerton Decl. ¶ 4, ECF No. 8-1; Dziechichowicz Decl. ¶ 2, ECF No. 8-2; Bennett Decl. ¶ 2, ECF No. 10-1; Suppl. Bennett Decl. ¶ 2, ECF No. 15-1; Koch Decl. ¶ 4, ECF No. 10-2; Newton Decl. ¶ 4, ECF No. 15-2; Blankenship Decl. ¶ 3, ECF No. 10-3; Suppl. Blankenship Decl. ¶ 4, ECF No. 15-3; Rogoff Decl. ¶¶ 5–6, ECF No. 10-4; Kootz Decl. ¶¶ 3–4, ECF No. 15-4.
[8] Dasha Burns, *Waltz's Team Set Up at Least 20 Signal Group Chats for Crises Across the World*, Politico (Apr. 2, 2025, 3:50PM ET), https://www.politico.com/news/2025/04/02/waltzs-team-set-up-at-least-20-signal-group-chats-for-crises-across-the-world-00266845.

and advisors about a range of government business, including forthcoming military strikes in Yemen ("DTH Chat").[9]

31. In response to developments since American Oversight filed its original Complaint, ECF No. 1, American Oversight filed its Amended Complaint, ECF No. 17, on April 21, 2025.

32. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 22, 2025

Benjamin A. Sparks

---

[9] Greg Jaffe, Eric Schmitt & Maggie Haberman, *Hegseth Said to Have Shared Attack Details in Second Signal Chat*, N.Y. Times (Apr. 20, 2025, 5:28PM ET), https://www.nytimes.com/2025/04/20/us/politics/hegseth-yemen-attack-second-signal-chat.html?partner=slack&smid=sl-share.