IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, | ) |
|   *Plaintiff*, | ) |
| v. | ) Civil Action No. 25-cv-883-JEB |
| PETE HEGSETH, in his official capacity as Secretary of Defense et al., | ) |
|   *Defendants*. | ) |

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL DECLARATIONS

The Court should not entertain Plaintiff's suggestion in its response that the Court "find that Defendant Ratcliffe failed to comply" with the Court's March 27 order. ECF No. 16 at 6. Plaintiff's response seeks to stir public controversy without basis in fact or law. Contrary to Plaintiff's unsupported allegations of wrongdoing, the record demonstrates the Defendants' diligent and good-faith efforts to comply with the Court's order. Plaintiff's argument is unavailing for several reasons.

First, the record demonstrates that the Defendants—including CIA Director Ratcliffe—fully complied with the Court's order and preserved records as directed. *See* Mar. 27, 2025 Minute Order. As set forth in the Defendants' declarations, information regarding the Signal group chat was preserved by Defendants as it existed on the participants' devices. The CIA in particular submitted not one, but two, declarations setting forth the steps it has taken to preserve the Signal group chat that is the subject of this case. Those declarations demonstrate that the Director fully complied with the Court's order.

1

After the hearing on Plaintiff's Motion for a Temporary Restraining Order, the Court entered the following Minute Order at 4:47 pm on Thursday, March 27:

> As agreed by the parties in today's TRO hearing, the Court ORDERS that: 1) Defendants shall promptly make best efforts to preserve all Signal communications from March 11-15, 2025; 2) By March 31, 2025, Defendants shall file a Status Report with declarations setting forth the steps that they have taken to implement such preservation; and 3) This Order shall expire on April 10, 2025, in the event that Defendants' measures are satisfactory to the Court.

Through the course of two declarations, the CIA has more than adequately set forth the steps the agency has taken to "promptly make best efforts to preserve" the Signal group chat at issue.  In its first declaration, filed on March 31 in compliance with the Court's March 27 order, the CIA declarant explained that the Agency ascertained that "Director Ratcliffe maintains a personal account on the commercial messaging application known as Signal, through which he was invited to participate in 'the Signal chat' referenced in the plaintiff's complaint."  The declarant then stated that "I further understand that residual administrative content from 'the Signal chat' was retrievable from that account, and that that content has since been transferred to Agency systems."  Finally, the declarant stated that CIA's Office of General Counsel issued a litigation hold on March 27, "which directed relevant offices and officers to preserve documents and information pertaining to this matter."  ECF No. 10-3 ¶¶ 3-4.

The Court held a second hearing, on April 10, to address Plaintiff's various complaints about the Defendant agencies' declarations.  Defendants agreed to file supplemental declarations providing a few additional facts noted by the Court during the hearing—"a pretty minimal lift," in the Court's words.  April 10 hearing transcript at 15.  *See also* April 10, 2025 Minute Order (ordering Defendants, by April 14, to "provide supplemental declarations addressing the specific clarifications noted by the Court.").  All the CIA was required to answer was when its search

2

occurred and to clarify the term "residual administrative content."  April 10 hearing transcript at 14.

The CIA answered those questions in its second declaration, filed on April 14, again in compliance with the Court's order.  ECF No. 15-3.  The declarant first explained that "the Director's personal Signal account was reviewed and a screenshot of the Signal Chat at issue was captured from the Director's account on 31 March 2025, and transferred to Agency records systems the same day."  He reiterated that "I understand that the screenshot reflects the information available at the time the screenshot was captured, which I characterized as 'residual administrative content' in my initial declaration."  Then he explained what that term meant:  "I used that terminology because the screenshot does not include substantive messages from the Signal chat; rather, it captures the name of the chat, 'Houthi PC small group,' and reflects administrative notifications from 26 March and 28 March relating to changes in participants' administrative settings in this group chat, such as profile names and message settings."  *Id.* ¶ 4.

Despite the clear answers the CIA provided in its declarations, Plaintiff remains unsatisfied.  Plaintiff argues that Director Ratcliffe's efforts to preserve the Signal group chat were not "prompt," contrary to the Court's March 27 order, because, in Plaintiff's telling, the CIA's second declaration shows that the CIA delayed all preservation efforts until March 31, the reporting deadline.  ECF No. 16 at 2-3.  But the CIA's declarations show no such thing.  Plaintiff *assumes* that no steps to implement the Court's order were taken before March 31, the day the screenshot was captured and transferred to an agency record system, but the declarations show that a litigation hold was issued on March 27.  It also stands to reason that before reviewing the Director's personal Signal account and capturing the screenshot, preliminary steps were taken to make those things happen, such as reaching out to staff in the Director's office and arranging for

3

the review and capture to take place, even if those kinds of preliminary steps are not detailed in the declarations. And it bears emphasis that March 31 was only the second business day after the Court entered its March 27 order, at the end of the day. Plaintiff's complaint that a screenshot should have been captured from the device of the Director of the CIA on the first instead of second business day following the Court's order ignores that the Director, like other Defendants, is one of the government's most senior national security officials with a busy schedule.

The information provided in the CIA's declarations satisfied the Court's order, which did not set a deadline for compliance. Instead, it required Defendants to "promptly make best efforts." Plaintiff reads this to mean the first business day after the Court's order but not the second business day. It supports that conclusion with just one source of legal authority: the *Black's Law Dictionary* definition for "promptly." But even that definition includes "as soon as practicable." ECF No. 16 at 3. Moreover, Plaintiff cherry picks, ignoring the same authority's definition of "best efforts." Plaintiff's authority states that "[b]est efforts are measured by the measures that a reasonable person in the same circumstances and of the same nature as the acting party would take." Best Efforts, *Black's Law Dictionary* (12th ed. 2024). The phrase "gives the decision-maker a good deal of latitude." *Id.* (quoting (Bryan A. Garner, Garner's Dictionary of Legal Usage 108 (3d ed. 2011)). It is a "fuzzy," "vague phrase[], and purposely so." *Id.* The CIA and Director's compliance is necessarily assessed against the backdrop of the enormous responsibilities placed on the Director by the President and Congress. *See* 50 U.S.C. § 3036. The actions taken on the second business day following the Court's order satisfied that standard.

Second, Plaintiff's argument suffers from another flaw, a lack of harm. Plaintiff's specific concern is that "Signal communications may have been lost." ECF No. 16 at 2. But in a declaration that Plaintiff does not challenge and indeed holds up as the prototype, *see* April 10

hearing transcript at 5-6, the Treasury Department attested that it captured all existing substantive messages from the group chat as of March 27—even before the Court entered its order. That content has undisputedly been preserved on agency record keeping systems. And, of course, a version of the chat was also published by *The Atlantic* and is available on the internet. Plaintiff has even cited the publicly available screenshots. ECF No. 6-2 at ¶ 8 n.2. Plaintiff's concern about the difference in the captures from Director Ratcliffe and other Defendants' accounts defies common sense.

      Plaintiff takes its argument a step further by mischaracterizing the CIA's explanation of the "residual administrative content" as somehow unearthing nefarious activity by the CIA Director or other chat participants. As the CIA explained, the residual administrative content "reflects administrative notifications from 26 March and 28 March relating to changes in participants' administrative settings in this group chat, such as profile names and message settings." From this explanation, Plaintiff speculates that individuals "tampered with" the Signal chat's settings after the Court's preservation order was in place, that Director Ratcliffe himself "witnessed spoliation of evidence," and that messages were lost. ECF No. 16 at 4-5. Plaintiff offers no basis for concluding that a change in profile names or message settings amounts to any of that, nor do the CIA's declaration and the broader record provide a basis for such a conclusion. The CIA's declaration points out only that Director Ratcliffe—like other chat participants—received administrative notifications about changes to various settings made by participants, and that these notifications were preserved. Indeed, Plaintiff, itself, suggests that such settings changes were made by someone *other than* Defendant Ratcliffe. ECF No. 16 at 5.

      Finally, Plaintiff not only mischaracterizes the facts in alleging that the CIA Director failed to comply with the Court's order, but Plaintiff also identifies no legal authority to support such a

5

finding.  Plaintiff never explains what standard the Court should apply to make a "find[ing]" of non-compliance.  Plaintiff proposes this "find[ing]" of non-compliance as an apparently standardless end-run around the well-developed rules for enforcing court orders, none of which apply to the facts here.  For instance, an allegation of failure to comply with a Court order generally requires proof "by 'clear and convincing' evidence." *Armstrong v. Exec. Off. of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993).  In the absence of such a showing by Plaintiff, the Court would not have grounds to issue further relief as Plaintiff requests.  *See, e.g.*, *Carlisle v. United States*, 517 U.S. 416, 426 (1996) (courts' inherent powers "do[] not include the power to develop rules that circumvent or conflict with" existing rules and requirements for finding a failure to comply with a court order).  There is simply no basis in the record to make a finding, under any standard, that the CIA Director failed to comply with the Court's order, and no legal basis to grant such novel relief.

Plaintiff continues to nit-pick at the other Defendants' supplemental declarations, but does not seek any relief from the Court with respect to those declarations, so Defendants will not address those complaints here.

Dated: April 23, 2025                Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General, Civil Division

MARCIA BERMAN
Assistant Branch Director
Federal Programs Branch

 /s/ Amber Richer
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov
*Attorneys for Defendant*