**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-cv-883-JEB |
| | ) | |
| PETE HEGSETH, in his official capacity as Secretary of Defense et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 1

I.      LEGAL BACKGROUND ......................................................................................... 1

        A.      The Federal Records Act ............................................................................. 1

        B.      Agency Records Management Policies on Electronic Messaging .......................... 4

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 6

LEGAL STANDARD ...................................................................................................... 11

ARGUMENT ................................................................................................................... 12

I.      PLAINTIFF FAILS TO DEMONSTRATE THAT IT WILL SUFFER IRREPARABLE
        HARM ABSENT A PRELIMINARY INJUNCTION ...................................................... 12

II.     PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS ......... 14

        A.      Plaintiff Fails to Identify a Single Deficiency in Any of the Agency
                Defendants' Written Policies Implementing the FRA ............................................ 15

        B.      Plaintiff Fails to Demonstrate a Cognizable Policy or Practice Claim ................. 17

        C.      Plaintiff Is Unlikely to Succeed on Its Claims for Enforcement Action Under
                Section 3106 ..................................................................................................... 20

III.    THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST DO NOT FAVOR A
        PRELIMINARY INJUNCTION .................................................................................. 21

IV.     ANY PRELIMINARY INJUNCTION SHOULD REQUIRE SECURITY ................... 22

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**CASES**

*ACLU Found. of Fla. v. U.S. Immig. & Customs Enf't*,
No. 22-cv-1129, 2023 WL 6461053 (D.D.C. Aug. 31, 2023) ........................................... 20, 21

*Armstrong v. Bush*,
924 F.2d 282 (D.C. Cir. 1991) .......................................................................... *passim*

*Caudle v. D.C.*,
825 F. Supp. 2d 73 (D.D.C. 2011) ............................................................................. 14

*Cause of Action Inst. v. Pompeo*,
319 F. Supp. 3d 230 (D.D.C. 2018) ..................................................................... 20, 21

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ................................................................................. 12

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Pruitt*,
319 F. Supp. 3d 252 (D.D.C. 2018) .................................................................. 4, 17, 19, 20

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) .................................................................................................. 14

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995) ................................................................................... 12

*Cobell v. Norton*,
391 F.3d 251 (D.C. Cir. 2004) ................................................................................. 11

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi Ltd.*,
15 F. Supp. 2d 1 (D.D.C. 1997) ............................................................................... 12

*Competitive Enter. Inst. ("CEI") v. EPA*,
67 F. Supp. 3d 23 (D.D.C. 2014) ..................................................................... 19, 20, 22

*CREW v. Dep't of Homeland Sec.*,
507 F. Supp. 3d 228 (D.D.C. 2020) ............................................................................ 4

*CREW v. DHS*,
387 F. Supp. 3d 33 (D.D.C. 2019),
*amended*, 2019 WL 11307644 (D.D.C. July 22, 2019) ................................................. 15

*CREW v. Pompeo*,
No. 19-cv-3324 (JEB), 2020 WL 1667638 (D.D.C. Apr. 3, 2020) ................................. *passim*

*Democracy Forward Found. v. Pompeo*,
    474 F. Supp. 3d 138 (D.D.C. 2020) ..................................................................... 19

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999) ............................................................................... 22

*Elec. Priv. Info. Ctr. v. Dep't of Justice*,
    15 F. Supp. 3d 32 (D.D.C. 2014) ......................................................................... 12

*Jud. Watch, Inc. v. Kerry*,
    844 F.3d 952 (D.C. Cir. 2016) ............................................................................. 15

*Judicial Watch, Inc. v. FBI*,
    No. 18-cv-2316, 2019 WL 4194501 (D.D.C. Sept. 4, 2019)............................ 15, 16

*Judicial Watch, Inc. v. Pompeo*,
    744 F. App'x 3 (D.C. Cir. 2018)...................................................................... 20, 21

*Kissinger v. Reps. Comm. for Freedom of the Press*,
    445 U.S. 136 (1980)............................................................................................ 3, 15

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ............................................................................. 13, 16

*Meta Platforms, Inc. v. Fed. Trade Comm'n*,
    2024 WL 1121424 (D.D.C. Mar. 15, 2024)........................................................... 13

*Metro. Council of NAACP Branches v. FCC*,
    46 F.3d 1154 (D.C. Cir. 1995) ............................................................................. 19

*Navajo Nation v. Azar*,
    292 F. Supp. 3d 508 (D.D.C. 2018) ..................................................................... 13

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................... 12, 21, 22

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004)................................................................................................. 14

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
    48 F. Supp. 3d 87 (D.D.C. 2014) ......................................................................... 12

*Sampson v. Murray*,
    415 U.S. 61 (1974)................................................................................................. 12

*Scudder v. CIA*,
    281 F. Supp. 3d 124 (D.D.C. 2017) ..................................................................... 18

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021) .......................................................................... 12, 16, 18

*United States v. Philip Morris USA Inc.*,
  566 F.3d 1095 (D.C. Cir. 2009) ............................................................................ 14

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................................. 11


**STATUTES**

5 U.S.C. § 706 .............................................................................................................. 14, 15

44 U.S.C. § 2911 ................................................................................................................... 6

44 U.S.C. § 3106 ............................................................................................................... 3, 20

44 U.S.C. § 3301 ................................................................................................................... 2


**RULES**

Fed. R. of Civ. P. 65(c) ..................................................................................................... 22

## INTRODUCTION

Plaintiff American Oversight brings claims under the Administrative Procedure Act (APA) against the heads of the Department of Defense (DoD), Department of State, Department of the Treasury, Office of the Director of National Intelligence (ODNI), and the Central Intelligence Agency (CIA), as well as the National Archives and Records Administration (NARA) and the Acting Archivist, alleging violations of the Federal Records Act (FRA), the statutory scheme governing the creation, management, and disposal of records by federal agencies. In the instant motion, Plaintiff seeks a preliminary injunction but cannot satisfy the familiar demanding standards for extraordinary emergency relief.

In sum, Plaintiff cannot demonstrate a likelihood of irreparable harm in light of the agency Defendants' preservation of the Houthi PC Small Group Chat (also called the Signal group chat) that is the focus of this litigation, and other steps they have taken to preserve Signal messages. Nor can Plaintiff show a likelihood of success on the merits. Plaintiff fails to point to any particular deficiencies in any of the Defendants' written policies implementing the FRA. Nor has Plaintiff adequately alleged that Defendants have a "policy or practice" in violation of the FRA, relying instead on alleged instances of noncompliance, which are not subject to judicial review, and inadmissible hearsay media reports. Plaintiff also fails to show that Defendants have unlawfully withheld any initiation or referral obligation under the FRA. The remaining factors regarding the balance of equities also disfavor granting Plaintiff's motion for preliminary injunction.

## BACKGROUND

### I.    Legal Background

#### A.    The Federal Records Act

The Federal Records Act (FRA) governs records that are "made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved

or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]" 44 U.S.C. § 3301(a)(1)(A). Under the FRA regime, agencies must "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *Id.* § 3101. In this endeavor, agencies are subject to the overarching authority of the National Archives and Records Administration (NARA), which is responsible for providing guidance and assistance to agencies in carrying out their recordkeeping obligations and, in limited circumstances, conducting inspections of an agency's records or records management practices. *Id.* §§ 2904, 2906. The Archivist of the United States has the ultimate authority to determine whether "recorded information" constitutes a "record" under the FRA and to authorize agencies to dispose of records. *Id.* § 3301(b); *see id.* §§ 2904, 3303.

Pursuant to the FRA, "records" are defined to include, with limited exceptions, "all recorded information, . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them." *Id.* § 3301(a)(1)(A).

The FRA is based upon a "system of administrative enforcement." *Armstrong v. Bush*, 924 F.2d 282, 294 (D.C. Cir. 1991). Under this system, "the agency head and Archivist may proceed first by invoking the agency's 'safeguards against the removal or loss of records,' and taking . . .

intra-agency actions" to prevent the potential loss or removal of records. *Id.* at 296 n.12 (quoting 44 U.S.C. § 3105). If those efforts are unsuccessful, "the agency head, in the first instance, and then the Archivist [must] request that the Attorney General initiate an action to prevent the destruction of documents[.]" *Id.* at 294; *see* 44 U.S.C. § 3106. While the statute requires an agency to notify the Archivist "of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency," it only requires the agency to seek the assistance of the Attorney General for "the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully *removed* from that agency[.]" 44 U.S.C. § 3106(a) (emphasis added).

The FRA requires heads of federal agencies to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." *Id.* § 3101. But even where a Government officer "has violated" the FRA, the Supreme Court has explained that "Congress has not vested federal courts with jurisdiction to adjudicate that question upon suit by a private party. That responsibility is vested in the administrative authorities." *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 149–50 (1980). The Supreme Court held in *Kissinger* that the FRA does not create any private enforceable rights, given that the statute was intended "not to benefit private parties, but solely to benefit the agencies themselves and the Federal Government as a whole." *Id.* at 149.

Applying that teaching, the Court of Appeals assessed three types of agency actions under the FRA: "(1) agency employees' 'destroying records in contravention of the . . . recordkeeping guidelines and directives'; (2) the agency's failure to employ adequate recordkeeping guidelines and directives; and (3) the agency head's or [Archivist of the United States]'s refusal to seek the initiation of an enforcement action by the Attorney General" under 44 U.S.C. § 3106. *Armstrong,*

924 F.2d at 294-95; *see also Citizens for Resp. & Ethics in Wash. ("CREW") v. Pruitt*, 319 F.

Supp. 3d 252, 257 (D.D.C. 2018) (Boasberg, J.) (quoting *Armstrong*, 924 F.2d at 291, 294–95).

Agency actions of the first type are "not reviewable," whereas those of the second and third types

may proceed under the APA. *See id.* Hence, "courts may not entertain private suits alleging that

agencies have improperly destroyed or removed records, but they may consider ones challenging

whether agency guidelines that permit destruction of certain records are adequate under the FRA

and ones alleging that the agency head or Archivist improperly refused to seek initiation of an

enforcement action by the Attorney General." *Id.* at 258. Courts thus recognize that while the FRA

"does contain several specific requirements," it "understandably leaves the details of records

management to the discretion of individual agency heads[.]" *Armstrong*, 924 F.2d at 293; *see also*

*CREW v. Dep't of Homeland Sec.*, 507 F. Supp. 3d 228, 245 (D.D.C. 2020).

### B.    Agency Records Management Policies on Electronic Messaging

As relevant here, the agency Defendants each have adopted written records management

policies for implementing the FRA with respect to electronic messaging applications such as

Signal.

The Foreign Affairs Manual (FAM), which sets forth State Department policies for

Department staff, provides that: "All Department personnel are generally prohibited from

conducting official Department business on any electronic messaging (eMessaging) application

that does not allow communications to be archived by, for example, use of an 'export' feature for

messages or chains of messages or copying and pasting text onto a state.gov email." 5 FAM 435(a),

*available at* https://fam.state.gov/fam/05fam/05fam0430.html (last accessed May 7, 2025),

Exhibit 1. The Manual further provides, however, in relevant part:

Regardless of the circumstances, when non-Government eMessaging applications and platforms are used to conduct Department business, each individual Department user included in the group message must capture the records on official Department systems as follows:

(1)  Records must be copied or forwarded from the non-Government application or platform to the individual's own state.gov account at the time of transmission or within 20 calendar days of creation or receipt;

(2)  After successfully forwarding or copying, delete the message from the non-government messaging application when no longer needed for continuity or reference; and/or

(3)  For platform-specific directions, use the following guidance document:  Records Management Guidance for eMessaging.

*Id.* at 5 FAM 435(d).

The Department of Defense similarly instructs:

Non-official electronic messaging accounts, with very few exceptions, must not be used to conduct official DoD communications in accordance with DoDI 8550.01 (Reference (m)). If a DoD employee uses a non-official electronic messaging account, the employee must copy the message to his or her official electronic messaging account when the record is first transmitted, or must forward a complete copy of the record to their official electronic messaging account within 20 days of the record's original creation or transmission pursuant to Reference (d).

Department of Defense Instruction No. 5015.02 (Feb. 24, 2015), DoD Records Management Program, at 3 § 2.n, *available at* https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/501502p.pdf?ver=2019-01-24-111201-200  (last accessed May 7, 2025) (attached as Exhibit 2).

The Treasury Department's Text and Instant Messaging Records Policy similarly provides that:

In general, Treasury staff may not use encrypted applications like 'WhatsApp' or 'Signal' to conduct Treasury-related business. In the event that Treasury staff are in a situation or location where they must use encrypted application to protect Treasury records from risk of unauthorized disclosure, such as during official travel overseas, staff may request temporary use of encrypted applications from the Office of the Chief Information Officer. To prevent the misuse of encrypted applications,

they may only be used for an approved, limited period of time in which there is a high risk of unauthorized disclosure.

Staff who use encrypted applications for Treasury business are required to forward any Treasury-related messages to non-encrypted Treasury messaging systems within twenty days. This ensures Treasury records are captured, accessible, and maintained under approved records schedules.

Decl. of Christopher Pilkerton, Exhibit 4, Attachment A (Treasury Directive Publication 80-05,

Records Management, Appendix (May 22, 2019), at 24 § 3.4 Encrypted Applications).

Similarly, ODNI's Records Management Program provides in relevant part as follows:

Unofficial or personal electronic messaging accounts are not to be used to conduct official ODNI business. If circumstances require business be conducted on a personal device, the records must be copied to the official government account when the record is first transmitted or a complete copy of the record must be sent to the official government account within 20 days of the original record's creation or transmission, pursuant to the Federal Records Act (44 U.S.C. Sec. 2911).

Decl. of Robert A. Newton, Exhibit 5, Attachment A at 5 (Office of the Director of National

Intelligence, Instruction 80.10, Records Management Program section 6.H.).

And CIA's policy states that: "[i]f a non-official or personal account is used under an

exceptional circumstance to conduct Agency business, that record shall be preserved[,]" as by

transferring a copy to "an approved Agency recordkeeping system." Decl. of Mary C. Williams,

Exhibit 6, Attachment A at 4-5 (Agency Regulation 10-8).

## II.    **Factual and Procedural Background**

On March 25, 2025, Plaintiff American Oversight sued the Secretary of Defense, the

Director of National Intelligence, the Director of the CIA, the Secretary of the Treasury, and the

Secretary of State and Acting Archivist, all in their official capacities, as well as the National

Archives and Records Administration ("NARA"). As the opening paragraph of the complaint

summarized, it alleged that Defendants "failed to meet their obligations under the Federal Records

Act regarding messages from a group-chat discussion of planned and active military operations

from March 11, 2025, through March 15, 2025, on the messaging application Signal, which can be set to automatically delete messages." Compl. ¶ 1, ECF No. 1. The day before, The Atlantic published a story about senior administration officials' use of the Signal messaging application "to discuss and coordinate imminent U.S. military strikes in Yemen ('the Signal chat')." Compl. ¶ 28 & n.1. Plaintiff alleged, based on that article, that at least one participant in the Signal chat enabled the delete function, and thus, "upon information and belief," that one or more messages in the Signal chat have been deleted. *Id.* ¶¶ 36, 40. Again "upon information and belief," Plaintiff alleged that Defendants, in their capacities as agency heads, "have not taken steps to preserve messages sent or received in the Signal chat or to recover any that have been lost or deleted." *Id.* ¶ 63. There were no other factual allegations about the deletion of records.

On March 26, Plaintiff filed a Motion for a Temporary Restraining Order (TRO), seeking, among other things, an order requiring that Defendants "take steps to ensure the preservation of any federal records that were created between March 11 and March 15, 2025, regarding and including any messages that are or were contained in 'the Signal chat,' as referenced in the Complaint." ECF No. 6 at 2. In that motion, Plaintiff acknowledged that a version of the chat was published in The Atlantic by citing publicly available screenshots of the chat. Decl. of Benjamin A. Sparks ¶ 8 n.2, ECF No. 6-2. And in response to Plaintiff's motion, Defendants submitted two declarations establishing that Defendants were already taking steps to locate and preserve the Signal chat, and that the Treasury Department had located, preserved, and copied into a federal recordkeeping system a partial version of the Signal chat. The Treasury declaration also described instructions that were given to the Secretary and his Chief of Staff about preserving all existing communications about Treasury business on an electronic messaging application, including

Signal, messages created in the future, and messages on personal devices. Decl. of Christopher Pilkerton, ECF No. 8-1; Decl. of Gerald J. Dziecichowicz, ECF No. 8-2.

After a hearing on the motion at which defense counsel confirmed that Defendants were working to preserve whatever records of the Signal chat they have, the Court ordered Defendants to "promptly make best efforts to preserve all Signal communications from March 11-15, 2025,"— that is, the group chat on which Plaintiff's complaint was based—and to file a status report by March 31 with declarations "setting forth the steps that they have taken to implement such preservation[.]" Minute Order (Mar. 27, 2025).

Defendants filed the required status report and declarations on March 31.   Those declarations, along with the previous declaration from the Treasury Department, set forth the steps that Defendants had taken to preserve all existing messages from the Signal group chat. ECF No. 10. There was no obligation to describe the content of any such messages or how much of the Signal group chat the agencies were able to find, and Defendants did not do so. *See* Transcript of Hearing on Motion for TRO at 4:13-16, No. 25-cv-883 (Mar. 27, 2025) (the Court: "the plaintiff here is not asking me to require the government to disclose the Signal communications. I know that some parts have already been published, but disclosure is not part of the suit."). In summary, DoD explained that a search of the Secretary's mobile device had been conducted, available messages from the Signal group chat have been preserved, and a litigation hold was issued. Decl. of David P. Bennett ¶ 3, ECF No. 10-1. ODNI explained that all ODNI officials that were allegedly party to the Signal group chat had taken screen shots of the messages currently in existence and transferred them to an ODNI email address, and that those officials were advised of the need to comply with agency policies regarding the management and safeguarding of agency records. Decl. of Gregory M. Koch ¶ 4, ECF No. 10-2. The CIA explained that available content from the Signal

group chat was retrieved from the Director's personal Signal account, that content was transferred to agency systems, and a litigation hold was issued. Decl. of Hurley V. Blankenship ¶¶ 3-4, ECF No. 10-3. And the State Department explained that images of the Signal group chat in the possession of the Office of the Secretary had been captured and preserved, and a litigation hold was issued to the Office of the Secretary. Decl. of Mallory D. Rogoff ¶¶ 5-6, ECF No. 10-4.

Plaintiff nit-picked at the adequacy of Defendants' declarations, and after a second hearing, Defendants agreed to file supplemental declarations providing a few additional facts for certain Defendants, specified by the Court on the record, such as when searches were conducted. Defendants timely filed those supplemental declarations on April 14, ECF No. 15. Plaintiff complained about the CIA's declaration, ECF No. 16, and Defendants filed a reply, ECF No. 20.

In addition to their own preservation efforts about which the Court ordered declarations, the defendant agencies received an email from the White House Counsel's Office containing a consolidated version of the Signal group chat. The consolidated version was created from publicly available information and information saved from participants to the chat's phones. The document includes content that has not been published by The Atlantic. This document is now saved in the agencies' recordkeeping systems. *See* Decl. of David P. Bennett ¶ 2, Exhibit 3; Decl. of Christopher Pilkerton ¶ 8, Exhibit 4; Decl. of Robert A. Newton ¶ 3, Exhibit 5; Decl. of Mary C. Williams ¶ 5, Exhibit 6; Decl. of Mallory D. Rogoff ¶ 3, Exhibit 7.

On April 21, Plaintiff filed an Amended Complaint, purporting to expand its claims. Am. Compl., ECF No. 17. The March 11-15 Signal group chat that was disclosed in The Atlantic remained the centerpiece of the complaint. *See id.* ¶¶ 47-75. Plaintiff further alleged, based on Defendants' declarations, that none of the Defendants had preserved the entirety of the Signal group chat. *Id.* ¶¶ 11, 67-69, 73. Based solely on news reporting, Plaintiff alleged that the use of

Signal to conduct government business is widespread in the government. *Id.* ¶¶ 78-80. "Upon information and belief," Defendants use Signal to communicate about government business. *Id.* ¶ 84. Indeed, many of the allegations are based "upon information and belief" rather than facts. *See, e.g., id.* ¶ 108 ("Upon information and belief, none of the agency-head Defendants have established records management programs providing for effective control over the creation and maintenance of Signal communications within their respective agencies.").

Through the Administrative Procedure Act, Plaintiff's Amended Complaint claims that the agency-head defendants failed to initiate enforcement and recovery actions as to the Signal group chat and other Signal chats, in violation of the FRA (Counts I and II); that the agency-head defendants failed to implement a recordkeeping program and failed to safeguard federal records created within Signal, in violation of the FRA (Count III); that the agency-head defendants maintain an informal policy or practice of failing to safeguard federal records on Signal (Count IV); and that NARA has refused to take enforcement action as to destroyed federal records from the Signal group chat and other Signal chats (Counts V and VI). The Amended Complaint requests "preliminary injunctive relief ordering Defendants to preserve all materials relating to Plaintiff's claims under the FRA, including all Signal messages sent or received by Defendants in the course of conducting government business since the date each agency-head Defendant took their respective offices." *Id.* at 38, Prayer for Relief ¶ 10.

On April 22, Plaintiff filed a motion for a preliminary injunction. ECF No. 19 ("P. Mot."). Critical to the motion is Plaintiff's assumption that Defendants have failed to preserve the Signal group chat. That assumption pervades Plaintiff's motion. It is what Plaintiff argues constitutes evidence that Defendants have lost, and will continue to lose, Signal messages in violation of the FRA; that Defendants' recordkeeping practices do not involve the copying or forwarding of Signal

messages to Defendants' official email accounts and are otherwise deficient; and that Defendants are aware of the destruction of federal records but are failing to prevent it.

Plaintiff's motion seeks relief that would: (1) "declare that messages and communications sent and received by Defendants over Signal in the transaction of government business are federal records subject to the FRA;" (2) "order the agency-head Defendants to implement adequate recordkeeping programs applicable to Signal messages to ensure compliance with the FRA for the pendency of [this] litigation;" (3) "order the agency-head Defendants to immediately preserve all materials relating to Plaintiff's claims in the Amended Complaint, ECF No. 17, including all Signal message sent or received by Defendants in the course of conducting government business since the date each agency-head Defendant took their respective offices; (4) "order the agency-head Defendants to comply with 44 U.S.C. § 3106(a) by notifying Acting Archivist Rubio of all unlawfully deleted Signal records and, with Acting Archivist Rubio's assistance, by initiating and action through the Attorney General for the recovery of all of Defendants' unlawfully deleted Signal records; and/or" (5) "order Defendant Rubio, in his capacity as Acting Archivist, to comply with 44 U.S.C. § 3106(b) by requesting that the Attorney General initiate an action for the recovery of all of Defendants' unlawfully deleted Signal records and by notifying Congress when such request is made." P. Mot. at 2.

## LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The party seeking relief must, "by a clear showing, carr[y] the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). A court should grant a preliminary injunction only when the moving party shows "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested

parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The third and fourth factors "merge when the government is the opposing party." *Trump v. Thompson*, 20 F.4th 10, 31 (D.C. Cir. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). When seeking a mandatory injunction, the Plaintiff "must meet a higher standard than in the ordinary case by showing clearly that [the movant] is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Priv. Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (quoting *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997)).

## ARGUMENT

Far from sustaining its burden to establish entitlement to a preliminary injunction, Plaintiff brings an impermissible challenge to alleged instances of noncompliance with the FRA and thus fails to state a claim for relief. Accordingly, the Court should deny the motion for a preliminary injunction.

## I.    Plaintiff Fails to Demonstrate That It Will Suffer Irreparable Harm Absent a Preliminary Injunction

As a threshold matter, Plaintiff fails to establish irreparable harm. "[T]he basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). A showing of irreparable injury "is the *sine qua non* for obtaining a preliminary injunction" because it is what "justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective

cases." *Meta Platforms, Inc. v. Fed. Trade Comm'n*, 2024 WL 1121424, at *7 (D.D.C. Mar. 15, 2024) (internal quotation marks and citations omitted). Indeed, "the failure to show a likelihood of irreparable harms remains, standing alone, sufficient to defeat [a preliminary injunction] motion." *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018). To constitute irreparable injury, the harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (citation and alteration omitted).

Plaintiff's irreparable harm argument is that as a FOIA requester, it faces irreparable harm as a result of the Signal chats that allegedly have been destroyed and that Plaintiff speculates will be destroyed in the future. The argument is based on Plaintiff's *assumption* that significant portions of the Signal group chat have been deleted because then National Security Advisor and chat participant Michael Waltz enabled the autodelete function, and on Plaintiff's speculation that Waltz would do so on future Signal chats initiated by his team. Mem. of Law in Supp. Pl.'s Mot. for a Prelim. Inj. at 24, ECF No. 19-1 ("Pl.'s Mem."). But as the declarations Defendants have already submitted establish, the agencies have in fact preserved parts of the Signal group chat from Defendants' and other participants in the Signal group chat's phones. As the declarations submitted with this brief show, the agencies have also preserved a consolidated version of the chat that they received from the White House Counsel's Office, which was created from publicly available information and information saved from participants to the chat's phones. And as these declarations further attest, the document is saved in the agencies' recordkeeping systems. The previously filed declarations further described additional steps the agencies had taken, such as

issuing litigation holds and specifically instructing officials to preserve messages created on Signal.

These facts fatally undermine Plaintiff's assumptions that underlie its claim to irreparable harm, past and future. In addition, Michael Waltz is no longer in the role of National Security Advisor, which further undermines any claim to irreparable harm in the future. Plaintiff assumes that Defendants have only captured screenshots of the Signal group chat and claims that screenshots are no substitute for the messages themselves, but it does not point to any material differences, let alone any that cause irreparable harm to Plaintiff as a FOIA requester. Pl.'s Mem. at 26.

In the absence of evidence that records are likely to be destroyed, there is no justification for issuing a "follow the law" injunction. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004) ("general orders compelling compliance with broad statutory mandates" are inappropriate); *City of L.A. v. Lyons,* 461 U.S. 95, 109 (1983) (injunction to "follow the law" in the absence of some allegedly imminent violation of the law is inappropriate); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1137–38 (D.C. Cir. 2009) (distinguishing case before it from an impermissible "generalized injunction to obey the law[]" because "a proclivity for unlawful conduct has been shown"); *Caudle v. D.C.,* 825 F. Supp. 2d 73, 81 (D.D.C. 2011) ("an impermissible 'obey the law' injunction is one that is not meaningfully more specific than the law in question"). Yet that is precisely what Plaintiff asks for here. *See* Pl.'s Mem. at 27-28 ("no legitimate government interests would be harmed by enjoining Defendants to comply with their legal obligations"). The lack of any likelihood of irreparable harm is fatal to Plaintiff's motion for preliminary injunction.

## II.    <u>Plaintiff Is Unlikely to Succeed on the Merits of Its Claims</u>

Plaintiff is also unlikely to succeed on the merits of its claims. Plaintiff offers no evidence to show that Defendants' existing written policies are arbitrary, capricious, or contrary to law.

5 U.S.C. § 706(2). Instead, Plaintiff relies on a challenge to alleged instances of noncompliance, something established law in this Circuit forecloses, in a failed attempt to show that the agencies have adopted "informal" policies that are contrary to the FRA. *Armstrong*, 924 F.2d at 294; *CREW v. Pompeo*, No. 19-cv-3324 (JEB), 2020 WL 1667638, at *4 (D.D.C. Apr. 3, 2020). Plaintiff also fails to show that Defendants have unlawfully withheld any initiation or referral obligation under the FRA.

> ### A.    Plaintiff Fails to Identify a Single Deficiency in Any of the Agency Defendants' Written Policies Implementing the FRA

The FRA "does not contain an express or implied private right of action[.]" *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016) (citing *Kissinger*, 445 U.S. at 148-50). Accordingly, a plaintiff seeking to assert a violation of the FRA must rely on the causes of action set forth in the APA, 5 U.S.C. § 706. And the APA requires that any challenge identify a final "discrete agency action" rather than a "'broad programmatic attack' on an agency's compliance with a statutory scheme." *CREW v. DHS*, 387 F. Supp. 3d 33, 49 (D.D.C. 2019), *amended*, 2019 WL 11307644 (D.D.C. July 22, 2019). Specifically, to state a claim challenging an agency's recordkeeping policy, the complaint "must allege facts that could plausibly lead the Court to find the contested policy 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" *CREW v. Pompeo*, 2020 WL 1667638, at *6 (quoting *Judicial Watch, Inc. v. FBI*, No. 18-cv-2316, 2019 WL 4194501, at *9 (D.D.C. Sept. 4, 2019)); 5 U.S.C. § 706(2)(A).

Plaintiff entirely fails to make "precise factual allegations" identifying "particular deficiencies" in the agency Defendants' policies, as would be necessary to state a claim challenging agency FRA guidelines. *See Judicial Watch*, 2019 WL 4194501, at *9. In *Judicial Watch*, for instance, the plaintiff specifically alleged that the defendant agency had failed to establish "effective controls" over the agency's maintenance of records in the form of "non-email

electronic messages, including text messages." *Id.* at *1. The court held that the plaintiff's claim was reviewable under *Armstrong* and the APA because it did not merely rely on the "systemic noncompliance of FBI employees" for the notion that the agency's controls were ineffective, but instead "expressly contest[ed] the adequacy of the FBI's recordkeeping policy for a specific category of records: electronic records, excluding email." *Id.* at *6. The court nevertheless dismissed the plaintiff's claim because the plaintiff had failed to make "precise factual allegations that highlight *which* particular deficiencies" in the FBI's written recordkeeping guidelines rendered their controls ineffective. *Id.* at *9. The court concluded that the plaintiff thus failed to make out a plausible claim for relief. *Id.* at *10.

And Plaintiff here does far less than the plaintiff did in that case. Indeed, Plaintiff entirely fails to suggest *any* particular deficiencies in the agency Defendants' written FRA policies. Unlike the claim at issue in *Judicial Watch*, Plaintiff's claims here rely entirely on alleged "systemic noncompliance" by agency-head Defendants to support the notion that the Defendant agencies have an "informal policy or practice . . . that permits the use of Signal to conduct official business outside the confines of the FRA." Pl.'s Mem. at 22. Plaintiff acknowledges fleetingly and generally that agency policies exist, without making any attempt to identify a single deficiency in any one of them. *See, e.g.*, *id.* at 12 (asserting that "[t]here is no indication that the messages in chats [on Signal] . . . are preserved or forwarded to official government storage systems, as required under the FRA, NARA regulations, and agency policies."). Moreover, as demonstrated above, Plaintiff's argument that "every single agency-head Defendants' failure to preserve all federal records from the Houthi PC Small Group Chat" is evidence of "a widespread pattern of deficient—or non-existent—recordkeeping programs" is refuted by the Defendants' declarations. *Id.* at 22. Where, as here, the plaintiff "vaguely allude[s] to the Department's policies with respect to the 'use of

private phones and email accounts and encrypted messenger apps" but fails to "describe what those policies are" or to show actual widespread noncompliance by agency employees, the allegations are insufficient to challenge an agency's policy as arbitrary, capricious, or contrary to the FRA. *CREW v. Pompeo*, 2020 WL 1667638, at *7.

### B.    Plaintiff Fails to Demonstrate a Cognizable Policy or Practice Claim

Failing to identify any deficiency in the agencies' actual written policies, Plaintiff relies upon a policy or practice theory to argue that the agencies "have established informal policies or practices within their respective agency's recordkeeping programs that unlawfully permits the creation and automatic deletion of Signal messages pertaining to government business." Am. Compl. ¶ 195.

Courts have recognized such policy or practice claims under the FRA only in rare circumstances. In *CREW v. Pruitt*, 319 F. Supp. 3d 252, 260 (D.D.C. 2018), for example, the court found that it could review a claim that the EPA had a policy "that refuses to 'make . . . records' in accordance with the FRA." For purposes of deciding the motion to dismiss, the court in that case observed that it "must treat the complaint's factual allegations as true . . . and must grant [P]laintiff the benefit of all inferences that can be derived from the facts alleged." *Id.* at 256 (internal quotations omitted). The court thus went on to credit the allegations that the EPA had "ushered in a culture of secrecy" by "verbally instruct[ing] EPA staff not to create a written record about major substantive matters" and prohibiting notetaking during meetings. *Id.* at 255. The court further noted allegations that the EPA Administrator "was so keen to avoid written records that he 'used telephones other than his own to make important phone calls to avoid their appearing on his own call log,' 'avoid[ed] using emails that create a record of his statements,' and commissioned a soundproof 'privacy booth' for the cost of almost $25,000." *Id.* "Such secrecy, Plaintiffs allege, has impeded their ability to obtain FOIA records." *Id.*

This case, by contrast, is on all fours with this Court's decision in *CREW v. Pompeo*. In that case, the Court accepted for the sake of argument the possibility of a policy or practice claim by analogy to FOIA litigation, but ultimately concluded that the claim failed in light of the lack of evidence showing "'ongoing' persistent violations." *CREW v. Pompeo*, 2020 WL 1667638, at *5. (quoting *Scudder v. CIA*, 281 F. Supp. 3d 124, 129 (D.D.C. 2017). As a threshold matter, the Court found that "much of the Complaint contains allegations regarding officials who are either not members of the State Department or are not subject to the FRA at all." *Id.* The Court observed that allegations concerning the President and his senior advisors generally "do not implicate the adequacy of the [agency's] recordkeeping policies." *Id.* (citing *Armstrong*, 924 F.2d at 291). Thus, far from "plausibly alleg[ing] that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms" of the FRA, the complaint relied upon "a few isolated actions involv[ing] State Department personnel[.]" *Id.* (internal quotations and citations omitted). The Court thus concluded that the "claim that during <u>one</u> phone call participants were directed by an Ambassador not to take notes, part of a potentially larger effort (that Secretary Pompeo was 'aware of') that included using an encrypted messenger application to shield an aspect of the President's Ukraine policy from public view" was "simply insufficient to clear the policy-and-practice bar." *Id.* at *6. As a result, the Court held that the claim "cannot move past the pleading stage." *Id.*

Similarly, Plaintiff's theory of a widespread policy or practice that "permits the use of Signal to conduct official business outside the confines of the FRA," Pl.'s Mem. at 22, fails at the threshold for lack of factual support. Plaintiff's theory derives entirely from the assumption that the agency-head Defendants have failed to preserve messages on Signal and are likely to do so in the future. *See, e.g.*, *id.* at 18-20. But, as discussed above, the agency Defendants' efforts to

18

preserve the Signal group chat refute the premise of Plaintiff's argument. And, in any event, such alleged instances of noncompliance are not subject to judicial review. *See CREW v. Pompeo*, 2020 WL 1667638, at *4 (courts generally "cannot entertain challenges to agency compliance with [agency] guidelines in 'specific factual contexts'" (quoting *Competitive Enter. Inst. ("CEI") v. EPA*, 67 F. Supp. 3d 23, 33 (D.D.C. 2014))); *Pruitt*, 319 F. Supp. 3d at 258 ("[U]nder *Armstrong*, courts may not entertain private suits alleging that agencies have improperly destroyed or removed records, but they may consider ones challenging whether agency guidelines that permit destruction of certain records are adequate under the FRA.").

Plaintiff's attempt to bootstrap alleged instances of noncompliance, which are not reviewable, into a challenge to a supposed informal policy, which Plaintiff argues is reviewable, therefore must fail. *CREW v. Pompeo*, 2020 WL 1667638, at *5-6 (rejecting a similar attempt to "sustain a claim that [an agency's] guidelines are inadequate on the basis of such noncompliance"). And as in *CREW v. Pompeo*, to the extent Plaintiff relies upon allegations involving the actions of the now-former National Security Advisor, such allegations similarly cannot sustain Plaintiff's burden because they do not implicate the agency Defendants' compliance with the FRA. *Id*. at *5; *cf., e.g.*, Am. Compl. ¶¶ 102-103 (alleging that members of the National Security Council have used personal accounts); Pl.'s Mem. at 19 (relying on allegations of changes to administrative settings in Signal by then-National Security Advisor Waltz to show likelihood of success). Moreover, to the extent that Plaintiff continues to rely upon "extensive public reporting," such hearsay is not probative of Plaintiff's assertions in support of the motion. *Democracy Forward Found. v. Pompeo*, 474 F. Supp. 3d 138, 150 (D.D.C. 2020) (rejecting hearsay in newspaper articles as inadmissible when offered by plaintiff asserting FRA violation); *see also Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1165 (D.C. Cir. 1995) ("We seriously question whether

a New York Times article is admissible evidence of the truthfulness of its contents."). Plaintiff's alleged policy or practice challenge to supposed informal agency policies is therefore left with little or no cognizable factual support. *See also CEI*, 67 F. Supp. 3d at 33 (Plaintiff cannot bring a challenge to alleged instance of noncompliance "by casting its claim as a challenge to an illusory record-keeping policy. While the form of [plaintiff's] claim sounds in a cognizable APA claim, the substance of its allegations constitutes a challenge to [the agency's] records disposal decisions.").

Plaintiff's challenge to "informal agency policies permitting the regular creation and destruction of federal records without regard to the FRA," Pl.'s Mem. at 23, therefore must fail because it not only fails to identify a single deficiency in any of the actual written policies but also fails to demonstrate a policy or practice to the contrary.

### C.    Plaintiff Is Unlikely to Succeed on Its Claims for Enforcement Action Under Section 3106

Plaintiff is unlikely to succeed on its claim for relief requiring the Defendants to take enforcement action under 44 U.S.C. § 3106. *See, e.g.*, Pl.'s Mem. at 6 (requesting that the Court issue a preliminary injunction that would "order Defendants . . . to comply with the initiation and notification requirements outlined in 44 U.S.C. § 3106."). This claim fails for reasons already discussed—that is, because of the evidence discussed above that establishes that the Signal group chat has in fact been preserved and has not been deleted. Plaintiff therefore lacks a basis for bringing a claim under section 3106. *See, e.g.*, *Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3, 4 (D.C. Cir. 2018); *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 233–36 (D.D.C. 2018); *CREW v. Pruitt*, 319 F. Supp. 3d at 261.

This claim also fails because it is not redressable. "[I]n the Federal Records Act context, redressability requires a 'substantial likelihood' that records will be recovered[.]" *ACLU Found.*

*of Fla. v. U.S. Immig. & Customs Enf't*, No. 22-cv-1129, 2023 WL 6461053, at *6 (D.D.C. Aug. 31, 2023). As a result, "a referral to the Attorney General, if 'pointless' because the records are unrecoverable, is not enough." *Id.*; *see also Judicial Watch*, 744 F. App'x at 4; *see also Cause of Action v. Pompeo*, 319 F. Supp. 3d at 232. In fact, Plaintiff here concedes in its Motion and Amended Complaint that any referral to the Attorney General to attempt to recover allegedly missing pieces of the Signal group chat would be pointless. Plaintiff acknowledges, in no uncertain terms, that "according to Signal's website, once Signal text message records are destroyed, they cannot be recovered . . ." Pl.'s Mem. at 26 (citing Am. Compl. ¶ 50 n.3). Plaintiff adds:

> Nor is there an alternate means to ensure that the Signal communications are preserved. As described by Signal's Terms & Privacy Policy, "Signal messages and calls cannot be accessed by [Signal] or other third parties because they are always end-to-end encrypted, private, and secure." *See* Am. Compl. ¶¶ 48, 50, ECF No. 17; Signal, Signal Terms & Privacy Policy, *available at* https://signal.org/legal/#:~:text=Signal%20Terms%20&%20Privacy%20Policy,Privacy%20Policy%20are%20available%20below (last visited Apr. 21, 2025).").

*Id.* at 27. Accordingly, by Plaintiff's own account, its claims are unlikely to succeed on the merits.

### III.    The Balance of Hardships and Public Interest Do Not Favor a Preliminary Injunction

The remaining factors required for preliminary injunctive relief—balancing of the harm to the opposing party and the public interest—also weigh against emergency relief here. These factors merge when the Government is the opposing party. *Nken*, 556 U.S. at 435. Plaintiff's argument relies again on alleged instances of noncompliance and attempts to bootstrap from there to the assumption that an injunction is necessary to prevent "unlawful destruction." Pl.'s Mem. at 30. Plaintiff thus reiterates its position that no harm or hardship to the government would result from a follow-the-law injunction in this case. *Id.* But issuing such a preliminary injunction could harm the Defendants by overlaying their existing preservation policies with a Court order to follow the law, creating the risk of potentially burdensome and draconian consequences in the event of, for

instance, inadvertent loss of a single record. Arguments about compliance could thus inject the Court into the day-to-day records management of the agency Defendants, which is precisely the sort of judicial superintendence this Court has recognized is not available under the FRA. *CREW v. Pompeo*, 2020 WL 1667638, at *6 ("[T]he FRA prohibits 'any judicial assessment of agency compliance in specific factual contexts by establishing a detailed enforcement scheme for alleged violations.'" (quoting *CEI*, 67 F. Supp. 3d at 33)).

## IV.    <u>Any Preliminary Injunction Should Require Security</u>

Finally, the Court should order security with any preliminary injunction. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for a Preliminary Injunction.

Dated: May 7, 2025

Respectfully submitted,

Yaakov M. Roth
Acting Assistant Attorney General, Civil Division

Marcia Berman
Assistant Branch Director
Federal Programs Branch

 _/s/ Amber Richer_
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov
*Attorneys for Defendants*

| **TABLE OF EXHIBITS** |
| --- |
| Exhibit 1: State Department Foreign Affairs Manual ("FAM") 5 FAM 430 |
| Exhibit 2: Department of Defense Instruction No. 5015.02 |
| Exhibit 3: Declaration of David P. Bennett |
| Exhibit 4: Declaration of Christopher Pilkerton |
| Exhibit 5: Declaration of Robert A. Newton |
| Exhibit 6: Declaration of Mary C. Williams |
| Exhibit 7: Declaration of Mallory D. Rogoff |