IN THE UNITED STATES DISTRICT COURT  
FOR THE DISTRICT OF COLUMBIA  
-----------------------------------------------------------------X  
                       AMERICAN OVERSIGHT,

                       Plaintiff,

-against-

                       PETE HEGSETH, et al.,  
                       Defendants.  
-----------------------------------------------------------------X

Case No. 1:25-cv-00883

**[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN OPPOSITION TO PLAINTIFF'S CLAIM OF STANDING**

## I.    INTEREST OF AMICUS CURIAE

Amicus Jason Goodman, ("Goodman") is a U.S. citizen, a documentary filmmaker and a journalist committed to exposing the misuse of federal tax-exempt organizations for improper or illegal politically partisan purposes. Goodman has nearly a decade of direct experience working with forensic accounting and other investigators, examining the activities of nonprofit organizations that have been "weaponized" for political purposes or have abused the law, the courts and the justice system to achieve political and strategic goals outside of normal litigation, ("Lawfare"). Amicus has closely investigated tactics used by Norm Eisen, ("Eisen") founder of Citizens for Responsibility and Ethics in Washington ("CREW"), and other nonprofit organizations. These organizations are closely affiliated with and work in close coordination with American Oversight, the Plaintiff in this instant matter. Amicus Goodman comes now to submit this brief demonstrating Plaintiff's prohibited partisan conduct and asserting that it disqualifies them from standing as a 501(c)(3) public charity, pursuant to FRCP Rule 17(b)(2), and undermining the jurisdictional basis for this action.

Eisen is the architect behind a sprawling network of interrelated 501(c)(3) nonprofits, including State Democracy Defenders Action, CREW and other entities that nearly exclusively promote partisan anti-Trump messaging, such as the "Project 2025 Administration" initiative.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN OPPOSITION TO     1  
PLAINTIFF'S CLAIM OF STANDING

These groups operate under the guise of public service but function as de facto political action networks, essentially stealing taxpayer funds. Eisen routinely uses these tax-exempt organizations as vehicles for overtly partisan political activity, compensating aligned operatives with outsized salaries while concealing the origin of these funds. Such conduct, if allowed to persist, will render meaningless the legal boundaries that distinguish lawful public charities from political operations, and threaten the integrity of the United States justice system writ large.

## II.   INTRODUCTION

American Oversight claims to be a nonpartisan 501(c)(3) public charity, but its conduct in this lawsuit and its pattern of litigation reveals a systematic and knowing violation of the political neutrality required under the Internal Revenue Code ("IRC") and Treasury Regulations.

Charitable organizations registered under Sections 170(b)(1)(A)(vi) and 509(a)(1) of the IRC such as Plaintiff's are, only qualify as public charities if they can demonstrate that a significant portion of their financial support comes from the general public or governmental entities, including foundations and grantmaking institutions. This public support requirement can be met through one of two alternative tests. Satisfying either standard enables the organization to maintain its classification as a public charity, rather than a private foundation, for tax purposes.

This brief argues:

i.  Plaintiff's standing is defective because it is derived from a politically motivated purpose that it is expressly prohibited by law from pursuing as a 501(c)(3) non-profit organization registered under § 170(b)(1)(A)(vi);

ii. Plaintiff's use of the court system as a platform for partisan lawfare violates 26 U.S.C. § 501(c)(3);

    iii.    As a § 170(b)(1)(A)(vi) public charity, Plaintiff is absolutely prohibited from this very conduct without exception;

    iv.    This Court has authority under Rule 11 and its own inherent authority to examine whether Plaintiff's claims are pursued for improper purposes;

    v.    Plaintiff's conduct exceeds the scope of its legal capacity under FRCP Rule 17(b)(2);

    vi.    Abuse of 501(c)(3) status by American Oversight Requires dismissal of this action and a referral to the IRS and DOJ for criminal investigation.

## III. ARGUMENT

### A. 501(c)(3) Public Nonprofit Corporations May Not Engage in Political Partisanship

Section 501(c)(3) of the Internal Revenue Code grants tax-exempt status to organizations "operated exclusively for religious, charitable, scientific… or educational purposes," provided that "no substantial part of the activities… is carrying on propaganda, or otherwise attempting to influence legislation" and "which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign…"

Plaintiff's repeated targeting of Republican officials, specifically those affiliated with the Trump administration, while ignoring similar conduct by Democrats or other political figures reflects unambiguous partisanship incompatible with public charity restrictions.

### B. Plaintiff's Conduct Is a Continuation of CREW Actions and Violates Rule 11

U.S. Air Force Major General Charles J. Dunlap Jr., former deputy judge advocate general is widely credited with coining the term "lawfare." In a 2017 article published by the U.S. Army press titled, *Lawfare 101 A Primer*, Dunlap explains:

"Lawfare represents an effort to provide military and other nonlawyer audiences an easily understood 'bumper sticker' phrasing for how belligerents… are attempting to use law as a form of asymmetric warfare… [It is] the use of law as a means of accomplishing what might otherwise require the application of traditional military force." (Lawfare 101: A Primer, Military Review, May–June 2017, by Maj. Gen. Charles J. Dunlap Jr., USAF, Ret.)

By Dunlap's own account, lawfare is a form of strategic military combat which has no legitimate purpose in civilian litigation. Such activity in civil action in a U.S. District Court is facially violative of FRCP Rule 11 in that it has been presented for an improper purpose, and in violation of Plaintiff's legally authorized activity. When such tactics are deployed by nonprofits claiming tax-exempt charitable status, they are not only improper, but they are also a categorical abuse of federal court process and a disgraceful misappropriation of U.S. taxpayer funds.

Using the judiciary to execute strategic political attacks under the false pretense of neutral oversight falls within the realm of conduct prohibited by Rule 11(b)(1), prohibiting filings made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." This Court has the authority to act sua sponte in response to such misuse.

Plaintiff was founded by individuals aligned with Norm Eisen, architect of CREW, which similarly weaponizes 501(c)(3) status to harass political opponents. Eisen's network includes State Democracy Defenders Action and other entities with known coordination, common donor pools, and overlapping staff. The "Project 2025 Administration" resource initiative is one example of how this infrastructure seeks to delegitimize a potential Trump presidency by preemptively attacking its personnel. It is inarguable that this represents partisan political activity not public charity or legitimate oversight.

### C. Plaintiff Lacks the Legal Capacity to Sue Under Federal Rule of Civil Procedure 17(a)

FRCP Rule 17(a) requires that every action be prosecuted in the name of the real party in interest. Under Rule 17(b)(2), a corporation's capacity to sue is determined by the law under which it was organized. Any 501(c)(3) organization that acts beyond the boundaries of its legal charter by engaging in ultra vires partisan litigation operates outside the law under which it was organized and therefore lacks the capacity to bring any claims whatsoever in federal court.

Courts have dismissed actions where plaintiffs operated beyond their legal purpose or otherwise failed to meet the requirements of FRCP Rule 17. *See Levin Metals Corp. v. Parr-Richmond Terminal Co.,* 817 F.2d 1448 (9th Cir. 1987). In this case, the Ninth Circuit held that a dissolved corporation, which lacked the capacity to sue under California law, was similarly barred from suing in federal court. The court emphasized that, according to Rule 17(b), the corporation's capacity to sue is governed by the law of the state of incorporation. Since California law dictated that dissolved corporations could not initiate lawsuits, the federal court dismissed the action due to the plaintiff's lack of capacity. In this case, IRC code controls the law under which Plaintiff was formed and its actions here violate those same statutes.

This case underscores the importance for corporate plaintiffs to ensure they possess the legal capacity to sue under their state's or other federal laws, as mandated by Rule 17(b)(2), before proceeding with litigation in federal court.

### IV.   The Court Must Consider 501(c)(3) Compliance as Relevant to Standing

Standing requires an injury-in-fact traceable to the defendant's conduct and redressable by the Court. But an entity cannot manufacture standing through its own unlawful or noncompliant activity. Moreover, it may not do so by citing its own past improper actions. If Plaintiff's

standing relies on activities it is not permitted to pursue under IRC, federal or state tax law, then its standing fails. 501(c)(3) organizations are strictly prohibited from engaging in illegal activities or operating outside the scope of their authorized tax-exempt purpose.

Allowing 501(c)(3) entities to create standing by flouting their statutory obligations threatens to collapse the legal distinction between public charities and political operations.

## V. Granting Standing Would Undermine Article III and the Tax Code

Permitting this lawsuit to proceed would:

   i. Undermine IRS enforcement of nonprofit restrictions;

   ii. Reward organizations that cloak lawfare in charitable language to receive public subsidies;

   iii. Encourage politically motivated lawfare against U.S. Presidents, their cabinet members or other political and public figures.

## VI. Abuse of 501(c)(3) Status by American Oversight Requires Dismissal and Referral

American Oversight claims tax-exempt status under 26 U.S.C. § 501(c)(3) as a nonpartisan public charity supported by public contributions in accordance with §§ 170(b)(1)(A)(vi) and 509(a)(1). However, its litigation strategy, organizational affiliations, and the suspiciously rapid filing of this lawsuit reveal a coordinated pattern of partisan activity that is incompatible with its tax-exempt status and highly indicative of deliberate fraud against the IRS, the taxpaying public, and this honorable Court.

The Internal Revenue Service has stated unequivocally that "[§] 501(c)(3) organizations are absolutely prohibited from directly or indirectly participating in, or intervening in, any political campaign on behalf of or in opposition to any candidate for elective public office."

*See IRS Rev. Rul. 2007-41*; 26 C.F.R. § 1.501(c)(3)-1(c)(3)(iii).

Violations of this prohibition are not academic—they are grounds for revocation of tax-exempt status, the imposition of excise taxes, and potential criminal liability.

*See Branch Ministries v. Rossotti,* 211 F.3d 137, 142 (D.C. Cir. 2000) (upholding revocation of § 501(c)(3) status for political campaign activity); *Christian Echoes Nat'l Ministry, Inc. v. United States*, 470 F.2d 849 (10th Cir. 1972); *United States v. Brown,* No. 3:16-cr-93-J-32JRK (M.D. Fla. 2017) (former U.S. Representative convicted for misusing charity to divert funds intended for education); *People v. United Homeless Organization,* 2009 NY Slip Op 29445 (Sup. Ct.) (charity dissolved due to fraudulent misuse of donations collected under false pretenses); *Attorney General of Virginia v. Circle of Friends for American Veterans*, No. CL19-5727 (Va. Cir. Ct. 2020) (charity dissolved and fined for misappropriating millions in donations).

This lawsuit is centered on speculative, unverified claims derived almost entirely from a politically explosive article by The Atlantic's Jeffrey Goldberg, published on March 24, 2025, at 12:06 PM ET. Despite its purported neutrality, American Oversight filed this 18-page federal complaint, naming numerous former Trump administration officials, citing Goldberg's article extensively, and seeking extraordinary emergency relief including injunctions, preservation orders, and referrals to the Attorney General, the very next day, on March 25, 2025.

It is not merely implausible, it is functionally impossible, that Plaintiff could have received, analyzed, corroborated, and responded to that article with such a comprehensive legal filing within a 24-hour window, absent prior access or coordination. The specificity of the complaint, the embedded FOIA references, and its extensive legal analysis suggest that it was either drafted in advance or in concert with Goldberg or his sources. This undermines any pretense of

spontaneous oversight or nonpartisan concern and instead reflects a premeditated political operation masked as public interest litigation.

The overlap between American Oversight and known political operator Norm Eisen further discredits the organization's claimed neutrality. Eisen, founder of CREW, has built an infrastructure of tax-exempt entities designed to advance anti-Trump political objectives under charitable pretenses. American Oversight's personnel, donor overlap, and litigation strategy closely mirror this network. The "Project 2025 Administration" initiative is just one example of how these groups coordinate to delegitimize political opponents and undermine future administrations before they take office.

Such conduct not only violates the conditions of § 501(c)(3), but also calls into question Plaintiff's legal capacity to sue under Rule 17, its standing under Article III, and its compliance with Rule 11(b)(1), which prohibits filings made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

To allow an organization engaged in active political warfare to continue litigating under the protective shield of § 501(c)(3) is to reward and fund criminal lawfare with public subsidies. Such a result would degrade public confidence, undermine the integrity of the judicial system, and erode the foundational distinction between lawful public charities and partisan political actors.

## VII. CONCLUSION

For the reasons stated above, Amicus respectfully urges this Court to:

    i. Grant Goodman leave to file as Amicus Curiae in this matter;

    ii. Deny standing to Plaintiff American Oversight for violations of 501(c)(3) and §170(b)(1)(A)(vi);

iii. Dismiss this action for lack of standing and ultra vires conduct;

iv. Refer the matter to the IRS and DOJ Tax Division for investigation into violations of:

    a. 26 U.S.C. § 7206 (false statements on IRS forms),

    b. 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud),

    c. Willful abuse of § 501(c)(3) status;

v. Alternatively, order supplemental briefing or a hearing to evaluate the nature and legality of Plaintiff's funding, political affiliations, and litigation history to determine whether this lawsuit was coordinated for partisan purposes in violation of federal law;

vi. Grant any additional relief deemed just and proper as determined by Court.

Dated: New York, New York March 27, 2025

Respectfully submitted

Jason Goodman
Pro Se Amicus Curiae Applicant
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998

APPENDIX OF EXHIBITS

**Exhibit A** – IRS Form 990 for Citizens for Responsibility and Ethics in Washington (CREW), Tax Year 2016. Identifies Norm Eisen as Chair and highlights partisan activity.

**Exhibit B** – Motion for Leave to File Amicus Brief in United States v. Eric Adams, Case No. 24-cr-556 (S.D.N.Y.). Demonstrates Eisen association with repeated pattern of partisan coordination

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN OPPOSITION TO    10
PLAINTIFF'S CLAIM OF STANDING

**(EXHIBIT A)**

| | | | 16a | No |
|---|---|---|---|---|

taxable entity during the year?

**b** If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . . . | | 16b | |

**Section C. Disclosure**

**17** List the States with which a copy of this Form 990 is required to be filed▶

AK , AL , AR , CA , CO , CT , FL , GA , IL , KS , KY , MA , MD , ME , MI , MN , MO , MS , NC , ND , NH , NJ , NM , NY , OH , OK , OR , PA , RI , SC , TN , UT , VA , WA , WI , WV

**18** Section 6104 requires an organization to make its Form 1023 (or 1024 if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website   ☐ Another's website   ☑ Upon request   ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶NOAH BOOKBINDER  455 MASSACHUSETTS AVE NW    WASHINGTON, DC 20001 (202) 408-5565

Form **990** (2016)

─── Page 7 ───

Form 990 (2016)                                                                                 Page **7**

**Part VII   Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) AL DWOSKIN<br>CHAIR (END 12/16)/DIR. (EFF. 12/16) | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (2) NORM EISEN<br>CHAIR (ELECTED 12/5/16) | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (3) DAVID BROCK<br>VICE CHAIR (THROUGH 12/5/16) | 5.00 | X | | X | | | | 0 | 0 | 0 |
| (4) RICHARD PAINTER<br>VICE CHAIR (ELECTED 12/5/16) | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (5) DAVID MERCER<br>TREASURER | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (6) JOHN LUONGO | 1.00 | | | | | | | | | |

**(EXHIBIT B)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>ERIC ADAMS,<br><br>Defendant. | Case No.: 24 Cr. 556 (DEH) |

**MOTION FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE*
ON BEHALF OF STATE DEMOCRACY DEFENDERS FUND,
LAWYERS DEFENDING AMERICAN DEMOCRACY,
AND INDIVIDUAL EXPERTS IN LEGAL ETHICS**

State Democracy Defenders Fund, Lawyers Defending American Democracy, as well as law professors and individual experts in legal ethics (collectively "Amici"), as listed below, respectfully request the Court to grant them leave to submit a brief as *amicus curiae* in this matter. In support of this motion, Amici state as follows:

State Democracy Defenders Fund (SDDF) is a 510(c)(3) nonprofit organization that seeks to defend and strengthen democracy while ensuring that Americans are free to exercise their fundamental rights. Lawyers Defending American Democracy (LDAD) is a 501(c)(3) non-profit organization of lawyers dedicated to protecting and preserving American democracy. Amici also include individual representatives from LDAD and SDDF, as well as lawyers and law professors with experience in the interpretation and application of the ethical rules governing the conduct of lawyers. Individual amici are listed below.

LDAD and SDDF are nonpartisan organizations devoted to defending the rule of law. In pursuit of their missions, LDAD and SDDF seek to ensure that lawyers involved in matters bearing on our democratic institutions and processes conduct themselves in accordance with the applicable rules of professional responsibility. LDAD and SDDF and other Amici believe that

lawyers who engage in conduct inimical to the rule of law must be accountable – both to enforce professional standards and to maintain public confidence that the conduct of lawyers conforms to the ethical standards set forth the Rules of Professional Responsibility.

In this case, the Court has raised a series of questions regarding the application of Fed. R. Crim. P. 48(a) to the pending motion to dismiss the indictment against Mayor Eric Adams. In the event the Court resolves those question, as Amici believe it should, through an evidentiary inquiry into the facts and circumstances supporting the motion, Amici submit that the inquiry should include whether Mr. Bove has violated the Rules of Professional Responsibility in his conduct of this matter. The proposed amicus brief reviews the ethical rules that, based publicly available information, may have been violated by Mr. Bove. Mr. Bove's conduct also calls into question whether he complied with the requirements of the U.S. Department of Justice Principles of Federal Prosecution. These potential ethical violations bear on the public interest factor under Rule 48(a) and ultimately on public confidence in the Department of Justice and this Court.

For the foregoing reasons, Amici respectfully request leave to file an amicus brief in this case.

Respectfully submitted,

Ilene Jaroslaw
Elliot Kwok Levine Jaroslaw Neils LLP
60 East 42nd Street, Suite 1570
New York, NY 10165
(212) 321-0510
ijaroslaw@ekljnlaw.com
Bar No. IW0569

February 28, 2025

2

## Individual Amici

Norman Eisen, *Board Member, State Democracy Defenders Fund*

John T. Montgomery, *Board Member, Lawyers Defending American Democracy*

Stephen Marcus, *Volunteer, Lawyers Defending American Democracy, Adjunct Professor, Georgetown University Law Center\**

Bruce Kuhlik, *Former Assistant to the Solicitor General, U.S. Department of Justice; Volunteer, Lawyers Defending American Democracy, Adjunct Professor, Georgetown University Law Center*

Virginia Canter, *Ethics and Anticorruption Chief Counsel and Director, State Democracy Defenders Fund*

Don Fox, *Former General Counsel and Acting Director, U.S. Office of Government Ethics*

Richard Painter, *Former Associate Counsel to the President and chief White House ethics lawyer for President George W. Bush*

Cassandra Robertson, *Law Professor, Case Western Reserve University School of Law\**

Susan Carle, *Professor of Ethics Law and Vice-Dean, American University\*, Editor of Lawyers' Ethics and the Pursuit of Social Justice (NYU Press 2005)*

Angela J. Davis, *Distinguished Professor of Law, Criminal Justice Ethics and Criminal Law and Procedure, American University Washington School of Law\*, Author of Arbitrary Justice: The Power of the American Prosecutor (Oxford University Press, 2007)*

Bruce Green. *Louis Stein Chair of Law, Director, Stein Center, Fordham University School of Law\**

Mitt Regan, *McDevitt Professor of Jurisprudence, Director, Center on Ethics and the Legal Profession, Georgetown University Law Center\**

Rebecca Roiphe, *Joseph Solomon Distinguished Professor of Law, New York Law School\**

Ellen C. Yaroshefsky, *Howard Lichtenstein Professor of Legal Ethics, Director - Monroe Freedman Institute for the Study of Legal Ethics, Maurice A. Deane School of Law, Hofstra University\**

Abbe Smith, *Professor of Law, Georgetown University Law Center\**

\* Affiliations are provided for identification purposes only. The views expressed in the proposed amicus brief reflect only those of the individual and do not necessarily reflect the institution with which they are affiliated.